IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| A.J. and Q.C., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | |
| | : | |
| MASP, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**COMPLAINT FOR DAMAGES**

COME NOW Plaintiffs in the above-styled action and hereby file their Complaint as follows:

**Introduction**

1.

When both were just 14 years old, Plaintiffs A.J. and Q.C., were trafficked for sex together at the Days Inn by Wyndham located at 7385 Hannover Parkway N., Stockbridge, Georgia 30281 (the "Days Inn Stockbridge") in and around March 2013. Given the nature of this case, Plaintiffs are identified in this Complaint by their initials to prevent public disclosure of their names. Plaintiffs' counsel will

1

disclose their full names to defense counsel as soon as they are known or as soon as an appropriate protective order is in place.[1]

2.

Plaintiffs A.J. and Q.C. were minor victims of child sex trafficking at Defendant's hotel at all times relevant to this Complaint.

3.

A person under the age of 18 cannot consent to having sex in exchange for money. Any sale of sex in exchange for money involving a person under eighteen (i.e., "minor sex trafficking") is criminal sex trafficking under federal law 18 U.S.C. § 1591(a). Minor sex trafficking does not require evidence that the victim was subject to "force, fraud, or coercion." 18 U.S.C. § 1591(a)(1), et seq. Every person who engages in commercial sex with a minor is trafficking that minor under 18 U.S.C. § 1591(a)(1). Still, Plaintiffs A.J. and Q.C. were repeatedly sold by an older, well-known male trafficker repeatedly at the Days Inn Stockbridge.

---

[1] Plaintiffs have concurrently filed a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include the minor sex trafficking of A.J. and Q.C.

4.

At all times relevant hereto, Defendant MASP, LLC ("MASP") owned, operated, maintained, controlled, and managed the Days Inn located at 7385 Hannover Parkway N., Stockbridge, Georgia 30281.

5.

Defendant knew of the rampant sex trafficking and prostitution at the Days Inn Stockbridge before, during, and after Plaintiffs' trafficking. Defendant knew because:

   a.   Defendant was aware of and saw these specific Plaintiffs while they were trafficked for sex at the hotel;

   b.   Its employees were complicit in assisting Plaintiffs' sex trafficker in the sex trafficking of Plaintiffs;

   c.   Its employees knew of and permitted sex trafficking and prostitution to occur at the hotel;

   d.   The facts of other sex trafficking victims at the hotel before, during, and after Plaintiffs;

   e.   The frequent and ongoing similar crime occurring at the hotel;

   f.   Defendant's knowledge of sex trafficking generally, in the Atlanta area, and at the Days Inn Stockbridge specifically.

3

6.

Defendant's liability to Plaintiffs is straightforward. Defendant knew or should have known that their operation of the Days Inn Stockbridge violated the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1591, et seq., (the "TVPRA") through its association with Plaintiffs' sex trafficker, and from which it benefitted financially. As such, Defendant is liable to Plaintiffs for their damages under § 1595(a) of the TVPRA.

7.

Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation is that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendant.

**Parties, Jurisdiction, and Venue**

8.

Plaintiff A.J. is a citizen of the United States of America, is a resident of the State of Georgia, and consents to the jurisdiction of this Court. A.J. was born in 1998 and was a minor at the time of her sex trafficking alleged herein.

9.

Plaintiff Q.C. is a citizen of the United States of America, is a resident of the State of Georgia, and consents to the jurisdiction of this Court. Q.C. was born in 1998 and was a minor at the time of her sex trafficking alleged herein.

10.

Defendant is a Georgia corporation with its principal place of business in Stockbridge, Georgia. Service can be made on MASP by serving its registered agent, Alpesh B. Patel at 7385 Hannover Parkway North, Stockbridge, Georgia, 30281.

11.

Jurisdiction and venue are proper as to MASP, and MASP was properly served with process in this action.

12.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 18 U.S.C. 1595(a).

13.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the incidents forming the basis of this complaint occurred in Clayton County, Georgia, within the Northern District of Georgia, Atlanta Division.

**Plaintiffs A.J. and Q.C.'s Sex Trafficking at the Days Inn Stockbridge**

14.

Plaintiffs A.J. and Q.C., who were 14-year-old children at the time, were trafficked for sex over the course of several days at the Days Inn Stockbridge in March 2013. A.J. and Q.C. were rescued from the hotel by Clayton County Police Officers, who later arrested Plaintiffs' trafficker and charged him with Keeping a Place of Prostitution, Human Trafficking, and Pimping. The trafficker entered a guilty plea and was sentenced to 15 years.

15.

Plaintiffs' trafficker was a known sex trafficker who had a history of selling women and girls for sex at the Days Inn Stockbridge. Specifically, Plaintiffs' trafficker had been forcing women and girls to sell their bodies for sex out of Defendant's hotel for months at the Days Inn Stockbridge prior to his arrest. At least two of these women were already working at the hotel before A.J. and Q.C. were trafficked there.

16.

Employees at the Days Inn Stockbridge were familiar with and accommodating to Plaintiff's trafficker. One employee of the hotel acted as a lookout for Plaintiffs' trafficker, and watched the minor Plaintiffs to make sure

6

they did not escape and were not drawing attention to themselves. Once, when Plaintiffs were locked out of their room and requested a new key, this employee chastised the two 14-year-olds and told them if they did something wrong again, like drawing attention to themselves and having to come to the front office for a new key, he would *then* kick them out. MASP knew or should have known that their employee was assisting Plaintiffs' trafficker in trafficking the minor Plaintiffs.

17.

Plaintiffs A.J. and Q.C. were picked up by their trafficker in March 2013 and taken to the Days Inn Stockbridge, where photographs of the minors were taken and posted on Backpage.com. They were then repeatedly bought and sold for sex out of room 123. The 14-year-old minors were made to have oral and vaginal sex with buyers as well as participate in "Two Girl Specials," during which both minor girls had sex with the same customer at the same time.

18.

Plaintiffs A.J. and Q.C. were statutorily raped by 15 or more buyers over the course of their stay at the Days Inn Stockbridge.

19.

Plaintiffs' sex trafficker operated openly and brazenly at the Days Inn Stockbridge.  There was a constant stream of traffic throughout the day of men with no luggage visiting Plaintiffs' hotel room for short periods of time before leaving and being followed by another anonymous man. Defendant knew or should have known that this constant foot traffic was indicative of sex trafficking, including minor sex trafficking.

20.

When one Plaintiff was in the hotel room with an older male buyer, the other Plaintiff would either hide in the bathroom or sit in the stairwell of the hotel.

21.

While Plaintiffs A.J. and Q.C. were being sold for sex in room 123 at the Days Inn Stockbridge, a man, sometimes Plaintiffs' trafficker, sometimes another associate, would loiter in the parking lot keeping watch over Plaintiffs' room. Defendants knew or should have known that this conduct was indicative of not only prostitution, but also of child sex trafficking.

22.

A.J. and Q.C.'s room evidenced numerous well-known and visible signs of sex trafficking of which Defendant knew or should have known.  Frequently, the

trash cans in the room in which Plaintiffs were trafficked contained an extraordinary number of used condoms and condom wrappers, the room contained multiple large boxes of condoms, multiple cell phones, and Plaintiffs frequently requested an excessive number of towels from housekeeping.

23.

More specifically, the room in which the 14-year-old minor Plaintiffs were staying contained two digital timers to keep track of the amount of time men purchased them for, two KY Jelly tubes, five open Trojan Magnum condom wrappers, six packaged Trojan Magnum condoms, and a handwritten note with times at 15-minute intervals and the amount of money to charge for each. Defendants and their housekeepers knew or should have known that these items were obviously indicative of the fact that the 14-year-old children in the room were being sold for sex, i.e., minor sex trafficking.

24.

Upon the minors' rescue, police officers found "in plain view" digital timers, packages of condoms on the dresser, and several used condoms in the trash. During the cleaning of the room, Defendants knew or should have known that these items were obviously indicative of the fact that the 14-year-old children in the room were being sold for sex.

25.

While A.J. and Q.C. were trafficked for sex at the Days Inn Stockbridge, they exhibited numerous well-known and visible signs of a sex trafficking victim, of which Defendant and the other motel employees knew or should have known. These included the Plaintiffs' young age and inappropriate dress and monitoring and control by their trafficker.

26.

On March 16, 2013, the Clayton County Police Department was called by A.J.'s mother after she discovered that her 14-year-old child was being advertised for sex on Backpage.com. Plaintiffs A.J. and Q.C. were subsequently rescued from the hotel on March 22, 2013.

27.

Defendant knew that Plaintiffs A.J. and Q.C. were staying in room 123 at the Days Inn Stockbridge. When the police arrived at Defendant's hotel to rescue Plaintiffs A.J. and Q.C., a manager at the Days Inn Stockbridge told the officers that he had seen a girl matching A.J.'s description in room 123. Defendant's actual knowledge of A.J. and her location with Q.C. shows the hotel knew or should have known that Plaintiffs were being repeatedly sold for sex in that room.

**Defendant's Knowledge of Prostitution, Sex Trafficking, and Other Prior Crime at the Days Inn Stockbridge**

28.

The Days Inn Stockbridge and its approaches were well known for crime, prostitution, and sex trafficking.

29.

At the time of, and prior to, Plaintiffs' sex trafficking at the Days Inn Stockbridge, hotel employees knew or should have known that crime, prostitution, and sex trafficking were open and obvious at the Days Inn Stockbridge.

30.

At the time of, and prior to, Plaintiffs' sex trafficking at the Days Inn Stockbridge, Defendant knew of, condoned, and permitted widespread prostitution and sex trafficking at the Days Inn Stockbridge, including Plaintiffs A.J. and Q.C.'s minor sex trafficking.

31.

Prior to Plaintiffs' sex trafficking at the Days Inn Stockbridge, Days Inn Stockbridge employees at the hotel knew or should have known that rooms at the Days Inn Stockbridge were frequently rented for short term use for commercial sex

with guests, usually men, renting a room at the hotel, using it for a short period of time, and then leaving and not returning to the hotel.

32.

Defendants provided a market and beds for sex traffickers to sell women, boys, and girls—including minors—to buyers of commercial sex. That is why Plaintiffs' sex trafficker brought Plaintiffs to the Days Inn Stockbridge to be sold for sex.

33.

Before and during Plaintiffs' trafficking, employees of the Days Inn Stockbridge called sex traffickers, including Plaintiffs' trafficker, to warn them to slow down or stop buyer traffic to a particular room in order to assist the traffickers in evading detection from other guests and the police. Defendant knew or should have known that the hotel was being operated by its own employees to assist sex traffickers, including Plaintiffs' trafficker.

34.

Defendants had actual and constructive knowledge of prostitution, sex trafficking, and other criminal activity existing on the property and in the surrounding area prior to Plaintiff's sex trafficking. Defendants knew or should have known of these and other crimes occurring on their premises and approaches.

12

## Defendant's Knowledge of Sex Trafficking Generally

35.

Defendant knew or should have known of the existence of sex trafficking and its illegality more than 20 years ago, since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' adoption of the Palermo Protocol, to prevent, suppress, and punish trafficking in persons.

36.

Defendant knew or should have known that during the relevant period Atlanta was a hub of sex trafficking and that the crime was prevalent in the city, including at the Days Inn Stockbridge. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking economies in the country.[2]  In 2007, Atlanta's sex trafficking economy was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000. Over the last two decades, sex trafficking has generated billions

---

[2] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/ (last visited April 1, 2021); *see also* Meredith Dank, et.al, *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major US Cities*, Urban Institute, (March 12, 2014), 30-32, *available at* https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last visited April 1, 2021).

13

of dollars in illicit profits in metro Atlanta alone. Defendant has received and retained some of those illicit profits through renting motel rooms used for the trafficking of Plaintiffs and other victims.

37.

Defendant knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, [] particularly child sex trafficking,"[3] and as "the number one city for child sex trafficking."[4]

38.

Defendant knew or should have known that motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" City *of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

---

[3] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, (Jan. 29, 2015), *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited April 1, 2021).
[4] *Id.*

39.

Defendant knew or should have known the following: The National Human Trafficking Hotline has reported that ninety-two percent of the calls it received involving motels and motels reported sex trafficking, and another two percent reported a combination of sex and labor trafficking.[5] A 2012 study found that 63 percent of trafficking incidents occurred in motels.[6] And the Polaris Project found that "75% of [trafficking] survivors responding to Polaris's survey reported coming into contact with motels at some point during their exploitation . . . . Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from motel staff."

40.

Defendant knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004.[7]

---

[5] *Human Trafficking and Hotels & Motels*, Polaris Project, https://polarisproject.org/human-trafficking-and-hotels-motels/ (last visited April 1, 2021).

[6] Jon Conte, *et al., Inhospitable to Human Trafficking Program Evaluation*, at 2, Businesses Ending Slavery and Trafficking, (July 2014), https://www.bestalliance.org/uploads/5/0/0/4/50047795/itt_program_evaluation.11_without_appendix.pdf at 5 (last visited April 1, 2021).

[7] *See The Tourism Child-Protection Code of Conduct*, ECPAT-USA, *available at* www.ecpatusa.org/code/ (last visited April 1, 2021).

41.

Defendant knew or should have known that the Code, which lays out well-established best practices for the hospitality industry to identify, address, and deter sex trafficking, identifies six reasonable and logical steps motels can take:

a.  establish corporate policy and procedures against sexual exploitation of children;

b.  train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

c.  include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d.  provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e.  support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and

f.  report annually on the company's implementation of Code-related activities.

42.

Defendant knew or should have known that ECPAT is only one of several high-profile organizations that have for years given motels the tools to address the scourge of sex trafficking at motels.

16

43.

Defendant knew or should have known that during the relevant period the Department of Homeland Security ("DHS") published guidelines to help motels detect and respond to human trafficking. DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other motel personnel, to be vigilant in looking for signs of human trafficking at motels and hotels, such as:

a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b. persons who lack freedom of movement or are constantly monitored;

c. persons who have no control over or possession of money or ID;

d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of motel staff entry into the room;

f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g. extended stay with few or no personal possessions in the room;

h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i. the same person reserves multiple rooms;

j.  a room is rented hourly, less than a day, or for an atypical extended stay;

k.  attempts to sell items to or beg from patrons or staff;

l.  cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons;

n.  waiting at a table or bar and picked up by a male (trafficker or customer);

o.  persons asking staff or patrons for food or money; and

p.  persons taking cash or receipts left on tables.

44.

Without a market, a place for the buying and selling of humans for sex, sex trafficking would cease to exist. Defendant, for a fee, provided that market, a private and anonymous market for Plaintiffs to be sold for sex at its motel.

45.

Defendant and its employees knew or should have known that obvious sex trafficking, including Plaintiffs' sex trafficking, was occurring at their property, at times with the assistance of its employees.

46.

Despite this knowledge, Defendant negligently and recklessly allowed the crimes perpetrated against Plaintiffs and other sex trafficking victims to continue.

18

47.

Despite the dangerous, illegal, and criminal activity surrounding the property, Defendant and the motel negligently failed to implement appropriate security measures, policies, procedures, or training to identify, deter, or reduce such activity.

48.

Despite having actual or constructive knowledge of this illegal activity, Defendant negligently failed to take reasonable and necessary steps to stop such illegal and dangerous activities from occurring, including that involving its own employees.

49.

Additionally, Defendant negligently failed to provide proper training to their employees, including among other things, training them on the warning signs that prostitution or sex trafficking may be occurring at the motel.

50.

Defendant also negligently failed to supervise its employees to ensure the hotel was not facilitating sex trafficking and participating in sex trafficking through the business of the hotel, as was the case with Plaintiffs' trafficking.

51.

Defendant also negligently failed to train its staff in a reasonable and uniform manner, including, among other things, on how the staff were supposed to interact with the police and attempt to determine the nature and cause of crime occurring at the property, so that the motel could better deter or prevent crime in the future.

52.

Defendant also negligently failed to develop a reasonable security plan to deter and prevent dangerous, violent, and illegal activity from continuing to occur at the property, including specifically prostitution, pimping, sex crimes, violence against women, and sex trafficking.

53.

Defendant knew or should have known that they were permitting the motel to be used as a place of prostitution and minor sex trafficking.

## Count I – Statutory Liability under 18 U.S.C. § 1595

54.

Plaintiffs incorporate the Paragraphs above, as if fully set forth herein.

55.

In violation of the TVPRA, Defendant knowingly benefitted from participation in a venture that Defendant knew or should have known violated the

20

TVPRA.

56.

Defendant knowingly benefitted from Plaintiffs' sex trafficking by receiving revenue and/or profit generated from the motel rooms from which the Plaintiffs were trafficked.

57.

Defendant knowingly benefitted from Plaintiffs' sex trafficking because Plaintiffs' sex trafficker continued to use the money gained from Plaintiffs' sex trafficking to pay for the motel rooms in which Plaintiffs were trafficked, and Defendant, as the owner and operator of the motel, then financially benefitted from such room rentals.

58.

Defendant participated in a venture by knowingly owning and operating a motel that generated revenue through room rentals.

59.

Defendant participated in a venture by knowingly owning and operating a motel which Defendant knew or should have known was being used by sex traffickers for the purpose of trafficking victims for sex in violation of the TVPRA,

21

including Plaintiffs.

60.

Defendant knew or should have known that renting its rooms to sex traffickers violated the TVPRA.

61.

Defendant participated in a venture by operating the Days Inn Stockbridge in such a manner that the motel allowed sex trafficking to occur so that it could profit from the room revenue the illegal activity generated.

62.

Defendant knew or should have known that its operation of the motel harbored victims of sex trafficking, including the 14-year-old Plaintiffs, in violation of the TVPRA.

63.

Defendant participated in a venture by associating with, and renting rooms to, Plaintiffs' sex trafficker at the Days Inn Stockbridge, providing Plaintiffs' trafficker with the necessary venue for Plaintiffs' sex trafficking, despite the fact that Defendant knew or should have known Plaintiffs' sex trafficker was trafficking the Plaintiffs for sex at their property.

22

64.

Defendant knew or should have known that its association with, and renting rooms to, Plaintiffs' sex trafficker violated the TVPRA. Defendant knew or should have known its employees were assisting Plaintiffs' trafficker.

65.

In the course of these ventures, numerous buyers paid to have sex with the Plaintiffs in Defendant's motel room.

66.

The ventures in which Defendant participated were in or affecting interstate commerce.

67.

Defendant knew or should have known the ventures violated the TVPRA because Defendant and its agents, employees, and representatives had the opportunity to observe Plaintiffs at the motel, with and without their traffickers, the signs of sex trafficking exhibited by Plaintiffs, their trafficker, their rooms, and the frequent traffic of adult male buyers into and out of the Plaintiffs' motel rooms each day they were being trafficked.

68.

Defendant knew or should have known the ventures violated the TVPRA because Defendant's employees were assisting sex traffickers under Defendant's nose while they were on the job and the profits generated from that activity were received and retained by Defendant in the form of additional room rental revenue.

69.

Defendant is directly and/or vicariously liable under 18 U.S.C. § 1595(a) for the actions of its agents and representatives and other motel employees.

70.

Plaintiffs have suffered physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant's participation in this venture.

71.

Defendant is liable to Plaintiffs for their damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

72.

Defendant is jointly and severally liable for damages arising from the indivisible injuries caused to Plaintiffs, whose damages were proximately caused by

24

the acts discussed in this count.

## Count II – Attorneys' Fees and Expenses of Litigation
## Pursuant to O.C.G.A. § 13-6-11 for Bad Faith Conduct

73.

Plaintiffs incorporate the Paragraphs above, as if fully set forth herein.

74.

Defendant acted in bad faith, has been stubbornly litigious, or has caused Plaintiffs unnecessary trouble and expense.

75.

Defendant has engaged in a long-running pattern of bad faith conduct both before and after Plaintiffs' sex trafficking which demonstrates that Defendant has no regard for safety at its motel and that Defendant exerts a bad faith effort (or no effort) to prevent and deter dangerous illegal activities, crime, prostitution, and sex trafficking.

76.

Defendant engaged in a long running pattern of bad faith conduct, and it and/or the other Days Inn Stockbridge employees engaged in specific bad faith conduct toward Plaintiffs, including failing to intervene or prevent Plaintiffs' sex trafficking when Defendant knew or should have known of the same.

77.

Defendant is liable to Plaintiffs for attorney's fees and expenses of litigation in an amount to be proven at trial.

**Damages**

78.

Plaintiffs incorporate the Paragraphs above, as if fully set forth herein.

79.

As a proximate and foreseeable result of Defendant's acts described herein, Plaintiffs sustained personal injuries, physical abuses, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiffs bring each and every claim permissible under Georgia and federal law against Defendant for injuries suffered in the incidents at issue, and to recover for all statutory damages, general damages, special damages, compensatory damages, consequential damages, pain and suffering, and all other damages permissible under Georgia and federal law, including, but not limited to:

a)   Personal injuries;

b)   Past, present and future conscious pain and suffering;

c)   Loss of enjoyment of life;

d)   Medical expenses;

e) Mental anguish and emotional distress;

f) Loss of past, present, and future wages;

g) Incidental expenses;

h) All special, compensatory, economic, punitive, and other damages permissible under Georgia and federal law; and

i) Consequential damages to be proven at trial.

80.

Plaintiffs are entitled to an award of punitive damages without limitation or cap because the actions of Defendant and its employees were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

81.

Defendant's actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiffs undue expense. Thus, Plaintiffs are entitled to recover their necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-15-14, and 18 U.S.C. § 1595(a)).

WHEREFORE, Plaintiffs pray for a judgment to be awarded to them and against Defendant, and for the following:

a)      Process issue as provided by law;

b)      Plaintiffs be awarded actual damages in amounts to be shown at trial from Defendant;

c)      Plaintiffs be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

d)      Plaintiffs be awarded a trial by jury; and

e)      Plaintiffs have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 20th day of September, 2023.

**ANDERSEN, TATE & CARR, P.C.**

***/s/ Patrick J. McDonough***
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680