UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| A.J. & Q.C.,<br><br>    Plaintiffs,<br><br>v.<br><br>MASP, LLC,<br><br>    Defendant. | CIVIL ACTION FILE<br><br>NO. 1:23-cv-4247-JPB |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
Jennifer M. Webster
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

# INTRODUCTION

Plaintiffs A.J. and Q.C. have evidence that Defendant's employees participated in trafficking them for sex at Defendant's hotel when they were both 14 years old. Defendant has no evidence or knowledge to rebut Plaintiffs' evidence. Thus, Plaintiffs' evidence satisfies the liability elements of their TVPRA claims. Defendant cannot rebut Plaintiffs' evidence because it lacks any knowledge or evidence to do so. In this situation, summary judgment in favor of the Plaintiffs is appropriate.

# STATEMENT OF FACTS

## I.   Plaintiffs A.J. and Q.C.

In March 2013, 14-year-olds A.J. and Q.C. were taken by their sex traffickers, Craig Hill[1] and Tkeyah Adams, to the Days Inn Stockbridge. Ex. 1, May 22, 2013 Incident Report, Plaintiffs A.J. and Q.C. 00066–70; Ex. 2, A.J. Dep., 14:21–23; Ex. 3, Q.C. Dep., 11:6–7; Ex. 4, Indictment of Craig Hill and Tkeyah Adams. During their stay, the minor Plaintiffs were repeatedly bought and sold for sex out of room 123. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033–35; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00059–61; Ex. 7, Plea Hearing Transcript, Plaintiffs A.J. and Q.C. 00171–172. They were forced to perform various sexual acts, including oral and vaginal sex with older

---

[1] Variously referred to in some evidence by his alias "Chris" or "Chris Brown."

male buyers, and were involved in "two-girl specials," where both Plaintiffs would engage in sexual activities with the same buyer simultaneously. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033–35; Ex. 3, Q.C. Dep. 163:9–17. Over the course of their stay, A.J. and Q.C. were statutorily raped by at least 14 different buyers. Ex. 8, Det. Lewis Investigative Summary, Plaintiffs A.J. and Q.C. 00358–363, Ex. 2, A.J. Dep. 202:12–203:3.

Hill was comfortable at the Days Inn Stockbridge, boasting that he knew the manager and front desk staff. Ex. 3, Q.C. Dep., 199:3–22, 225:24–226:8. He was known to frequent hotels in the area and was well known at this particular hotel. Ex. 9, Application for Criminal Arrest Warrant, Plaintiffs A.J. and Q.C. 00031. Hill and Adams had been renting room 123 since at least February 26, 2013, and had trafficked other victims at the hotel before A.J. and Q.C. arrived. Ex. 10, Det. Simonds Investigative Summary, Plaintiffs A.J. and Q.C. 00205; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00061; Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00103; Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033; Ex. 12, Q.C. Written Statement, Plaintiffs A.J. and Q.C. 00100; Ex. 2, A.J. Dep. 136:6–137:7, 217:3–8; These other victims, some younger than 14, told A.J. and Q.C. that they had been with Hill and Adams for weeks. Ex. 2, A.J. Dep. 135:23–137:7, 190:2–19.

Hill's boast that he knew the front desk staff was true. A front desk employee acted as one of Hill's lookouts, helping the trafficker maintain control over A.J. and Q.C. Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00103; Ex. 2, A.J. Dep. 157:1–159:13. The front desk employee was one of multiple people at the hotel Hill had watching the minors to make sure they did not escape. Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00102. When A.J. and Q.C. were at the hotel, Hill would call them and question their activities when he was not there, knowing things only someone watching the girls at the hotel would know. Ex. 2, A.J. Dep. 216:3–18.

And when A.J. and Q.C. found themselves locked out of their hotel room, the minors approached the front desk for assistance. Ex. 2, A.J. Dep. 158:10-159:13; Ex. 3, Q.C. Dep. 192:15–19, 193: 6–7. The front desk employee, who was familiar with Plaintiffs' trafficker and knew his alias, called Hill to obtain his permission to let the two 14-year-olds back in the room. Ex. 2, A.J. Dep. 157:20–159:13; Ex. 3, Q.C. Dep. 192:15–193:15, 200:8–202:2. After hanging up the phone, the front desk employee inquired about how much it would cost to purchase sex from one or both minors and expressed an interest in scheduling a "date" with them the next day. Ex. 2, A.J. Dep. 161:15-162:18.

In addition to the front desk employees, A.J. and Q.C.'s trafficker directed Days Inn employees to provide the minors with "the things" they needed to do

their "job." *Id.* at 157:1–19. Following this directive, housekeeping came to A.J. and Q.C.'s room multiple times per day—as many as three to four—to supply fresh towels, exchange sheets, provide toiletries, or empty trash cans. *Id.* at 157:20–158:18, 176:21–177:20; Ex. 3, Q.C. Dep. 188:14–189:5. The contents of the room included digital timers set for 15 and 60 minutes, packaged and used condoms, multiple bottles of lubricants on the dresser, and handwritten notes listing time increments and pricing for each. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033–34; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00059. All of these items were in plain view, and the housekeepers would have had no choice but to observe them. *Id.*; Ex. 2, A.J. Dep. 176:21–177:20.

Heavy traffic could be seen coming in and out of Plaintiffs' room. In the span of just two days of their stay, at least 14 different buyers of commercial sex could be seen coming and going from room 123 at the Days Inn. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00034; Ex. 8, Det. Lewis Investigative Summary, Plaintiffs A.J. and Q.C. 00358–363; Ex. 2, A.J. Dep. 202:12–203:3; Ex. 3, Q.C. Dep. 166:23–167:17. The heavy foot traffic to and from the room did not go unnoticed by hotel staff—on several occasions over multiple days, employees contacted Adams to report such activity. Ex. 13, Tkeyah Adams Suspect Interview Summary, Plaintiffs A.J. and Q.C. 00399. And after the Plaintiffs finished seeing a date, the front desk employee would call A.J. and

their "job." *Id.* at 157:1–19. Following this directive, housekeeping came to A.J. and Q.C.'s room multiple times per day—as many as three to four—to supply fresh towels, exchange sheets, provide toiletries, or empty trash cans. *Id.* at 157:20–158:18, 176:21–177:20; Ex. 3, Q.C. Dep. 188:14–189:5. The contents of the room included digital timers set for 15 and 60 minutes, packaged and used condoms, multiple bottles of lubricants on the dresser, and handwritten notes listing time increments and pricing for each. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033–34; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00059. All of these items were in plain view, and the housekeepers would have had no choice but to observe them. *Id.*; Ex. 2, A.J. Dep. 176:21–177:20.

Heavy traffic could be seen coming in and out of Plaintiffs' room. In the span of just two days of their stay, at least 14 different buyers of commercial sex could be seen coming and going from room 123 at the Days Inn. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00034; Ex. 8, Det. Lewis Investigative Summary, Plaintiffs A.J. and Q.C. 00358–363; Ex. 2, A.J. Dep. 202:12–203:3; Ex. 3, Q.C. Dep. 166:23–167:17. The heavy foot traffic to and from the room did not go unnoticed by hotel staff—on several occasions over multiple days, employees contacted Adams to report such activity. Ex. 13, Tkeyah Adams Suspect Interview Summary, Plaintiffs A.J. and Q.C. 00399. And after the Plaintiffs finished seeing a date, the front desk employee would call A.J. and

Q.C.'s room to see if they needed anything. Ex. 2, A.J. Dep. 172:25–174:15. If they did, housekeeping would bring towels or what they needed to the room. *Id.* at 157:23–158:8.

Ultimately, A.J. and Q.C. were rescued from the Days Inn on March 22, 2013. Ex. 1, May 22, 2013 Incident Report, Plaintiffs A.J. and Q.C. 00066; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00059. When police officers arrived at the hotel, they made contact with hotel management and obtained a rental roster. Ex. 14, Affidavit and Application for a Search Warrant, Plaintiffs A.J. and Q.C. 00224. These officers "learned that management had seen a female matching the description of A.J. in room 123." *Id.* A.J. and Q.C.'s traffickers were arrested, and Craig Hill was sentenced to 15 years for Keeping a Place of Prostitution and Pimping. Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00061; Ex. 15, State v. Hill, No. 2013CR02540-06, Final Disposition, Plaintiffs A.J. And Q.C. 00053.

## II. Absence of Documentation and Evidence by Defendant

Defendant's lack of knowledge about this case is highlighted by its inability to recall any specifics or produce any documents. For instance, in its 30(b)(6) deposition, Defendant testified that it had no knowledge of the Plaintiffs' allegations until receiving this lawsuit. Ex. 16, MASP, LLC 30(b)(6) Dep., 14:20–25, 15:19–16:11, 21:1–8. It also confirmed that it had no written or verbal

statements from any witnesses related to the Plaintiffs being trafficked at the hotel. *Id.* at 14:20–25, 15:19–16:11, 21:1–8. In fact, Defendant testified that it lacked any information regarding the allegations altogether. *Id.*

Defendant's ignorance extends beyond the facts of this case to include even the most basic details about the hotel's operations and personnel. Despite numerous requests for documents related to employee hiring and training materials, internal communications and guidelines, photographs, surveillance, and video recordings of the premises, room rental records (including financial records), and documents related to the operation and maintenance of the Days Inn Stockbridge, Defendant produced only a single document: a map of the hotel layout.[2] *Id.* at 15:19–16:11; *see generally* Ex. 17, Def. MASP, LLC's Resps. to Pls' First Cont'g Reqs for Prod. of Docs; *see also* Ex. 18, Map Layout, DEF000001. Additionally, Defendant could only identify one employee who worked at the Days Inn Stockbridge, but did not know if she worked there in 2013, and had no contact information for that employee (or any other staff). Ex. 16, MASP, LLC 30(b)(6) Dep., 17:9–20:13, 21:9–18. And though it acknowledged that one of the owners, Alpesh Patel, was the day-to-day manager of the Days Inn,

---

[2] While most requests focused on 2008 through 2013, at least one request extended through the present. Despite this, Defendant was still unable to produce a single responsive document. *See* Ex.17, Def. MASP, LLC's Resps. to Pls' First Cont'g Reqs for Prod. of Docs, Req. No. 26.

7

overseeing responsibilities such as finances, ordering supplies, employee management, hiring and firing, daily operations, and room inspections, Alpesh testified that he did not have any information about employees, witnesses, or, most importantly, Plaintiffs' allegations. *Id.* at 11:10–12:13, 21:25–22:16. In fact, none of the owners of MASP, LLC have knowledge or evidence concerning *any* of the allegations in Plaintiffs' Complaint. *Id.*; Ex. 19¸ Baldev Patel Dec. ¶¶ 2, 5–6; Ex. 20, Narmada Patel Dec. ¶¶ 2, 5–6; Ex. 21, Shilpa Patel Dec. ¶¶ 2, 5–6.

Such a complete lack of knowledge prevents Defendant from denying the allegations made by Plaintiffs or challenging the substantial evidence that supports these claims. Simply put, "I don't know" does not create a genuine issue of material fact.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477

U.S. at 248. Ultimately, "the basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen*, 121 F.3d at 646 (quoting *Anderson*, 477 U.S. at 251). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT

Absent *any* countervailing evidence, Defendant's liability to Plaintiffs under the TVPRA is simply uncontroverted. Though the TVPRA has created disagreement on some of its finer points, no court has held that the direct involvement of hotel employees with traffickers—as happened in this case—fails to satisfy the elements of a § 1595(a) claim.[3]

---

[3] Plaintiffs' attorneys reviewed 134 civil sex trafficking opinions under § 1595—believed to be *all* of the relevant opinions in the country—and found no case holding that employee involvement in the trafficking did not satisfy the elements of a § 1595(a) claim. *See, e.g., A.G. v. Northbrook Indus., Inc.*, No. 1:20-CV-05231-JPB, 2022 WL 1644921 (N.D. Ga. May 24, 2022); *G.W. v. Northbrook Indus., Inc.,* No. 1:20-CV-05232-JPB, 2024 WL 3166083 (N.D. Ga. June 14, 2024); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021); *I.R. v. I Shri Khodiyar, LLC*, No. 1:22-CV-00844-SEG, 2024 WL 1928755 (N.D. Ga. Mar. 18, 2024); *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247 (N.D. Ga. 2023); *Doe (R.A.) v. Best W. Int'l*, No. 2:23-CV-3459, 2024 WL 3850958 (S.D. Ohio Aug. 16, 2024); *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-CV-06038-TMC, 2024 WL 3276417 (W.D. Wash. July 2, 2024); *A.M. v. Wyndham Hotels & Resorts, Inc.*,

9

Plaintiffs' traffickers paid Defendant to rent rooms in which to traffic Plaintiffs. Then, Defendant's employees actively assisted Plaintiffs' traffickers in selling the minor Plaintiffs for sex at the hotel. Which led to the trafficker continuing to rent rooms. Plaintiffs need not debate what the hotel "should have known."[4] The evidence in this case establishes that the hotel *knew,* and knowingly facilitated, Plaintiffs' minor sex trafficking at the hotel in exchange for room revenue.

Though the analysis is unfortunately repetitive[5] Defendant's liability for each element is set forth below.

I.  **An absence of evidence does not carry a party's burden of producing a defense at summary judgment.**

Defendant has testified in this case that:

---

No. 2:22-CV-3797, 2024 WL 1347301 (S.D. Ohio Mar. 29, 2024); *S. Y. v. Best W. Int'l, Inc.*, No. 2:20-CV-616-JES-MRM, 2021 WL 2315073 (M.D. Fla. June 7, 2021).

[4] Strangely, this is the sole focus of Defendant's expert report, that Defendant "*should not*" have known. This is strange because this is not a "should have known" case. Defendant's expert ignores entirely the uncontroverted evidence that Defendant's employees were *knowingly* involved in Plaintiffs' trafficking. Presumably this evidence must be ignored because it makes pointless the entire "should have known" argument.

[5] In short, every reviewed opinion in the country agrees that the egregious fact of employee involvement satisfies the elements of § 1595. Which is unsurprising, given that such participation satisfies the higher perpetrator claim standard of actual knowledge. The disputes regarding the TVPRA have to do with what *additional* activity is covered under the "should have known" standard applicable to other beneficiaries.

10

- It has no documents, records, evidence, or any information regarding Plaintiffs' sex trafficking at the hotel;

- Defendant has no knowledge of the identity, names, contact details, or any information about any hotel employees who worked at the hotel during the period during which Plaintiffs were trafficked; and

- Defendant has no documents, written policies, or written procedures related to employee hiring and training, internal communications and guidelines, photographs, surveillance, and video recordings of the premises, room rentals (including financial records), or the operation and maintenance of the Days Inn Stockbridge.

Ex. 16, MASP, LLC 30(b)(6) Dep., 15:19–16:11, 20:7–10, 21:1–4, 21:9–23; *See also* Ex. 22, Def. MASP, LLC's Resps to Pls' Fr. Cont'g Interrog., Interrog. No. 11; Ex. 17, Def. MASP, LLC's Resps. to Pls' First Cont'g Reqs for Prod. of Docs. Besides an insurance policy, Defendant produced a single one-page document in discovery, a map of the hotel's layout. Ex. 16, MASP, LLC 30(b)(6) Dep. at 15:19–16:11; Ex. 17, Def. MASP, LLC's Resps. to Pls' First Cont'g Reqs for Prod. of Docs; Ex. 18, Map Layout, DEF000001. In sum, Defendant knows nothing about anything related to Plaintiffs' trafficking or the operation of the hotel at that time and cannot assert any information about the employees at its hotel because it does not know who those employees are or how to contact them.

In light of Defendant's complete lack of evidence, any defense to Plaintiffs' evidence would necessarily consist of unsupported speculation. But, "unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact;

11

instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)); *Fid. & Guar. Life Ins. Co. v. Brooks*, 4:12-CV-0230-HLM, 2014 WL 12495341, at *7 (N.D. Ga. Mar. 11, 2014), *aff'd,* 580 Fed. App'x. 781 (11th Cir. 2014) (quoting *Cordoba*); *Hornsby v. Three Dollar Cafe III, Inc.,* 2006 WL 47471, at *5 (N.D. Ga. Jan. 9, 2006) ("Conclusory allegations, speculation, or immaterial factual disputes are not sufficient to avoid summary judgment" (internal quotation marks omitted)); *Thomas v. City of Columbus*, 198 F. Supp. 2d 1360, 1367 (M.D. Ga. Mar. 4, 2002) ("Speculation and possibility are insufficient bases for avoiding summary judgment").

Because Plaintiffs' evidence establishes liability under the TVPRA and Defendant is unable to provide any non-speculative evidence in rebuttal, summary judgment in favor of Plaintiffs is proper.

## II. The indisputable evidence in this case establishes Defendant's liability under the TVPRA.

### A. Defendant knowingly benefited from the hotel.

Defendant received money from Plaintiffs' traffickers to rent the rooms in which Plaintiffs were trafficked. Ex. 7, Plea Hearing Transcript, Plaintiffs A.J. and Q.C. 00171; Ex. 10, Det. Simonds Investigative Summary, Plaintiffs A.J. and Q.C.

12

00205; Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00103; Ex. 2, A.J. Dep. 217:3–8. This fact is undisputed by any evidence in this case. Every court in the country to analyze this element "ha[s] found that the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp 3d 1228, 1234 (N.D. Ga. 2022) (citing *A.G. v. Northbrook Indus., Inc.*, 1:20-CV-05231-JPB, 2022 WL 1644921, at *2 (N.D. Ga. May 24, 2022); *G.W. v. Northbrook Indus., Inc.*, 1:20-CV-05232-JPB, 2022 WL 1644923, at *2 (N.D. Ga. May 24, 2022); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020); *Ricchio v. Bijal, Inc.*, 386 F. Supp. 3d 126, 131 (D. Mass. 2019) (even *de minimis* benefit sufficient)).

Thus, the uncontroverted evidence shows that Defendant knowingly benefitted financially by renting rooms to Plaintiffs' traffickers at the Days Inn, satisfying the first element of the TVPRA.

**B.    Defendant participated in a venture under the TVPRA**

Defendant did more than accidentally rent rooms to someone it should have known was trafficking two 14-year-old girls. Defendant and its employees

13

knowingly assisted and facilitated Plaintiffs' trafficking.[6]

"Participation in a venture" means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 724. This definition is broad and encompasses more than just knowing or intentional criminal conduct, such as acting as a lookout for traffickers. However, even if that were the standard, as has been erroneously held in some cases (*see, e.g., K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024)), the evidence here meets that higher standard. No opinion reviewed in the country has ever held otherwise, and Plaintiffs have exceeded the requirement of participation in a venture. *See* cases cited *supra* note 4.

Defendant's employees assisted Plaintiffs traffickers. A front desk employee acted as a lookout for Plaintiffs' traffickers and attempted to solicit the 14-year-olds for sex at the hotel. Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00103; Ex. 2, A.J. Dep. 157:20–159:13; 161:15-162:19. Employees called to check on the minors after men paid them for sex and if they were out of supplies, housekeepers at the hotel delivered clean towels to the room Plaintiffs were in three to four times per day. Ex. 2, A.J. Dep. 157:20–158:18, 176:21–177:20; Ex. 3,

---

[6] This, of course, is also a criminal violation of § 1591(a)(1) and (2) because the hotel is knowingly harboring under (a)(1) and knowingly benefitting under (a)(2).

Q.C. Dep. 188:14–20. This type of participation in Plaintiffs' trafficking—with Plaintiffs' traffickers—more than satisfies the second element of a TVPRA claim. *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228 (N.D. Ga. 2022); *see also* cases cited *supra* note 4.

    **C.**    **Defendant's venture violated the TVPRA as to A.J. and Q.C.**

The venture in which Defendant participated committed a crime against A.J. and Q.C. To prove this element, Plaintiffs must adduce evidence that "[they were] [ ] minors when [they were] forced to engage in commercial sex acts and that the Defendant had a reasonable opportunity to observe [them] on the premises." *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1310 (N.D. Ga. 2023) (citing *U.S. v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019)).

The undisputed facts show that A.J. and Q.C. were each 14 years old when they were sold for sex at the Days Inn. Ex. 1, May 22, 2013 Incident Report, Plaintiffs A.J. and Q.C. 00066–0070; Ex. 2, A.J. Dep., 14:21–23; Ex. 3, Q.C. Dep., 11:6–7. Their trafficker was convicted of Keeping a Place of Prostitution and Pimping for trafficking the minors at Defendant's hotel. Ex. 15, State v. Hill, No. 2013CR02540-06, Final Disposition, Plaintiffs A.J. And Q.C. 00053. And as discussed above, Defendant had opportunity to observe Plaintiffs in their hotel room, surrounded by sex paraphernalia, and in their interactions with the hotel's employee who would call the room after buyers of commercial sex left to check if

the minors needed anything, and in their interactions with the hotel employees who acted as lookouts for Plaintiffs' traffickers and who directly propositioned the minors for sex at the hotel. Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00103; Ex. 2, A.J. Dep. 157:1–159:13; 161:15-162:18, 172:25–174:15, 176:21–177:20; Ex. 3, Q.C. Dep. 188:14–20, 192:15–193:15.

As discussed above, *supra* note 6, the hotel's knowing facilitation of A.J. and Q.C.'s trafficking also independently violated the TVPRA (§ 1591(a)(1) and (2)) because the hotel knowingly harbored Plaintiffs under (a)(1) and knowingly benefitted under (a)(2).

Thus, Plaintiffs have satisfied their burden as to the third element of their claim.

### D. Defendant had actual knowledge that the venture violated the TVPRA as to A.J. and Q.C.

The uncontroverted evidence unequivocally establishes that Defendant had *actual* knowledge of A.J. and Q.C.'s minor sex trafficking at its hotel. Defendant knowingly rented rooms to Plaintiffs' traffickers and, at the direction of those traffickers, actively facilitated their exploitation. Ex. 7, Plea Hearing Transcript, Plaintiffs A.J. and Q.C. 00171; Ex. 10, Det. Simonds Investigative Summary, Plaintiffs A.J. and Q.C. 00205; Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00103; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00061; Ex.

5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033; Ex. 12, Q.C. Written Statement, Plaintiffs A.J. and Q.C. 00100; Ex. 2, A.J. Dep. 135:23–137:7, 157:1–19, 217:3–8. Put simply, the Days Inn Stockbridge employees knowingly aided the *children* in "doing their job" for their trafficker, fully aware of their complicity in the exploitation.

The employees regularly checked in on the Plaintiffs after buyers left and visited the room—a room strewn with indicators of commercial sex—up to four times a day to deliver clean towels and sheets and change the trash. Ex. 2, A.J. Dep. 157:20–158:18, 172:25–174:15, 176:21–177:20; Ex. 3, Q.C. Dep. 188:14–20; Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033–34; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00059. Furthermore, the traffickers enlisted the help of the employees to monitor the girls' activities. Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00102; Ex. 2, A.J. Dep. 216:3–18. Shockingly, one employee even solicited the Plaintiffs for commercial sex. Ex. 2, A.J. Dep. 161:15-162:18. This inquiry alone highlights Defendant's actual knowledge of A.J. and Q.C.'s circumstances and underscores a clear understanding that the minor Plaintiffs were being sold for sex at Defendant's hotel.

Because the uncontroverted evidence in this case demonstrates that Defendant knew Plaintiffs were being trafficked for sex at the hotel, no genuine issue of material fact remains, and as a result, Plaintiffs are entitled to judgment as

a matter of law. For these reasons, the Court should grant summary judgment in favor of Plaintiffs.

## CONCLUSION

The unrebutted evidence in this case establishes Defendant's liability under the law in favor of the Plaintiffs. The uncontroverted record shows that Defendant knowingly benefitted from participation in a venture that it knew or should have known violated the TVPRA as to Plaintiffs A.J. and Q.C. Because this evidence is uncontroverted, there is no genuine dispute as to any material fact, and Plaintiffs are entitled to judgment as a matter of law. Accordingly, the Court should GRANT Plaintiffs' motion for summary judgment and the case should proceed to trial so that a jury may determine the appropriate damages.

Respectfully submitted this 11th day of October, 2024.

        ANDERSEN, TATE & CARR, P.C.

        */s/ Jonathan S. Tonge*
        PATRICK J. MCDONOUGH
        Georgia Bar No. 489855
        pmcdonough@atclawfirm.com
        JONATHAN S. TONGE
        Georgia Bar No. 303999
        jtonge@atclawfirm.com
        JENNIFER M. WEBSTER
        Georgia Bar No. 760381
        jwebster@atclawfirm.com
        *Attorneys for Plaintiffs*

One Sugarloaf Centre

1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile