EXHIBIT A

PROVISIONALLY SEALED



**Expert Report of Anique Whitmore**
**Dated September 13, 2024**

United States District Court for the Northern District of Georgia
Atlanta Division

*A.J. and Q.C.*

*v.*

*MASP, LLC*

Civil Action File No. 1:23-cv-04247-JPB

Psychological Associates of Buckhead
6300 Powers Ferry Road NW Ste 600-124, Atlanta, Georgia 30326

Plaintiffs A.J. and Q.C. 1370

**TABLE OF CONTENTS**

**Page**

I.      Biography....................................................................................................3

II.     Description of Assignment ........................................................................3

III.    Background: What is sex trafficking?......................................................4

IV.     Psychology of Sex Trafficking ................................................................5

        A.      What techniques do sex traffickers use to recruit their victims and
                cause them to engage in commercial sex?...........................................5

        A.   Why might trafficking victims not try to escape or not to seek help from
                family, medical professionals, or law enforcement?..............................8

        B.   What are the psychological consequences of sex trafficking
                on the victim? ..................................................................................10

V.      Assessment of Plaintiffs.........................................................................13

        A.      Armani Johnson (AJ)……………………………………………13

        B.      Quinnecia Chislom (QC)…………………………………………...19

Addendum A – Curricula Vitae

Addendum B – Consulting Testimony as of September 2024

Psychological Associates of Buckhead
6300 Powers Ferry Road NW Ste 600-124. Atlanta, Georgia 30326

Plaintiffs A.J. and Q.C. 1371

## I. Biography

My name is Anique Whitmore. I am a double graduate of Northwestern University with over 21 years' experience as a licensed psychotherapist. I specialize in forensic psychotherapy and forensic interviewing, and I have provided expert testimony in the areas of sexual abuse, sexual exploitation and human trafficking, intimate partner abuse, trauma-based therapy, and child and adolescent development.

I served as the Director of Forensic Services from 2006 to April of 2014 for the Fulton County District Attorney's Office in Atlanta Georgia where I oversaw forensic services in Superior and Juvenile Court, assisted with pre-trial preparations by collaborating and educating attorneys about an individual's capacity to communicate his or her trauma, and functioned as a resource on how to effectively question experts and analyze victim/witness statements.

I was an instructor for the national forensic training Child First for twenty years, have presented at national conferences, have spoken to Atlanta's high-risk youth, law enforcement, and legal audiences on topics of Child Sexual Abuse, exploitation and human trafficking, domestic violence, child development, and forensic interviewing.

I have been qualified as an expert to testify in over 32 different jurisdictions in the United States and abroad, including federal court, the US Armed Forces, Superior Court, and Juvenile Court. I have testified in both criminal and civil cases and on behalf of civil plaintiffs, civil defendants, prosecutors, and criminal defendants. I consult and instruct with the U.S. Army Judge Advocate General ("JAG") on cases involving trauma and testify in Court Martials nationally when subpoenaed by the Pentagon.

My private practice encompasses a broad spectrum of clientele ranging from adolescents to adults, most of whom present with interpersonal conflict, trauma, and/or relationship discord. My fee is $385 per hour for high-risk populations, including victims of sex trafficking, and this rate is comparable to the rates of my colleagues providing similar services with comparable work history and other experience.

I previously served as the Executive and Clinical Director of the Northwest Georgia Child Advocacy Center and as Program Manager for the Georgia Center for Child Advocacy Center in Fulton and Dekalb Counties.

Finally, I have appeared and analyzed cases as an invited guest expert on CNN, TvOne, the Nancy Grace Show, CBS, and Fatal Attraction. And I have appeared as a special invited consultant on Jada Pinkett Smith's CNN documentary "The Freedom Project," exposing the world of human trafficking.

## II. Description of Assignment

The law firm of Andersen, Tate & Carr, P.C. retained me to provide an expert report in the matter of A.J. and Q.C. v. MASP, LLC, 1:23-cv-04247-JPB pending in the United States District Court for the Northern District of Georgia. I have been asked to explain the

Plaintiffs A.J. and Q.C. 1372

psychological dynamics typically involved in sex trafficking and to describe the impact trafficking has on its victims, including the psychology behind common behaviors I have observed in sex traffickers and their survivors and the effects being trafficked at the Days Inn had on A.J. and Q.C. In providing this report, I have relied on, among other things, my 21+ years of experience as a licensed psychotherapist. I am providing my professional expert opinion as to the matters below. I am not providing any legal opinions.

I have also provided my current curriculum vitae (Addendum A), my retention agreement including schedule of fees (Addendum B), and a list of the cases on which I have provided expert testifying services (Addendum C).

### III. Background: What is sex trafficking?

Sex trafficking of adults occurs when a perpetrator, often referred to as a trafficker or pimp,[1] takes an 'action' (induces, recruits, harbors, transports, provides) and then employs the 'means' of force, fraud or coercion for the 'purpose' of compelling the victim to provide commercial sex acts.[2] Sex trafficking of minors, like A.J. and Q.C., occurs when a minor is induced into a commercial sex act, and does not require any force, fraud, or coercion, though those factors are often also present.[3]

From my experience, laypersons often misunderstand sex trafficking. The most pervasive myth about sex trafficking is that it often involves kidnapping or physically forcing someone into a situation.[4] In reality, most traffickers use psychological means such as tricking, defrauding, manipulating or threatening victims into providing sex, often in exchange for money or some other thing of value. Thus, in many cases, the trafficker succeeds in trafficking his victims by controlling the mind of the victim. As anthropologists Christina and Richard Milner have explained, "A pimp wants his woman's mind more than her body. It is love, loyalty, and obedience he requires as well as a capacity for self-discipline." Brock, a pimp, put it to the Milners this way: "You create a different environment. It's a brainwashing process; the whole thing is creativity."

Laypersons often falsely believe that human sex trafficking only involves humans being sold through complex schemes, shipped in overpriced file cabinets, or preyed upon by a secret nation, a Hollywood star, or famous athlete. Although these occurrences may exist, it is far more common to find sex trafficking between one trafficker and one or just a few victims. Likewise, a trafficking operation might be simple, relying on only internet ads to sell victims for sex. This dynamic resembles a business transaction where there is a "CEO" and his/her employees. These employees market their 'services' online in such places as Backpage, Craigslist, Facebook, Twitter, etc.

---

[1] In this report, I am using the terms "trafficker" and "pimp" interchangeably to refer to the person who traffics persons for sex.
[2] Polaris Project, The Action-Means-Purpose (AMP) Model.
[3] Id.
[4] Dr. Dominique Roe-Sepowitz, an Associate Professor at the School of Social Work and Director of the Office of Sex Trafficking Intervention Research (STIR) at Arizona State University.
Trick Roll Study: Forced Criminality in Sex Trafficking Situations.

Plaintiffs A.J. and Q.C. 1373

Moreover, traffickers are not always strangers to their victims. Indeed, a person can be trafficked by their own family members or legal guardians, spouses and intimate partners. Finally, sex trafficking can occur in any business – not just in sexually oriented businesses like escort services or strip clubs. One of the most prevalent places to find sex trafficking is in the hotel industry, where traffickers find a location for their victims to provide sexual acts.

## IV.    Psychology of Sex Trafficking

### A.    What techniques do sex traffickers use to recruit their victims and cause them to engage in commercial sex?

Sex traffickers prey on vulnerable individuals in various ways, but it is often helpful to divide the process of recruiting and grooming a sex trafficking victim into two stages.

The first stage is the "process of initiation." Traffickers spend time developing the submissive and workable victim who is easier to control. Often, sex traffickers start by carefully and methodically working to gain their victim's trust, create a degree of dependence, and subtly promote the idea that selling sexual services is normal, acceptable, and necessary.

The second stage is "indoctrination," during which traffickers use their authoritarian status to further gain control and build a community with its own rules. In many cases, these rules are much like familiar rules or expectations in a hierarchical "family" structure, with the trafficker serving as the "daddy" for the victims.

In both initiation and indoctrination, traffickers use various physical, emotional, and psychological techniques to cause a victim to engage in commercial sex.[5]  Below is a non-exhaustive list of several common methods for recruiting and grooming sex trafficking victims. Although each case of trafficking might be different, the result is often very similar: Victims are brainwashed to believe that their treatment and living conditions as a sex trafficking victim are normal or even glamorous, which makes the victims even more submissive. The more submissive the victim the less resistant toward their trafficker they become, which leaves the victim vulnerable to undetected emotional and physical abuse.

### Lover Method

Sex traffickers, along with many other criminal organizations, often use the "lover" method to recruit and control victims. In this method, a trafficker convinces his victim that there is a love relationship between them. This love deception is common in many sexual exploitation cases as well.

Sex traffickers often continue to groom their victims by using false romantic love, friendship, and familial love to manipulate victims into cooperating in their own exploitation. The way love is weaponized and wielded depends on the type of trafficking

---

[5] See Author, The Pimp Game: Instructional Guide (2018) (describing the psychological manipulation that traffickers use to control the minds, bodies, and spirits of others).

Plaintiffs A.J. and Q.C. 1374

situation. Romantic love is also a powerful part of the trafficking arsenal. The classic scenario involves "Romeo pimps" who purposefully target women or girls and sweep them off their proverbial feet, then slowly and carefully convince the victim that the pimp's love requires her to sell sexual services.

In the hands of human traffickers, love is one of the most powerful weapons. While the myths and stereotypes about human trafficking make it seem like most trafficking begins with kidnapping and violence, the reality is that a huge percentage of sex trafficking victims were exploited by someone they loved and trusted. The way in which this process plays out is not always the same and not always blatant. But if one understands how sex traffickers groom their targets through manipulation of love, the observer can see it happening and predict the grave outcome.

This lover method may also involve the presentation of gifts, from large gifts such as cars or fancy clothes to something as simple as a cell phone and the chance for the victim to call an ailing family member. Likewise, traffickers might dole out their love strategically, displaying favoritism to certain victims over others to manipulate and retain loyalties. The rotation of favorites often creates confusion and discord among victims leading to isolation, distrust, and competition to become what traffickers call the "bottom bitch," *i.e.*, the victim who is at the top of a hierarchy of prostitutes within a sex trafficking operation.

Once emotionally involved, victims are even more vulnerable to manipulation by the trafficker through, for example, threats, drugs, and psychological coercion. One survivor of exploitation passionately described this method as follows:

When a pimp hits on a woman or teenager who is resistant, "prudish," or scared, he usually does not introduce prostitution immediately. He'll just be a nice guy who buys her a meal and offers her a place to stay. Then he makes his play for her as a lover. When a sexual relationship between them is established and he is sure she loves him, his next move is to set her up to prostitute herself as a condition of her love for him, with lines like, "If you love me, you'll do anything for me." If she resists or refuses, he will likely pout, create a scene, and insist that she does not truly love him. To restore his affection, she finally agrees to do what he asks, telling herself that "one time won't hurt," or "what does it matter." This rationale, used by women faced with unwanted sex from husbands, fathers, lovers, and rapists alike, is an entry into prostitution too. When she concedes to it, he has her hooked. When she turns one trick, he starts pimping her. He gives her nightly quotas, takes the money she earns, and begins to treat her as the slut he intends to make her think she is. He tells her, "You are nothing but a goddamn whore," and makes her believe that only out of the goodness of his heart will he have anything to do with such a despicable creature. She knows that is what society thinks of her. She knows she is a criminal. And most likely, she has nowhere else to turn.[6]

## Force, Threats of Force, and Verbal Abuse

---

[6] Barry, K. (1996) The Prostitution of Sexuality. NYU Press.

Plaintiffs A.J. and Q.C. 1375

Traffickers often use force or threats of force, including rape, beating, captivity, and isolation, to recruit and control a victim. The early period of this type of victimization is often referred to as the "seasoning process" in which the traffickers gain control through violence. Victims are often terrified and succumb at the hands of their traffickers. New victims may be forced to watch physical abuse, forced sexual acts, rape, and torture of other victims to ensure adherence and obedience. These coercive acts of violence keep victims fearful and controllable. Traffickers also often use verbal abuse, including debasing remarks, to demoralize victims and belittle their already fragile self-worth. Traffickers who rely largely on brutal violence to control their victims are often referred to as "gorilla" or "guerilla" pimps.

## Manipulation

Similarly, to ensure unbreakable control, the trafficker toys with the victims' emotions and diminishes the victims' trust and friendships with others. In this method, victims are kept emotionally and physically on edge to create an invisible bond, where the trafficker may be seen as the potential source of comfort and humiliation at the same time. As the relationship grows, the trafficker slowly cuts the victim off from friends and loved ones, strengthening the sense of dependency.[7]

## Other Fraud and Deception

The trafficker typically also uses other forms of deception to recruit and control their victims. This includes false statements and concealment of facts.

For example, traffickers often initially suggest false or misleading facts about the work the victims will engage in, hiding the existence of commercial sex. Traffickers also might make false promises of a glamorous future.

One survivor explained this method as follows:

All the promises made in the first meeting – glamour, travel, money, affection, protection, even childcare if she is on her own with a small child -- turn out to be means of enslavement. When the pimp controls his woman's body and soul, then she is set up to bring other women to him. And the cycle of loving her, seasoning her, and pimping her starts all over again.[8]

## Drug Dependence

Many sex trafficking victims were victimized because of their own drug addiction. Human traffickers often use drugs as bait to recruit people who have a substance use disorder. Or traffickers may use drugs as a means of control over their victims; to force compliance, harder work, longer hours, create dependency, to keep

---

[7] Buncab, Heirendt (2017). Human trafficking. Medical Response to Adult Sexual Assault: A Resource for Clinicians and Related Professionals.
[8] Barry, K. (1995) Pimping: The World's Oldest Profession. OTI Magazine Online.

Plaintiffs A.J. and Q.C. 1376

them "drugged out" so they do not attempt escape, or withhold the source as a form of punishment.

**B.      Why might trafficking victims not try to escape or not to seek help from family, medical professionals, or law enforcement?**

One question I often get is, "Why don't sex trafficking victims try to escape?" Or to put it another way, "Why do these victims endure such suffering without reaching out for help to law enforcement, family members, or friends?"

There are many reasons why a sex trafficking victim would be unable to escape or reach out for help. Below, I have identified several of these reasons, but these are not mutually exclusive or exhaustive. And each victim is different and impacted by these factors in different ways based on their own experiences and vulnerabilities.

*First*, although it may be clear to outsiders that the victim is being trafficked for sex, often the victim herself does not perceive it that way. Indeed, in most trafficking situations, the victim does not realize she was a victim until long after the trafficking has ended or once they've become too embedded and try to escape. This is often because exploitation occurred slowly, with the victim being asked to have sex for money "just this once" or "to help us out." Over time, this behavior becomes normalized, so that the victim thinks she is making decisions on her own.

*Second*, even if a victim might perceive at times that she is a victim of sex trafficking, in many cases, the victim may have formed a "trauma bond" with her trafficker. A trauma bond is a close attachment formed between a perpetrator of abuse and the person they perpetrate against. Trauma bonding occurs as a result of calculated, repetitive infliction of psychological trauma, which is intended to instill terror and helplessness, to destroy the victim's sense of self in relation to others, and to foster a pathological attachment to the perpetrator. Interestingly enough, many victims endure continued abuse and/or "stay" in order to 'relieve' other victims from the attention of their trafficker. Thus, victims because of their shared trauma will at times form undeniable, yet untold, interpersonal connections.

The dramatic ups and downs of a trafficker-victim relationship often result in a powerfully unhealthy relationship infused with trauma bonds. In order to survive, trauma survivors develop a keen awareness of everything their perpetrator does, says, and wants. As a result of this prolonged intense focus on their perpetrator, the trauma survivor risks eventually disconnecting from their own sense of self, needs, and values.[9] When this type of bonding occurs, the trauma survivor is likely to express feelings of love toward her abuser, in addition to fear, and maybe even hatred.

Psychological literature defines trauma bonded victims similar to how forensic psychotherapists define the trafficked human victim. Victims who are coerced into a trauma bond were more likely to have experienced:

---

[9] Theresa Miller (2021). Trauma Bonding: A Therapeutic Help To Break The Cycle of Psychological Abuse.

Plaintiffs A.J. and Q.C. 1377

- *Prolonged abuse* in a context of captivity – with an abuser who uses power and control tactics to keep the survivor submissive, isolated, and unable to flee

- *Terror* – as a result of ongoing violence and/or threats of violence or death against themselves and/or their loved ones and pets

- A *loss of identity* and sense of independence

- *Loss of control* over their body and bodily functions – due to the perpetrator's control over every aspect of their daily life (e.g., if, when, and what they can eat; when and how long they are allowed to sleep).

- *Social Isolation* – from everyone except the perpetrator – so that the only emotional connection the survivor has available is with the perpetrator.

- *Coercion* – by the perpetrator, to witness or engage in the violation of others

In many cases, due to the sustained manipulation and brainwashing, a trafficker simply needs to order his victims not report anything, and the victims—out of the loyalty to the trafficker that the trafficker has cultivated—just comply.[10]

*Third*, a fear of violence might animate a trafficking victims' decision not to try to escape or seek help. In some cases, traffickers directly threaten their victims with violence if the victims try to escape or seek help from outsiders. Traffickers might also threaten violence against the victims' family or friends if the victim tries to escape. And a sex trafficking victim might be unwilling to attempt an escape from her trafficker for fear that another, scarier or more dangerous pimp might traffic them instead.

*Fourth*, similarly, the sex trafficking victim may fear the uncertainty of life outside of trafficking more than the known fear of her trafficker or the trafficking itself. This happens often when a victim has become drug addicted and homeless. Not unlike the adage of, "the grass isn't always greener on the other side". Many victims are coerced and manipulated to believe there 'is' no other 'side' outside of the exploiter's control.

*Fifth*, often a trafficking victim fears law enforcement. This could be because of a history of negative interactions with law enforcement. But in many cases, this fear grows out of warnings from her trafficker that if the victim reports the trafficking to law enforcement, the victim herself will face serious criminal consequences.

*Sixth*, a trafficking victim may feel like there is no point in reaching out for help or trying to escape if the victim has been surrounded by others who are trafficked and has either seen others unsuccessfully try to escape or seek help or has herself tried, but failed,

---

[10] Sanchez RN, Rosario & Stark, Sharon W. PhD. (2014). The Hard Truth About Human Trafficking.

Plaintiffs A.J. and Q.C. 1378

to get help or escape.

The reasons above are not the only ones that factor into a victim's inability or hesitancy to seek help or try to escape, but they are some of the most common ones.

### C. What are the psychological consequences of sex trafficking on the victim?

Sex trafficking has an impact on the individuals it victimizes in all areas of their lives. As previously stated, every stage of the trafficking process can involve physical, sexual and psychological abuse and violence, deprivation and torture, the forced use of substances, manipulation, economic exploitation and abusive living conditions.[11]

Trafficking usually involves prolonged and repeated trauma. This trauma can lead to a variety of psychological problems including, for example, post-traumatic stress disorder, anxiety, depression, alienation, disorientation, aggression and difficulty concentrating, and homicidal or suicidal ideations. Moreover, studies have indicated that trauma worsens during the trafficking process and even persists beyond the end of any exploitive act or acts.[12] This means that, without proper help, a trafficking victim's psychological condition could very well worsen for many months or years after the trafficking ended. And research shows that additional psychological damage occurs when bystanders observe traumatic conditions and fail to act on behalf of victims.[13]

The results of the traumatic experience of trafficking often manifest when a trafficking victim is asked to communicate about the trafficking. In many cases, a victim may be unable to comprehend what happened to her without extensive psychological treatment.

And even then, victims often feel instantly re-traumatized when they are asked to talk about what occurred. This can make the process of questioning sex trafficking victims very challenging.

I have worked extensively with the Atlanta FBI Drug and Special Forces division to help guide law enforcement and others in how to talk to sex trafficking victims. In my experience, it is often difficult to find the balance of questioning for evidence and the well-being of the victim themselves. Victims may appear to those around them, even support persons, to be uncooperative, irritable, hostile, aggressive or ungrateful. The stigma attached to them as victims has been shown to have a significant and ongoing impact on their lives, including the trauma experienced by the individual victim as well as the possibility of physical rejection by family and/or community when reintegration is attempted. The long-term consequences of human trafficking on individuals are complex and depend on many factors, with no guarantee of recovery. Revictimization is often a further consequence of the trafficking, for which public policy has yet to find a solid resolution.

---

[11] *See* Panigabutra-Roberts. (2021). Human Trafficking in the United States. Part I. State of the Knowledge.
[12] United Nations Office on Drugs and Crime (2008). An Introduction to Human Trafficking: Vulnerability, Impact and Action.
[13] Hamby, Weber, Gych & Banyard, 2016; Herman, 2000; Taylor, Banyard & Hamby, 2016

The trauma of trafficking could also have an effect on a victim's memory. Our brains are truly extraordinary; yet fragile and absorbent to the environment and experiences that surround us. Thus, when exposed to trauma, the brain can impact four different types of memory: semantic, episodic, emotional, and procedural. When we learn something new, we create new connections between our neurons. We rewire our brains to adapt to new circumstances. Thus, a traumatic incident can cause a great deal of stress in both the short term and the long term. That stress response can have an impact on different areas of the brain, such as the hippocampus, amygdala and prefrontal cortex. In the 1960s, it was discovered that neurons could "reorganize" after a traumatic event. Those areas of the brain can change in shape and volume, and experience diminished function; because the structure of the brain itself has changed.[14]

As such, psychological trauma is experienced in the brain as a flood of chemicals called "neurotransmitters" into the tiny spaces between brain cells called "synapses." Trauma may result in physiological changes in the brain that happen as the result of our interactions with our environment. From the time the brain begins to develop in utero until the day we die, the connections among the cells in our brains reorganize in response to our changing needs. This dynamic process allows us to learn from and adapt to different experiences. Different pathways form and fall dormant, memories are created and are discarded, according to our experiences.

The hippocampus, amygdala and prefrontal cortex are areas of the brain that are strongly associated with memory function. The prefrontal cortex helps process working memory, the information that we need to remember on an everyday basis. The hippocampus is also a major memory center in the brain. The left hippocampus focuses on memorizing facts and recognition, while the right hippocampus is associated with spatial memory.

The hippocampus also gives us a way to learn by comparing past memories with present experiences. And the amygdala processes fear-based memories (*i.e.*, the fear of a hot stovetop after getting burned once). The amygdala is also believed to help with the formation of long-term memory. Trauma-based memory loss, therefore, can easily occur when the trauma creates stress that negatively affects the brain. Trauma can shutdown episodic memory and fragment the sequence of events. The hippocampus is responsible for creating and recalling episodic memory. Trauma can prevent information from different parts of the brain from combining to make a semantic memory, *i.e.*, a memory of meaning.

Physical trauma can greatly affect memory, especially if brain damage occurs as a result of the injury. Many of victims of trafficking will speak of being beaten in the head, being thrown into walls, backhanded, or stomped. Physical trauma such as a head injury can damage the brain and impair a person's ability to process information and store information, the main functions of memory.

Severe injuries and physical trauma can also produce post-traumatic stress disorder, which can cause temporary memory loss to help a person cope with the

---

[14] Fuchs, E., & Flügge, G. (2014) Adult Neuroplasticity: More than 40 years of research.

Plaintiffs A.J. and Q.C. 1380

traumatic event that caused the injury. In the case of physical trauma, the length of memory loss depends on the severity of the injury. And factors such as malnutrition, physical exhaustion, and drug addiction can also increase the extent of a trafficking victim's memory loss caused by PTSD.

Emotional or psychological trauma can also affect memory. Memory loss is a natural survival skill and defense mechanism humans develop to protect themselves from psychological damage. Violence, sexual abuse and other emotionally traumatic events can lead to dissociative amnesia, which helps a person cope by allowing them to temporarily forget details of the event. With this type of memory loss, a person will often suppress memories of a traumatic event until they are ready to handle them, which may never occur. This situation-specific memory loss helps block out traumatic events, they can also experience confusion or depression. Dissociative amnesia can range from mild to severe, and it can lead to dysfunction in relationships and the daily activities associated with normal life.

Emotional or psychological trauma can also lead to PTSD stress disorder, which can manifest itself in different ways including flashbacks of the event and intrusive, unwanted thoughts about the trauma. Repressed memories and PTSD are also common. Without treatment, these repressed memories may resurface at any time with a trigger event and if they are revisited over and over, the brain continues to experience the trauma once again each time.

Return and reintegration for a trafficked individual is a long-term and complex process. Even when physical problems can be addressed and stigma overcome, trauma and psychological damage make recovery a difficult task rendered even more so by the problems in accessing necessary resources and when trying to communicate their nightmare with support persons and family. Victims learn survival skills in order to make a better life for themselves at the hands of their traffickers, but at some point, victims may reach total mental defeat and hopelessness. In this way, the trafficked individual leads a long road to recovery because of the mental and coercive manipulation sustained.

Some trafficked victims may not be able to adjust to a lifestyle that they previously considered "normal" without significant and persistent intervention, home relocation, intense trauma informed psychotherapy, and emotion regulation treatment focused on safety and stabilization. If employment can be found, a trafficked person's behavior, as a result of the experiences of severe trauma, may make it difficult to retain employment. The need to find trusting, loving, and empowering interpersonal relationships is dramatically skewed by the trafficking experience. Healthy, loving, relationships do not involve violence and abuse and are characterized by physical and emotional safety, mutual respect, honesty, accountability, fairness, shared responsibilities to name a few. The trauma bonded relationship is the opposite, involving violence and a lack of physical and emotional safety, mutual respect, honesty, etc.[15]  In addition, many victims don't seek the before noted available assistance nor do they dare ask for help because they lack the awareness that help exists and they have essentially been brainwashed into fear

---

[15] Zimmerman, Hossain, & Watts. (2021). Human trafficking and health: A conceptual model to inform policy, intervention and research. Social Science & Medicine.

Plaintiffs A.J. and Q.C. 1381

which disallows them to visualize an afforded opportunity to seek another life's path.

## V.    Assessment of Plaintiffs

The law firm of Andersen, Tate & Carr, P.C. has asked for a clinical assessment of the plaintiffs in the above-referenced case. I have been asked to evaluate the plaintiffs and provide my opinion as to the following:

1.    What methods, if any, did the victim's trafficker use to exploit the victim?

2.    Why did the victim not try to escape or seek help earlier?

3.    What sort of effects, if any, has the trafficking at the Days Inn had on this victim?

To reach my conclusions, I interviewed the plaintiffs individually via Zoom and reviewed the documents identified below as well as the allegations of sex trafficking. In doing so, I explored each plaintiff's historical trauma, past and present behavior, and the possible impact her experiences, including the trafficking, have had on her current social and emotional endurance.

When I met with AJ and QC, I informed them that the purpose of my interview was to provide an evaluation in the context of these cases. I also explained the confidentiality limitations. I explained that no client-treating relationship would be established between us, and that the information each shared with me would inform a written report I would issue to her attorney. And I explained that my professional responsibility was to provide an objective evaluation that would consider a variety of available information, including the plaintiff's own self-report.

My conclusions below are based on the information made available to me and my own expertise in this subject. If additional information is provided after the report is submitted, an appended report may be provided. The additional information may or may not change the opinions and conclusions contained within.

## Armani Johnson (AJ)

### 2.    Sources of Opinion

I interviewed AJ on August 14, 2024. AJ remained attentive during the course of this assessment, engaged in conversation readily, was fully lucid to her surroundings, and displayed the ability to stay in the present and exert full effort on tasks presented to her.  AJ maintained attention and concentration throughout the entire interview. AJ understood the mental health assessment process and instructions without contest. In the opinion of this examiner, information obtained through this assessment is considered valid.

In addition to this interview, I considered the following documents that the plaintiffs' attorney provided to me:

- AJ Depo.
- QC Depo
- Alpesh Patel 30(b)(6) Depo
- Def. MASP's Response to Pls' 1st RPDs
- Def. MASP's Response to Pls' 1st ROGs
- Def. MASP's Supp. Response to Pls' 1st ROGs
- Def. MASP's Supp. Response to Pls' 1st RPDs
- 2024-01-12 A.J. and Q. v. MASP - Def Docs Produced-SEARCHABLE (BATES – DEF00001-000011)
- Pl. QC's ROG Responses
- Pl. AJ's ROG Responses
- Supp. ROG Resp. – AJ
- Supp. ROG Resp. – QC
- 012798_121221_151922_10.pdf
- 10-V-40029_Jackson, Corey Everett_Disposition.pdf
- 12-M-5651_Jackson, Corey Everett_Transfer To Superior.pdf
- 12-V-29183_Jackson, Corey Everett_Disposition.pdf
- 14-V-2311_Jackson, Corey Everett_Disposition.pdf
- 15-M-3885_Johnson, Armani_Disposition.pdf
- 16-M-6047_Johnson, Armani_Disposition.pdf
- 17-T-16180_Johnson, Armani Shanelle_Disposition.pdf
- 2010-12-16 – Investigative file on MATCH prostitution sting.pdf- Corey Jackson.PDF
- 2012.06.25 Cobb County Police 12068334_R.PDF
- 2012.09.05 Cobb County Police 12097149_R.PDF
- 2013.12.13 Indictment-Craig Hill and Tkeyah Adams.pdf
- 2014.06.19 Plea Hearing, Corey Jackson.pdf
- 2014.06.23 Plea and Sentence- Craig Hill.pdf
- 2014.06.23 Plea and Sentence- Tkeyah Adams.pdf
- 2015 Police Reports.pdf Wilson, Johnson.pdf
- 2016.11.03 16110098_Redacted.pdf Smyrna Police, Case No. 16-110098.pdf
- 2016-11-03-Smyrna PD-Incident Report No. 16 110098.pdf
- 2018.10.02 Gwinnet Magistrate Warrant-ankle device.pdf
- 2022-11-02-Document 33- Second Amended Complaint for Damages (A.J. v. Pacific Capital Funding, LLC, et al.).pdf
- 2191 Northwest Parkway Marietta Police Dept. 12.PDF.pdf- Corey Jackson.PDF
- Booking_Reports_for_Armani_Johnson_1030480_-_certified.pdf
- Client's documents from home (random court documents).pdf
- Cobb County PD Records (Searchable-A.J.).pdf
- Cobb County PD-Citation-Speeding (A.J.).pdf
- Cobb County State Court Records- Case No. 15 M 3885, Prostitution, Disorderly Conduct (A.J.).pdf
- Cobb County State Court Records-Case No. 16 M 6047, Pimping (A.J.).pdf
- Cobb Superior Court Records (A.J.).pdf
- Corey E. Jackson DA File (1).pdf
- Corey E. Jackson DA File (2).pdf
- Corey E. Jackson DA File (3).pdf
- dscf0950.pdf

Plaintiffs A.J. and Q.C. 1383

- Guilty Plea Transcript- Lanyea Clark.pdf
- image11601.pdf
- image2185.pdf
- IMG_0035.pdf
- IMG_0036.pdf
- IMG_0037.pdf
- IMG_0038.pdf
- IMG_0039.pdf
- IMG_0040.pdf
- IMG_0041.pdf
- IMG_0042.pdf
- IMG_0043.pdf
- IMG_0044.pdf
- IMG_0046.pdf
- IMG_0047.pdf
- IMG_0048.pdf
- IMG_0049.pdf
- IMG_0050.pdf
- IMG_0057.pdf
- IMG_0058.pdf
- LANYEA CLARK DECLARATION.pdf
- Plaintiffs A.J. and Q.C. 1363- 05-16-14
- Plaintiffs A.J. and Q.C. 1364- 05-23-14 1900
- Plaintiffs A.J. and Q.C. 1365- 05-23-14 2100
- Plaintiffs A.J. and Q.C. 1366- 012414Adams-Hill01.pdf
- Adams-Hill02.pdf
- Adams-Hill03.pdf
- Adams-Hill04.pdf
- Adams-Hill05.pdf
- Adams-Hill06.pdf
- Adams-Hill07.pdf
- Adams-Hill08.pdf
- Adams-Hill09.pdf
- Adams-Hill10.pdf
- Plaintiffs A.J. and Q.C. 00460- Armani Johnson
- Plaintiffs A.J. and Q.C. 00461- Quinecia Chilsom
- Plaintiffs A.J. and Q.C. 00462- Craig Hill
- Plaintiffs A.J. and Q.C. 00463- Rachel Justice
- Plaintiffs A.J. and Q.C. 00464- Tkeyah Adams
- .case
- VTS_01_1.VOB (Armani Johnson)
- VTS_01_2.VOB (Armani Johnson)
- VTS_01_3.VOB (Armani Johnson)
- VTS_01_4.VOB (Armani Johnson)
- VTS_01_5.VOB (Armani Johnson)
- VTS_01_6.VOB (Armani Johnson)
- VTS_01_7.VOB (Armani Johnson)

Plaintiffs A.J. and Q.C. 1384

- VTS_01_8.VOB (Armani Johnson)
- VTS_01_9.VOB (Armani Johnson)
- VTS_01_1.VOB (Quinnecia Chilsom)
- VTS_01_2.VOB (Quinnecia Chilsom)
- VTS_01_3.VOB (Quinnecia Chilsom)
- VTS_01_4.VOB (Quinnecia Chilsom)
- VTS_01_5.VOB (Quinnecia Chilsom)
- VTS_01_6.VOB (Quinnecia Chilsom)
- VTS_01_7.VOB (Quinnecia Chilsom)
- VTS_01_8.VOB (Quinnecia Chilsom)
- VTS_01_9.VOB (Quinnecia Chilsom)
- VTS_01_1.VOB (Craig Hill)
- VTS_01_2.VOB (Craig Hill)
- VTS_01_3.VOB (Craig Hill)
- VTS_01_4.VOB (Craig Hill)
- VTS_01_5.VOB (Craig Hill)
- VTS_01_6.VOB (Craig Hill)
- VTS_01_7.VOB (Craig Hill)
- VTS_01_8.VOB (Craig Hill)
- VTS_01_9.VOB (Craig Hill)
- VTS_01_1.VOB (Rachel Justice)
- VTS_01_2.VOB (Rachel Justice)
- VTS_01_3.VOB (Rachel Justice)
- VTS_01_4.VOB (Rachel Justice)
- VTS_01_5.VOB (Rachel Justice)
- VTS_01_6.VOB (Rachel Justice)
- VTS_01_7.VOB (Rachel Justice)
- VTS_01_8.VOB (Rachel Justice)
- VTS_01_9.VOB (Rachel Justice)
- Track01.cda (Tkeyah Adams)
- 13001660_Redacted.pdf
- 13009758_Redacted.pdf
- 13009887_Redacted.pdf
- 13023474_Redacted.pdf
- 13030435_Redacted.pdf
- 13037138_Redacted.pdf
- 13048550_Redacted.pdf
- 13052897_Redacted.pdf
- 13053109_Redacted.pdf
- 13067264_Redacted.pdf
- 13074627_Redacted.pdf
- 14005743_Redacted.pdf
- 14007799_Redacted.pdf
- 14009552_Redacted.pdf
- 14017051_Redacted.pdf
- 14018588_Redacted.pdf
- 14019455_Redacted.pdf

- 14034149_Redacted.pdf
- 14038077_Redacted.pdf
- 14046937_Redacted.pdf
- 14054955.pdf
- 14055129_Redacted.pdf
- 14055962_Redacted.pdf
- 14058778_Redacted.pdf
- 14066292.pdf
- 14066292_Redacted.pdf
- 14066909_Redacted.pdf
- 14071840_Redacted.pdf
- 14071841_Redacted.pdf
- CobbStateCourt10V40029.PDF
- CobbStateCourt12M5651.PDF
- CobbStateCourt12V29183.PDF
- Corey Everett Jackson- PIMPING- Mugshot & Arrest Information.pdf
- Couple facing human trafficking charges _ News _ henryherald.com.pdf
- Days Inn Call Log.pdf
- GA- Sex Offender Registry- Corey E. Jackson.pdf
- Marietta PD Incident Report .pdf
- Plaintiffs A.J. and Q.C. 1367- 012714
- Plaintiffs A.J. and Q.C. 1368- 12714
- Plaintiffs A.J. and Q.C. 1369- DW_D0205.wav
- Reviews – Days Inn 7385 Hannover Parkway Stockbridge (EC)_Redacted.pdf
- Reviews for Days Inn (Stockbridge).pdf
- RRI Smyrna- Armani Johnson.pdf
- Savannah Police Department-Records Response (A.J.).pdf
- Screenshot 2022-06-13 103822.pdf
- Screenshot 2022-06-13 104028.pdf
- Screenshot 2022-06-13 110007.pdf
- Screenshot 2022-06-13 132249.pdf
- Screenshot 2022-06-13 132511.pdf
- Screenshot 2022-06-13 132810.pdf
- Screenshot 2022-06-13 133424.pdf
- Screenshot 2022-06-13 134143.pdf
- Screenshot 2022-06-13 134225.pdf
- Screenshot 2022-06-13 134345.pdf
- Screenshot 2022-06-13 134409.pdf
- Screenshot 2022-06-13 134501.pdf
- Screenshot 2022-06-13 135328.pdf
- Screenshot 2022-06-13 135524.pdf
- Smyrna PD ORR.pdf
- Smyrna PD Records (A.J.).pdf
- SUCR-20140012957.pdf Lanyea Clark- Co-Defendant with Corey Jackson- Lesser offense.pdf
- SUCR-20140057154.pdf Notice of Intent to Introduce other Cases- Corey Jackson.pdf

Plaintiffs A.J. and Q.C. 1386

- SUCR-20140070780.pdf Corey Jackson Sentence.pdf
- SUCR-20190105112.pdf Lanyea Clark- Co-Defendant with Corey Jackson-Prostitution Sentence.pdf
- SuperiorCourtofCobbCounty13-9-4897-53.pdf


## 2.  Opinion

### Trafficker's Modes of Recruitment and Securing Compliance

Trafficker Craig (aka Chris) Hill's methods of recruitment and securing compliance were multifaceted, involving a combination of false promises, manipulation, coercion, and psychological intimidation.

AJ explains how her trafficking began when she and her trafficker, a man she met on Date Hookup, began messaging back and forth.  Eventually, in a vulnerable state, AJ agreed to meet up with her trafficker.  The trafficker capitalized on the minors' vulnerable state by offering them assistance and support, promising the minors new clothes, food, jobs, and shelter.  The trafficker did not tell AJ or QC what they would be doing.

The trafficker resorted to coercion, emotional manipulation, and fear tactics to maintain control of the minors. The trafficker would become angry when the girls did not follow his rules or meet his quota. Additionally, the trafficker emphasized his power and the presence of others watching them, creating an environment of constant surveillance and intimidation.  Furthermore, he displayed weapons and made it clear that he could use them if necessary, reinforcing the power imbalance and the minors' fear of retaliation. The trafficker used this combination of methods to compel AJ and QC to engage in commercial sex.

### Why didn't AJ seek help or try to escape sooner?

AJ's decision not to leave or seek help was influenced by a complex interplay of emotions and fears. AJ's feelings toward her trafficker fostered a sense of attachment and dependence, which was further reinforced by the trafficker's manipulative tactics. Simultaneously, AJ struggled with a fear of harm and the potential consequences if she attempted to leave.

AJ's fear was compounded by the knowledge that some hotel employees, including the front desk clerk and the Caucasian male who worked the day shift, were familiar with her trafficker. This familiarity reinforced her belief that there was no safe avenue for escape, as those who might have been able to help appeared complicit or indifferent to the minors' trafficking.

Moreover, AJ and QC were under constant surveillance, a tactic used by their trafficker to maintain control over them. The trafficker told the minors that they were being watched, and they knew this to be true based on his ability to monitor their movements

Plaintiffs A.J. and Q.C. 1387

without their knowledge. These factors combined to create a powerful sense of entrapment that kept AJ from seeking help sooner.

**<u>Impact of Trafficking</u>**

AJ suffers in many ways due to her trafficking at the Days Inn—emotionally, mentally, and physically. She struggles with significant anxiety and a pervasive sense of mistrust, which affect her relationships and daily life.  AJ's trafficking experience has made it difficult for AJ to trust anyone, even those close to her. This mistrust extends to both men and women, as AJ notes that women are often involved in grooming others for men, further complicating her ability to form relationships.

Intimate relationships are particularly hard for AJ, as they often make her feel as though she is being taken advantage of, triggering memories of her exploitation. AJ struggles with self-esteem and acknowledges difficulties in romantic relationships, where she often accepts behavior that mirrors the mistreatment she became accustomed to during her trafficking. She describes herself as co-dependent in relationships, expressing uncertainty about setting boundaries and recognizing healthy dynamics.

Diagnosed with anxiety, AJ struggles with ongoing mental health challenges, including flashbacks and emotional distress. These flashbacks disrupt AJ's ability to function and maintain emotional stability. These flashbacks and emotional burdens contribute to her difficulty in forming healthy relationships and moving forward in her life. Her past experiences also make her feel as though she is constantly being watched or pursued, further exacerbating her anxiety.

AJ often reflects on the childhood that she lost due to trafficking, stating that her childhood was "ripped away" by her exploitation. This loss has deeply affected her self-worth and self-esteem, leaving her with feelings of guilt and a distorted self-image. She often feels different from those around her, burdened by the weight of her past. Her emotional pain is difficult to release, and she continues to struggle with letting go of these painful memories.

My clinical and forensic evaluation of AJ confirmed symptoms consistent with a diagnosis of Post-Traumatic Stress Disorder (PTSD). These findings are supported by numerous statements made during my assessment, which highlight the psychological and emotional toll of her trafficking experience. PTSD was also supported in the material I reviewed for this opinion. The dynamics of her trauma continue to impact her daily life, underscoring the severity of her mental health struggles.

## Quinnecia Chislom  (QC)

## 1. Sources of Opinion

I interviewed QC three times on August 7, 2024, August 12, 2024 and August 21, 2024. QC remained solicitous during the course of this assessment, engaged in conversation readily, was fully lucid to her surroundings, and displayed the ability to

Plaintiffs A.J. and Q.C. 1388

stay in the present and exert full effort on tasks presented to her. QC maintained attention and concentration throughout the interviews. QC understood the mental health assessment process and instructions without contest. In the opinion of this examiner, information obtained through this assessment is considered valid.

In addition to these interviews, I reviewed the above-referenced documents. *See* Armani Johnson (AJ), Section 1 of this report.

## 2.  Opinion

### Trafficker's Modes of Recruitment and Securing Compliance

Trafficker Craig Hill's methods of recruitment and securing compliance were multifaceted, involving a combination of false promises, manipulation, coercion, and psychological intimidation.

The trafficker lured AJ and QC by offering them assistance and support during a vulnerable time. AJ shared with QC that Chris had promised new clothes, food, jobs, and shelter, which were essential needs for the victims. This promise of security convinced QC to trust the trafficker, despite her initial doubts about his intentions. QC was convinced they would get a job and shelter if they went with the trafficker to the hotel.

The trafficker resorted to coercion, emotional manipulation, and fear tactics to maintain control. The trafficker would become angry when the girls did not follow his rules or meet his quota.  Additionally, the trafficker made clear his power and the presence of others watching them, creating an environment of constant surveillance and intimidation. Furthermore, he displayed weapons and made it clear that he could use them if necessary, reinforcing the power imbalance and the girls' fear of retaliation trafficker used this combination of methods to compel AJ and QC to engage in commercial sex.

### Why didn't QC seek help or try to escape sooner?

QC's reluctance to seek help or attempt to escape earlier can be understood through the lens of her circumstances and the tactics her trafficker used to control her. The perceived presence of constant surveillance reinforced QC's belief that escape was impossible. Even when the minors got locked out of their room and interacted with the front desk, QC did not seize the opportunity to ask for help, as she felt the risks too high. This fear was compounded by the fact that the employees at the Days Inn Stockbridge appeared complicit or indifferent to the minors' trafficking. QC's fear of punishment or reprisal from the trafficker loomed large, making the prospect of leaving more daunting than staying.

Morevoer, QC was deeply ashamed of what she had been forced to do, convinced that her mother would reject her if she returned home. This shame and fear of rejection kept her tied to the trafficker, as returning to him seemed liked a better option than facing her mother or the unknown consequences of leaving.

Finally, QC's decision to stay was also influenced by a psychological bond with the trafficker. She felt as though the trafficker "owned" her, a belief reinforced by his manipulation and the environment he created. Her fear that the police could not protect her from the trafficker, and her belief that he would find her no matter where she went, contributed to her decision to stay. In her mind, returning to the trafficker, despite the abuse, felt like the only viable option. Ultimately, QC did not seek help or attempt to escape sooner due to the overpowering influence of these factors.

## Impact of Trafficking

QC's trafficking experience at the Days Inn has had a profound impact, leaving enduring effects on her emotional, psychological, and personal well-being. QC reports struggling with mental fog, anxiety, and depression, which have made it difficult for her to fully process the events of her exploitation. QC frequently describes her inability to remember specific details, stating that when she discusses her trafficking, she mentally distances herself from the trauma, a response indicative of the severe impact it has had on her.

Post-trafficking, QC faced tremendous fear, particularly of her traffickers, worried they might seek retaliation against her. Additionally, the trauma of her experience deeply affected QC's self-image. For a long time, she felt shame, believing that others could see her only as a "prostitute" or someone "nasty." This perception contributes to her struggles with self-worth, particularly in intimate relationships, where she feels inadequate and triggered by reminders of her past. Her triggers also extend to specific places, such as hotels, which remind her of her trafficking.

QC reports that the trauma and its effects began to become apparent after her rescue from the Days Inn, highlighting a stark contrast between her life before and after the trafficking. Currently, her ability to stay present is frequently disrupted by panic attacks and anxiety, making it challenging for her to remain focused and mindful. This has a negative impact on both her personal and professional life. Despite her dedication to her daughter and efforts to work through her emotional pain, the lasting effects of her trauma are clear. She continues to struggle with achieving stability and balance while dealing with the ongoing repercussions of her experience. Additionally, QC has experienced occasional suicidal thoughts, contemplating the nature of existence after death.

Through clinical evaluation and expert analysis, it is evident that QC exhibits symptoms consistent with Post-Traumatic Stress Disorder (PTSD). These symptoms are closely linked to her experience of exploitation during her childhood.

Signed: _____  Date: ____9.13.24_____

**PSYCHOLOGICAL ASSOCIATES OF BUCKHEAD**
**ATLANTA, GA 30305**
**678.446.0104**

---

### PROFESSIONAL EXPERIENCE

**Psychological Associates of Buckhead**
**Founder, Owner, Psychotherapist**                                                      *October 2010 – Present*
Small private business where individual therapy, family counseling, life coaching, couples counseling, consultation on criminal cases involving child sexual abuse, adult sex crimes, exploitation and trafficked victims, cycle of violence, domestic violence, and specialized trainings and lectures are provided.  Focus on areas of anxiety, parenting, conflict resolution, and the broad spectrum of adolescent and adult trauma/conflict is a specialty. Practice includes mental health assessments for court resolution.

**Child First Georgia and Advanced Child First Georgia**
*Instructor for American Prosecutors Research Institute's National Center*                *July 2004 - Present*
Train Forensic Interviewers and multidisciplinary team members across Georgia in 40 and 24-hour course trainings designed by and for the front line child abuse professional.  Selected by the Governor's Office, Sponsored by The Office of the Child Advocate, The Department of Human Resources' Division of Family and Children Services, and Children's Advocacy Centers of Georgia.

**Department of Family and Children's Services**
*Contracted Instructor*                                                                  *February 2014 – July 2016*
As solicited by the Governor's Office and The Georgia Center for Child Advocacy consultation consists joining in their 2014 initiative to train 1500 State of Georgia employees who have direct contact with families being assessed for health and safety.  Training will include, but not limited to, child sexual abuse, exposure to domestic violence, intervention/prevention, leadership and supervisory consult, and multidisciplinary approach toward the investigation of child/familiar safety and abuse.

**The Office of the Fulton County District Attorney, Atlanta Georgia**
*Director of Forensic Services*                                                          *May 2006 – April 2014*
Managed forensic services of the Fulton County District Attorney's Office relating to crimes against woman, children and other vulnerable individuals.   Responsibilities included forensic interviewing, assistance with trial preparation, and consultation for sexual and physical abuse cases in both Superior and Juvenile courts.  Supervision and forensic training of pretrial victim witness advocates who deal with identified victims while *overseeing* forensic services in both Superior and Juvenile Court
- Assist with pre-trial preparations, function as a resource on how to effectively question experts, analyze victim/witness statements, and educate attorneys about an individual's capacity to communicate and recall memory, their process of disclosure, and how they experience abuse
- Develop and manage a specialized unit at Juvenile Court handling juvenile victims and case outcome - ensuring safety, healing, and protection
- Direct Court School in Superior Court
- By means of community outreach, perform as liaison between prosecutors, professionals in the area of child neglect, and MDT partners in Fulton County
- Provide crisis intervention & act as advocate in coordination with the Victim Witness Assistance Program

**The Northwest Child Advocacy Center, Inc.  *Harbor House*, Rome Georgia**
*Executive/Clinical Director*                                                            *September 2005 – May 2006*
Responsible for the overall functioning of the Center and dedicated to the facilitation of an interdisciplinary team approach to child abuse investigations while executing and directing the management of community relations and the forensic practice.
- Responsible for employee management, general administration, developing and executing the annual budget and fund augmentation; including the annual fundraising campaign.
- Serve as team liaison to the Child Abuse Protocol Committee and supervise the Floyd County CASA Program.

Plaintiffs A.J. and Q.C. 1391

- Consult with regional agencies regarding team approach to child abuse while facilitating multidisciplinary team meetings.
- Conduct forensic interviews and evaluations of children who have been allegedly abused
- Provide training and supervision for forensic interviewers county, state, and nationwide
- Supervise the implementation of abuse prevention programs in elementary schools.
- Provide crisis intervention and short-term therapy services to identified victims and their non-offending caregivers.

**Georgia Center for Children, Inc., Atlanta Georgia**
*Program Manager – Fulton County*                                                          *March 2003 – September 2005*
Managed Fulton County's Child Advocacy Center, the largest county in Georgia which houses Atlanta, and the Center's activities to include management of community relations, the forensic practice, the annual program budget, and human capital; conducted employee evaluations while assessing productivity and performance.
- Ensured quality services and operations that were consistent with Board-established policies and procedures and consistent with the strategic plan for granting purposes.
- Provided and developed public speaking opportunities to include; workshops, educational programs, seminars, and lectures.
- Marketed and educated the safety of children through coordinating the services of the Center with interagency partners, to include:  Law Enforcement, the District Attorney's office, Department of Family & Children's Services, public mental health, physicians and hospitals, the State Child Advocate's office, and other key players in the community.
- Facilitated the Fulton County Multidisciplinary Team Meeting
- Provided Forensic Interviews and Forensic Evaluations of children alleged to be victims of abuse, in coordination with investigative agencies and provide psychotherapy for the Center's clients and families.
- Offered support and direction through clinical supervision for clinical staff and graduate interns.

**Georgia Center for Children, Inc., Atlanta Georgia**
*Forensic Specialist and Psychotherapist*                                                      *April 2002 – March 2003*
Provided individual, family, and group psychotherapy focusing on the services for children who were victims of sexual abuse.  Conducted videotaped forensic interviews for Fulton and DeKalb counties of children and adolescents in cases of suspected sexual abuse, physical abuse, and as a witness to homicide.  Worked closely with the District Attorney's office and Police districts in order to ensure indemnity with ongoing investigations and caseloads.

**Accenture, Atlanta Georgia**
*Consultant - Human Performance/Change Management*                                    *2000 – 2001*
Provided human performance and organizational solutions allowing for maximal performance of an organization.
- Created and implemented an eCulture for a startup B2B organization allowing for a more unified cohesive organization
- Developed and implemented change strategy solutions while concentrating on organizational development
- Provided performance management focusing on employee output and return
- Advanced and help perfect knowledge management systems

**The Family Institute at Northwestern University, Evanston Illinois**
*Site Coordinator & Psychotherapist, MA*                                                        *1999 –2000*
*Psychotherapy Extern*                                                                              *1998-1999*
*Research Assistant*                                                                                 *1998-1999*
Provided brief and long term individual and family therapy to a diverse client population.  Directed all facets of collecting, coding and analyzing research data for The W.I.N.G.S. Program; a study exploring the role of violence prevention in the inner city.  Provide teacher in-service and consultation.  Training specialist for all research assistants.
- Standardized and simplified the research process by developing a valid and reliable instrument to measure parent/ child interactions within a controlled sample group.
- Improved overall research efficiency by creating a systematic method for expediting the collection of research data.
- Increased subject participation at all research sites by establishing community relations program.
- Improved Chicago's YMCA Day Care programs by coordinating and providing counseling services for teachers and parents.
- Improved teacher performance by delivering consultations, communication training, and values training, improving system cooperation between staff and parental involvement, and teacher effectiveness.
- Expanded depth of the research project by identifying critical tasks and training a team of research assistants for key roles.

**Loyola University Chicago Family Business Center, Chicago Illinois**
*Intern*                                                                                                                           *1999*
Shadowed the Director of Education and Development.  Participated in the center's seminars and conferences focusing on the dynamics of a family-owned business.
- Researched, investigated, and determined aspects of a Family-owned business.
- Added to center's curricula by assisting in formulating training seminars.
- Completed literature review on Spouses in Family Owned Businesses, resulting in an open luncheon forum comprised of spouses in family owned businesses.

**Barat College Counseling Center, Lake Forest, Illinois**
*Psychotherapy Extern*                                                                                                    *1997-1998*
- Provide brief and long-term individual therapy to an ethnically diverse client population.  Balanced weekly caseload of 10-15 undergraduate students and college staff presenting with DSM-IV Axis I Disorders.
- Increased exposure of available services by developing and implementing campus outreach programs.
- Reorganized office environment from cold and unsought to a more unconfined and esthetic milieu.

**Allegiance Health Care, Deerfield Illinois**
*BPI Re-Engineer*                                                                                                            *1995 –1997*
Responsible for the development and maintenance of the nationwide customer database.
- Heightened responsibility to valued customers by being appointed Customer Specialist on business team.
- Published article in company newspaper, illustrating roll out implementation plan, resulting in an informed corporation.
- Simplified company's roll out phase by developing training materials for Customer Service Representatives for the implementation of SAP computer software.
- Increased overall employee productivity and communication by facilitating lines of communication between two divisions during roll out phase.
- Increased customer satisfaction by training Customer Service Representatives.

**United States Pretrial Services, Minneapolis Minnesota**
*Probation Intern/Officer*                                                                                                 *1994*
Assessed, interviewed, and processed bond reports for defendants to be seen in Federal Court.  Communicated with multiple Federal divisions and presented defendants once out on bond.
- Presented cases in front of Magistrates and Federal Court officials, allowing a refined ability to represent the division professionally.
- Conducted detailed and extensive background investigations on Federal criminals, resulting in multiple arrests and incarcerations.
-

### EDUCATION

**Northwestern University, Evanston, Illinois**
**Masters Program Counseling Psychology**                                                                 *1997-1999*
*Concentration:  General Psychological Counseling and Career Counseling*

**Northwestern University, Evanston, Illinois**
**Bachelors in Education and Social Policy**                                                              *1991-1995*
*Concentration:  Counseling Psychology*
*Minor:  Organizational Change*

### RESEARCH EXPERIENCE

**Laura Humphrey, PhD- The Family Institute at Northwestern University**
*Research Assistant/Assistant Coordinator*
"W.I.N.G.S, We're Involved Neighbors Growing Stronger"                                          *1998-1999*
**Philip Bowman, PhD- Northwestern University**
*Independent Study*
"Single African American Fathers"                                                                            *1994-1995*
**Professor Donald Prentis- Northwestern University**
*Independent Study*
"The Glass Ceiling"                                                                                                    *1993-1994*

## Honors, Awards, and Presentations

| | |
|---|---|
| Licensed Professional Counselor | 2002 – Present |
| Member of the Licensed Professional Counselors Association of Georgia | 2004 - Present |
| Member of The American Professional Society on the Abuse of Children | 2002-2010, 2018 - Present |
| Qualified Child First Multiple Session Forensic Interviewer | 2016 - Present |
| Qualified Child First Extended Forensic Interviewer | 2016 - Present |
| Qualified Child First Forensic Interviewer | 2014 - Present |
| Qualified Finding Words Forensic Interviewer | 2003 - Present |
| Qualified Advanced Forensic Interviewer Corner House & NCAC | 2002 - Present |
| Qualified Forensic Evaluator NCAC | 2002 - Present |
| Consultant/Expert Witness in Forensic Psychotherapy in 32 different jurisdictions | 2003 - Present |
| Consultant/Expert Witness for the USA Army; Office of the Staff Judge Advocate | 2012 – Present |
| Advisory Board Member:  Connect to Protect Kids | 2024 - Present |
| Instructor for the American Prosecutors Research Institute's National Center Advanced Child First | 2007 - 2023 |
| Instructor for the American Prosecutors Research Institute's National Center Child First | 2003 - 2023 |
| GPA Vice President Student Enrichment at Greater Atlanta Christian School | 2019 - 2023 |
| GPA Annual Fund Board Chair at Greater Atlanta Christian School | 2017 – 2023 |
| Presented to JAG TCAP_ Prosecuting Child Abuse: Supporting The Non-Offending Care Giver | December 2022 |
| Instructor at The Judge Advocate General's Legal Center & School SVC Program: Child Development | August 2022 |
| Presented at JAG Headquarters Washington DC: Trial Counsel Assistance Program/Resiliency | July 2022 |
| Presentation to JAG Trial Counsel Assistance Program Dept of the Army: Cultural Bias/Humility | February 2022 |
| Presented to Andersen, Tate & Carr, P.C.: Psychological Impact on Trafficked Victims | December 2021 |
| JAG Headquarters Washington DC: Unconscious Bias & The Struggle Within | October 2021 |
| JAG Headquarters Washington DC: Impact of DV and Trauma | September 2021 |
| JAG Headquarters Washington DC: Unconscious Bias & The Struggle Within | September 2021 |
| Guest Instructor at Emory University School of Law: Psychological Impact on CSEC Victims | March 2021 |
| Presenter: GAWL Douglas-Paulding Chapter_Expert Witness Tips & Techniques For DV & SA Cases | November 2020 |
| Presentation Lead: NBPA South East Region Healing Hour | October 2020 |
| Moderator & Panelist: The Fulton-DeKalb County Hospital Authority's 9th Annual Health Summit | October 2020 |
| Expert Consultant on the Investigation Discovery ID Channel "Chaos In Court":  8 Episodes | September 2020 |
| Panelist "In Light of Epstein: Power, Corruption, and Trafficking": Out of Darkness Atlanta | August 2020 |
| Speaker: 18th Annual Victims of Crime Candlelight Vigil: Office of the DA Gwinnett Judicial Circuit | December 2019 |
| NBPA & PAC 36th Annual Conference: The R. Kelly Effect-Beyond Your Case File | July 2019 |
| Presented to the Gwinnett County DA's Office on Compassion Fatigue, Burnout, & Vicarious Trauma | July 2018 |
| Presented at the Georgia Prosecuting Attorney's VWAP Conference: Dealing w/ Children As Witnesses | April 2018 |
| Presented to the GPA Board at GAC: Teen Anxiety/Weathering The Storm | January & March 2018 |
| Presented to the graduating classes of 2018 & 2019 at Greater Atlanta Christian School: Exploitation | January 2018 |
| Presented: Georgia Prosecuting Attorney's Child Abuse Conference: Counterintuitive Behavior | December 2017 |
| Instructor for APA's National Prosecutors Summit on Child Abuse: Counterintuitive Behavior | September 2017 |
| Instructor for the Association of Prosecuting Attorneys: Cross Exam of Defense Experts in CSA Cases | June 2017 |
| Instructor for the APA: SW Regional Conference on Child Abuse and Neglect "Defending the FI" | May 2017 |
| Presented at the Georgia Prosecuting Attorney's VWAP Conference: Trauma Informed | April 2017 |
| Instructor for the Association of Prosecuting Attorneys: Process of Disclosure in Child Abuse Cases | April 2017 |
| Guest Instructor at Emory University School of Law: Psychology of CSEC Victims | March 2017 |
| Guest Instructor at Emory University School of Law : U.S. Legal System's Response to DV | September 2016 |
| Presented at the Judge Advocate General's Corp Expert Symposium: TCAP & DCAP | March 2016 |
| Presented at the Prosecuting Attorney's Council Summer Conference: Process of Disclosure | 2015 |
| Guest Expert Consultant: Fatal Attraction TvOne | 2014 - Present |
| CNN Expert Consultant: Jada Pinkett Smith's Documentary on Child Exploitation | 2014 |
| CNN Special Consultant: Nancy Grace & Don Lemon | 2012 |
| Presented: "Children, Effective Interviewing, and the Child's Role in the Judicial Process | August 2012 |
| Presented at 2012 HEAT San Diego Watch Conference: "Human Exploitation and Trafficking" | June 2012 |
| Presented: "Innocence Not For Sale" Cobb County | May 2011 |
| Presented: "Building Successful Teams" | April 2011 |
| Executive Board of Directors Committee for the Child Advocacy Centers of Georgia | 2006 |
| Expert Witness in Forensic Psychotherapy/Forensic Specialist for the US Attorney's Office- Atlanta | 2005 |
| Presented: "Responding to Child Sexual Abuse Part II & III: Intervention and Protection | June 2005 |
| Advisor on the Georgia State Victim Assistance Academy Curriculum Committee | 2005 - 2007 |
| Member of the Paulding County Child Abuse Protocol  Executive Committee | 2005 |
| Member of the Floyd County Child Abuse Protocol Executive Committee | 2005 |
| Presented at NOVA: Child Sexual Abuse & The Forensic Interview | 2005 |
| Presented at Prevent Child Abuse Georgia: The Multidisciplinary Approach to Child Abuse Investigations | 2005 |
| Member of the Eagles Award Committee through CJCC | 2003 - 2007 |
| Appointed Member & Speaker, Northwestern University Graduate School Graduation Committee | 1999 |
| Appointed, Northwestern University Graduate Student Peer Mentor | 1998-1999 |
| Member, APA Minority Undergraduate Students of Excellence in Psychology | 1995 |
| Recipient, NCAA Division I Women's Basketball Full Scholarship | 1991-1995 |
| Volunteer Underprivileged Youth Program | 1992-1995 |

| Anique Whitmore MA LPC Consultation Cases & Expert Testimony | |
|---|---|
| **Jurisdiction** | **Case** |
| Athens DA | State v Byrd |
| Dekalb DA | State v Lester |
| Dekalb DA | State v Macky/Williams |
| Fulton County PD | State v Christopher Reynolds |
| Fulton County DA | State v McManus |
| Fulton County DA | State v Ethan Barrett |
| Fulton County DA | State v Ethan Barrett |
| Fulton County DA | State v Corron Johnson |
| Fulton County DA | State v Darden |
| Fulton County DA | State v John Dries |
| Fulton County DA | State v Havin Martin |
| Fulton County DA | State v Liggons |
| Fulton County DA | State v Weaver |
| Fulton County DA | State v Hillman |
| Fulton County DA | State v John Dries |
| Fulton County DA | State v David Ramsey |
| Fulton County DA | State v Rudolph Anthony Cash |
| Fulton County DA | State v Rudolph Anthony Cash |
| United States | State v Miller |
| Dekalb DA | State v Henry Thomas |
| Dekalb DA | State v Russell Cook |
| Bibb County DA | State v Journey |
| United States - Germany | US v SGT Gaddy |
| Dekalb DA | State v Eric Lewis |
| Dekalb DA | State v Grier |
| Bibb County DA | State v Shelley |
| Fulton County DA | State v James Bailey |
| United States | State v Barnes |
| Dekalb DA | State v C. King & D. Edwards |
| Dekalb DA | State v Eric Lewis |

Plaintiffs A.J. and Q.C. 1395

| Anique Whitmore MA LPC<br>Consultation Cases & Expert Testimony | |
|---|---|
| **Jurisdiction** | **Case** |
| Fulton County DA | State v Mathis |
| Fulton County DA | State v David Ramsey |
| Fulton County DA | State v DeAndre Hardy |
| Fulton County DA | State v Dwayne Shaw |
| Dekalb DA | State v Nixon |
| Dekalb DA | State v Benjamin & Means |
| TKST Law firm | MARTA |
| Dekalb DA | State v Rivera |
| Fulton County DA | State v Pavlov |
| Dekalb DA | State v Stinson |
| TKST | MARTA |
| Fulton County DA | State v Hunnicutt |
| Fulton County DA | State v Dunman |
| Fulton County DA | State v Antoine Thomas |
| Fulton County DA | Statea v Plascencia |
| Mincey Law Firm | King v King |
| Fulton County DA | State v Sergio Hernandez |
| Fulton County DA | State v Roython Hickson |
| Fulton County DA | State v Benton |
| Fulton County DA | State v Zachery |
| Fulton County DA | State v Berry |
| Dekalb DA | State v Westerman & Lindsey |
| Cobb County DA | State v McMickens |
| Fulton County DA | State v DeAndre Hardy |
| Bibb County DA | State v Willis |
| Fulton County DA | State v Shrosphire |
| Fulton County DA | State v Hunnicutt |
| Fulton County DA | State v Acosta-Michel |
| Dekalb DA | State v Andre Tyrone Taylor |
| Dekalb DA | State v. Allen & Frazier |

Plaintiffs A.J. and Q.C. 1396

| Anique Whitmore MA LPC<br>Consultation Cases & Expert Testimony | |
|---|---|
| **Jurisdiction** | **Case** |
| Fulton County DA | State v DiPietro |
| Fulton County DA | State v Samuel Reynolds |
| USA | US v Mills |
| Dekalb DA | State v Charles Mackey |
| Fulton County DA | State v Prescott |
| Fulton County DA | State v Scheren |
| Fulton County DA | State v Lorenzo Nino |
| Fulton County DA | Stephen Vaughn |
| Fulton County DA | State v Garibey |
| Fulton County DA | State v Hernandez Rimirez |
| Fulton County DA | State v Gomez |
| Dekalb DA | State David Hayes |
| Dekalb DA | State v Hood/Cook |
| Gwinnett | State v Jose Pena |
| Dekalb DA | State v Bralin Perry |
|  | Bartlett v Brown |
| USA JAG_ Fort Bliss | US v Wood |
| Fulton County DA | State v Salvador |
| Dekalb County DA | State v Westerman & Lindsey |
| Fulton County DA | State v Grier |
| Gwinnett County DA | State v Blackwell |
| USA | US v Jimmy Barlow |
| Duong v Perry | Duong v Perry |
| Dekalb County DA | State v Robert Tate |
| Fulton County DA | State v Stone |
| Fulton County DA | State v Nathan Foster |
| Fulton County DA | State David Berry |
| Fulton County DA | State v Robert Spalding Ferrell |
| Fulton County DA | State v Salazar |
| Fulton County DA | State v Vickers |

Plaintiffs A.J. and Q.C. 1397

| Anique Whitmore MA LPC<br>Consultation Cases & Expert Testimony | |
|---|---|
| **Jurisdiction** | **Case** |
| Gwinnett County DA | State v Sewell |
| Cobb County DA | State v Lewis |
| Fulton County DA | State v Garibey |
| Fulton County DA | State v Mathis |
| Fulton County DA | State v Carter & Patterson |
| Dekalb County DA | State v Lofton |
| Dekalb County DA | State v Brice |
| Dekalb County DA | State v Lucas |
| Fulton County DA | State v Scheren |
| Fulton County DA | State v Head |
| United States _Fort Sill | US v Serbia |
| Fulton County DA | State v Stephen Vaughn |
| United States_Fort Bliss | US v Walker |
| United States _ JBLM | US v Rossner |
| Fulton County DA | State v Lorenzo Nino |
| Fulton County DA | State v. Rigoberto Casco-Oyuela |
| Fulton County DA | State v Lavell Farrar & Trantavious Grier |
| Fulton County DA | State v Hardy |
| Dekalb County DA | State v Boyd |
| Dekalb County DA | State v Mitchell |
| Dekalb County DA | State v Alejandro -Mendoza |
| Dekalb County DA | State v Vasquez |
| Fulton County DA | State v Kishel |
| Fulton County DA | State v Derrick Nichols |
| Fulton County DA | State v Donald Carson |
| Fulton County DA | State v Vickers |
| Gwinnett County DA | State v Kwabena Higgins |
| Dekalb County DA | State v Pitts |
| Fulton County DA | State v Wheeler |
| Fulton County DA | State v Arnold |

Plaintiffs A.J. and Q.C. 1398

| Anique Whitmore MA LPC Consultation Cases & Expert Testimony ||
|---|---|
| **Jurisdiction** | **Case** |
| United States _Fort Carson | US v Melgarjo |
| United States _Fort Carson | US v Melgarjo |
| United States _ Fort Bliss | US v Thompson |
| Dekalb County DA | State v Saggus |
| United States_ Fort Bragg | US v Fox |
| Dekalb County DA | State v Andre Brown |
| TKST Law firm | N. Taylor v DJJ |
| Dekalb County DA | State v Ross |
| Fulton County DA | Victor Guzman-Hugo |
| Gwinnett County DA | State v Zenteno-Cruz |
| Fulton County DA | State v Demetrius Williams |
| Bibb County DA | State v. Robert Wayne Davis |
| Dekalb County DA | Brigido Garcia- Chavez |
| Henry County DA | State v Freedman |
| Dekalb County DA | State v Blake |
| Fulton County DA | State v Munford |
| Fulton County DA | State v Kirkland |
| Gwinnett County DA | State v Googe |
| Baldwin County DA | State v Lawrencew |
| Gwinnett County DA | State v Arsenault |
| Fulton County DA | State v Aitken |
| Fulton County DA | State v Craig |
| Fulton County DA | State v Kelley |
| Fulton County DA | State v Dupree |
| Fulton County DA | State v Galan |
| Fulton County DA | State v Trotter |
| Fulton County DA | State v Connell |
| Fulton County DA | State v Arnold |
| USA JAG _ Fort Lewis McChord | US v Sanchez |
| Dekalb County DA | State v. Audelio Rodas Lopez |

| Anique Whitmore MA LPC Consultation Cases & Expert Testimony | |
|---|---|
| **Jurisdiction** | **Case** |
| Dekalb County DA | State v Russell Cook |
| USA JAG_ Fort Wainright | USA v Amalong |
| Dekalb County DA | State v Deauntre Burnette |
| Fulton County DA | State v. Kenthrol Price |
| Fulton County DA | State v. Charles Pinckney |
| Fulton County DA | State v Richard Connell |
| Gwinnett County DA | State v Jackson |
| Gwinnett County DA | State v Leekomon |
| Colom & Brant | State v Leslie Everett |
| Clayton County DA | State v Corey Ashe |
| Fulton County PD | State v Jovany Garcia |
| Dekalb County DA | State v Herbert Brown |
| Fulton County DA | State v Robert Cornelious |
| Fulton County DA | State v Juan Solis |
| Fulton County DA | State v Gregory Morris |
| Fulton County DA | State v Jocqual Burkes |
| Fulton County DA | State v Saudi Wells |
| Fulton County DA | State v Ricky Jacobs |
| Fulton County DA | State v Jerry Lindley |
| Fulton County DA | State v Cedric Bradley |
| Fulton County DA | State v Hancock |
| Fort Bragg | US v Mikolaczyk |
| Fulton County DA | State v Gibson |
| Fulton County DA | State v DeJesus |
| Dekalb County DA | State v Sellers |
| Dekalb County DA | State v Hammond |
| Fulton County DA | State v Epps |
| Fulton County DA | State v Perry |
| Gwinnett County DA | State v Valez |
| Fulton County DA | State v Norman |

Plaintiffs A.J. and Q.C. 1400

| Anique Whitmore MA LPC Consultation Cases & Expert Testimony | |
|---|---|
| **Jurisdiction** | **Case** |
| Fulton County DA | State v Shakir Cole |
| Fulton County DA | State v Woodward |
| Dekalb County DA | State v Watson |
| Fulton County DA | State v Solis |
| Dekalb County DA | State v Rankins |
| Gwinnett County DA | State v Aldana |
| Bibb County DA | State v Tatum |
| Fort Benning | US v SPC Smith |
| Fulton County DA | State v Richard Office |
| Fulton County DA | State v Joshua Harris |
| Fulton County DA | State v Joshua Dorsett |
| Fulton County DA | State v Saudi Wells |
| Fulton County DA | State v Andra Clark |
| Fort Bragg | US v Cunningham |
| Scott AFB | US v Pennington |
| Fort JBFLM | US v Sanchez |
| Fulton County DA | State v Rodriquez |
| Fulton County DA | State v Rodney Brown |
| Fulton County DA | State v Hayes |
| Fulton County DA | State v William Gaddy |
| Fulton County DA | State v Christian Kahf |
| Fulton County DA | State v Keith Zachary |
| USA_ JBLM | US v Sanchez |
| USA_ JBLM | US v Sanchez |
| Fulton County DA | State v Shakir Cole |
| Fulton County DA | State v Saudi Wells |
| Dekalb County DA | State v Julius Young |
| Fulton County DA | State v Keith Zachary |
| Fulton County DA | State v Jamar Girley |
| Fulton County DA | State v Andra Clark |

Plaintiffs A.J. and Q.C. 1401

| Anique Whitmore MA LPC<br>Consultation Cases & Expert Testimony | |
|---|---|
| **Jurisdiction** | **Case** |
| Fulton County DA | State v Jalen Pierson |
| Dekalb County DA | State v Goux |
| USA_ JBLM | US v Gonzalez |
| Fulton County DA | Us v Joseph Perry |
| Robert Beckwith Firm | Zoe Davis |
| Fulton County DA | State v Don Martin |
| Fulton County DA | State v Joshua Harris |
| Fulton County DA | State v Kentavious Carr |
| Fulton County DA | State v Munford |
| Fulton County DA | State v Hancock |
| Fulton County DA | State v Licona |
| Dekalb County DA | State v Smith |
| Dekalb County DA | State v Littles |
| Fulton County DA | State v Richard Tard |
| Fulton County DA | State v George Reid |
| Fulton County DA | State v Terrance Pullins |
| Hawkins, Spizman, Kilgo | Silva v Wonders |
| USA_ JBLM | US v Gonzalez |
| USA_ Wheeler AFB | US v Vega |
| USA_ Fort Lee | US v Megaw |
| USA_ Fort Lee | US v Buckley |
| Fulton County DA | State v Robert Cornelius |
| Dekalb County DA | State v Dominic Lawton |
| Fulton County DA | State v Saudi Wells |
| Fulton County DA | State v Demarcus Character |
| Fulton County DA | State v Shakir Cole |
| Cobb County DA | State v Booze |
| Clayton County DA | State v James Moore |
| Law Office of Robert Kenner | State v Cobea Zachary |
| Fulton County DA | State v Jomandi Wright |

| Anique Whitmore MA LPC<br>Consultation Cases & Expert Testimony | |
|---|---|
| **Jurisdiction** | **Case** |
| Kelsey Geary Law Firm | State v St. Germain |
| USA_ JBLM | US v Addesso |
| Fulton County DA | State v Jamar Girley |
| Fulton County DA | State v Dionne Dorner |
| Fulton County DA | State v Robert Lindamood |
| Fulton County DA | State v Richard Tard |
| Fulton County DA | State v Marty Allen |
| Fulton County DA | State v Clarence Taylor |
| Cobb County DA | State v Harris |
| Dekalb County DA | State v Therien Longpre |
| Fulton County DA | State v Harim Hicks |
| MooreIngram Johnson & Steele | Rogers v Brindle |
| Dekalb County DA | State v Johnathan Walker |
| Dekalb County DA | State v Timothy Everson |
| Fulton County DA | State v David Gibson |
| Summerville Firm | Rogers v Brindle |
| Fulton County DA | State v Bryon Osario |
| Fulton County DA | State v Curtis Blunt |
| Fulton County DA | State v Saudi Wells |
| Dekalb County DA | State v Jennifer & Joe Rosenbaum |
| Fulton County DA | State v Saudi Wells |
| USA JAG_ Fort Wainright | US v Martinez |
| Dekalb County DA | State v Holland |
| USA JAG Fort Campbell | US v Hotaling |
| Fulton County DA | State v Rodericus Hayes |
| Fulton County DA | State v Morris |
| Dekalb County DA | State v. Aric Holt |
| Fulton County DA | State v Justin Jackson |
| Fulton County DA | State v Kelsey Johnson |
| Fulton County DA | State v Calvin Hood |

Plaintiffs A.J. and Q.C. 1403

| Anique Whitmore MA LPC Consultation Cases & Expert Testimony | |
|---|---|
| **Jurisdiction** | **Case** |
| Dekalb County DA | State v Michael Varner |
| Dekalb County DA | State v Telly Grooms |
| Dekalb County DA | State v Deangelo Minor |
| Dekalb County DA | State v Ronald Whitfield |
| Fort JBLM | US v Perez |
| Fort Campbell | US v Plott |
| Fulton County DA | State v McCants |
| Fulton County DA | State v Elijah Brice |
| Dekalb County DA | State v. Douglas Licona-Galind |
| Fulton County DA | State v Shabazz |
| USA Fort Drum | US v Navarro |
| Fort Wainwright | US v Martinez |
| Fulton County DA | State v Donte Hale |
| Fort Benning | US v Ervin |
| Fort Drum | US v Aikenoff |
| Dekalb County DA | State v Do |
| US Fort Campbell | US v Bensinger |
| USA Fort Campbell | US v SPC Forrester |
| US Fort Campbell | US v Bensinger |
| Camp Humphreys | US v Gabse |
| Brian Steele | State v Eddie King |
| Brian Steele | State v Asjah Coleman |
| Pat McDonough | Trafficking Cases |
| Katherine Burmeister | Dentistry Case |
| The Block Firm LLC | Jane Doe v Gwinnett School District |
| Camp Humphreys | US v Dowdell |
| Dekalb County DA | State v John Ruey |
| Fulton County DA | State v Brandon Terrell |
| Dekalb County DA | State v Zachery Myers |
| Dekalb County DA | State v Leroy Patrick |

| Anique Whitmore MA LPC Consultation Cases & Expert Testimony ||
| --- | --- |
| **Jurisdiction** | **Case** |
| Gwinnett County DA | State v Ruiz |
| Gwinnett County DA | State v Bell |
| Fulton County DA | State v Coleman |
| Dekalb County DA | State v Angelo Jones |
| Andersen, Tate & Carr, P.C | Jane Doe v Suresh & Durga, Inc |
| Krevolin & Horst, LLC | State of Georgia v Tiffany Simpson |
| Bondurant Mixson & Elmore | Federal Trafficking Cases |
| Garland Samuel & Loeb | State v Kirvonte Benson |
| Dwayne Singleton, LLC | State v Arianna Murphy |
| Dekalb County DA | State v Godfrey Hubbard |
| Dekalb County DA | State v Dmante Anderson |
| Dwayne C. Singleton, LLC | State v Ariana Murphy |
| USA Fort Jackson | US v Gutierrez |
| Anderson, Tate & Carr, P.C. | Jane Doe v Suresh & Durga, Inc |
| Butler Law Firm | Toccara Davis v BOJ of WNC, LLC |
| Camp Humphreys _ NY | US v Diaz |
| Dekalb County Solicitors | State v Makayla Gill |
| Dekalb County DA | State v Fernandez |
| Dekalb County DA | State v Fauntleroy |
| Dekalb County DA | State v Todd Robinson |
| Gwinnett County DA | State v Donaldo Urisul-Mososo |
| Dekalb County DA | State v Stevenson |
| Dekalb County DA | State v King |
| Fulton County DA | State v Cleophus Ward |
| Fort Belvoir/McNair | US v Paredes |
| Fort Belvoir/McNair | US v Gallegos |
| Towaliga Judicial Circuit | State v Dawley |
| The Block Firm LLC | DIAZ and CACERES v. THE PARTNERSHIP, INC |
| Butler Kahn Law Firm | Barton v Peachstate Hospitality |
| Ted Corvey Law Firm | Jane Doe v Enterprise |

| Anique Whitmore MA LPC Consultation Cases & Expert Testimony | |
| --- | --- |
| **Jurisdiction** | **Case** |
| Dekalb County DA | State v Copeland |
| Dekalb County DA | State v Theodore Brown |
| Gwinnett County DA | State v Lightfoot |
| Hall County Public Defender's Office | State v Larry Leamond Witt |
| Dekalb County DA | State v Carillo Aparicio, Jose Luis |
| Dekalb County DA | State v Quarles  & Paris |
| Cuyahoga County Public Defender | State v Ronald Vanderhorst |
| Fulton County DA | State v Keion McGhee |
| Dekalb County DA | State v Jeffrey Copeland |
| JAG_ Korea | US v Diaz |
| Dekalb County DA | State v. Douglas Licona-Galind |
| Fulton County DA | State v Dominique Williams |
| Fulton County DA | State v Brian Baker |
| Butler Kahn Law Firm | Barton v. PeachState Hospitality |
| Riti, Inc d/b/a American Inn & Suites | CivilAction No. 1:22-cv-0848 |
| Rockdale County District Attorney's Office | State v Reuben Phillips |
| Anderson, Tate & Carr, P.C. | D.H. v. Tucker Inn |
| The Stoddard Firm | I.R. v. Riti, Inc. |
| Fulton County DA | State of GA v. Quaneesha Johnson |
| Barrow County DA | State v Burnett |
| Fulton County DA | State v Jaquan Barnes |
| Corvey Law Firm | A.Kuhn v Enterprise LLC |
| Law Brian H. Cathey | Harrill v State of Georgia |
| Dekalb County DA | State v Tranquilino Aldar Elvir |
| Fulton County DA | State vs. Torres Drain |
| C. Thomas Brown & Tina Harris at Law | State of Maryland v Keegan |
| Wheeler Air Force/Fort Shafter | United States v. CPT Timothy J. Lukacz |
| Dekalb County DA | State v Antonio Banks |
| Dekalb County DA | State v Dereck Gladney |
| Fulton County DA | State v Lewis/King |

Plaintiffs A.J. and Q.C. 1406

| Anique Whitmore MA LPC<br>Consultation Cases & Expert Testimony | |
| --- | --- |
| **Jurisdiction** | **Case** |
| Dekalb County DA | State v George Nesbitt |
| Dekalb County DA | State v Malik McClenton |
| Fulton County DA | State v Tranell Simms |
| Dekalb County DA | State v Tommy Moore |
| Dekalb County DA | State v Mykal Jett |
| Fulton County Solicitors Office | State v Garrick Hinton |
| Fulton County DA | State v Antawayne Almond |
| Alston & Bird LLP | Private |
| Fulton County DA | State v Richard Chen |
| Fulton County DA | State v Roland Thomas |
| Anderson, Tate & Carr | WK v RRI |
| Fulton County DA | State v Curtis Patrick |
| Fulton County DA | State v Gregory Edwards |
| Fulton County DA | State v Kian Wright |
|  |  |