## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| A.J. and Q.C., | |
| Plaintiffs, | |
| | CIVIL ACTION FILE NO. |
| v. | |
| | 1:23-CV-04247-JPB |
| MASP, LLC, | |
| Defendant. | |

## BRIEF IN SUPPORT OF DEFENDANT MASP, LLC'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant MASP, LLC (hereinafter "Defendant" and/or "Days Inn"), and pursuant to Fed. R. Civ. P. 56, hereby files this Brief in Support of its Motion for Summary Judgment. In support thereof, Days Inn states as follows:

### <u>INTRODUCTION</u>

Plaintiffs A.J. and Q.C. allege two causes of action against Days Inn Stockbridge in their Complaint: (1) a violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA") codified at 18 USC § 1595 and (2) attorney fees and expenses of litigation. Plaintiffs were 14 years old when they were trafficked for sex at the Days Inn by Craig Hill ("Hill") and his girlfriend,

1

T'Keyah Adams ("Adams"), for three days in March of 2013. At all times pertinent to this litigation, the Days Inn Stockbridge was owned by MASP, LLC.

TVPRA claims are a developing and emerging area of the law, and thus, the parties are guided by the limited case law and statutory interpretations surrounding these claims of sex trafficking victims. Significantly, the Eleventh Circuit established the guiding light for these claims, determining that a TVPRA claim has four elements, *all of which* must be met in order to establish a claim:

> the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit [i.e., participation in a venture], (3) that undertaking or enterprise violated the TVPRA **as to the plaintiff**, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA **as to the plaintiff**.

Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 726 (11th Cir. 2021) (emphasis added). The analysis must properly be focused on whether all four elements can be established as to A.J and Q.C. Under this analysis, Plaintiffs' TVPRA claim must fail, as there is insufficient evidence in the record to establish that Days Inn participated in a common undertaking or enterprise that violated the TVPRA as to A.J. and Q.C. Likewise, the evidence is insufficient to prove that Days Inn had constructive or actual knowledge that the undertaking or enterprise – renting a hotel room to Plaintiffs' trafficker – violated the TVPRA as to Plaintiffs. Days Inn did not and should not have known about Plaintiffs' trafficking when it rented a hotel room to Hill or at any time during their stay. They were there for three days

2

and nothing occurred that was inherently suspicious or indicative of sex trafficking or any other crime. Because there are no sufficient interactions or observations with these specific Plaintiffs that should have alerted the hotel to their trafficking, Days Inn is entitled to summary judgment on Plaintiffs' TVPRA claim. Because the claim for attorney's fees and litigation expenses is predicated on and derivative of the TVPRA claim, that claim must also fail and summary judgment should be granted as to Plaintiffs' claims in their entirety.

## STATEMENT OF MATERIAL FACTS

**A.       Ownership of the Days Inn**

MASP, LLC was formed in 2007 when the hotel known as the Days Inn Stockbridge was purchased. (30(b)(6) Deposition extracts of Alpesh Patel ("MASP depo."), 16: 16-20, attached as Exhibit "A".) MASP owns and operates the Days Inn located at 7385 Hanover Parkway N. Stockbridge, Georgia and has done so at all times pertinent to this litigation. (Complaint ¶ 4; MASP depo., 16: 21-22.) It also operates the hotel. (Id., 17: 3-5.) It had no knowledge of the allegations as described in the Complaint until served with this lawsuit. (MASP Interrogatory Response No. 5, attached as Exhibit "B").

**B.       Plaintiff Q.C.**

In 2013, Q.C. lived with her mother lived and siblings. (Deposition extracts of Plaintiff Q.C. ("Q.C. depo."), 13: 19-24 and 16: 1-2, attached hereto as Exhibit

"C"). She had a normal relationship her mother and testified that her mother provided everything she needed. (Id., 45: 4-11). They ate meals together as a family and generally got along. (Id., 43: 6-11; 49:1-2.) In 2013, when she was 14 years old, she ran away from home because she missed the school bus and was afraid of getting in trouble. (Id., 46: 18-24.) Her mother took education very seriously. (Id., 47: 7-8). Attending school was non-negotiable for her and missing school violated her mom's rules. (Id., 53: 2-10). After missing the bus, she went to the house of a Hispanic female adult friend, who she referred to as "Rosa". (Id., 47: 22-23; 48:1-2; 55: 16-17.).) Rosa lived in a trailer park located behind her neighborhood and Q.C. would go to her house once or twice a week. (Id. 48: 3-5; 21-25.) Q.C. felt safe at Rosa's house. (Id., 57: 3-9).

On the day she missed school, Q.C. left Rosa's house and returned home. (Id., 49: 11-13.) She met her mother in the driveway and, after an argument about her missing school, Q.C.'s mother slapped her face and took her phone away. (Id., 49: 15-17; 52: 2-3; 78: 25-79: 1-3.) .) As a result, Q.C. left home again without any clothes or personal items and returned to Rosa's house. (Id., 49: 20-22; 50:5 and 67: 1-3.) Notably, she did not tell Rosa that she had run away or about the argument with her mother. (Id. 58: 10-13.) Q.C. was embarrassed that she let her mom down and she wanted to be alone and think about what she had done. (Id., 51:

1-4.) She also wanted to give her mother time to calm down because she was angry. (<u>Id.</u>, 51: 5-7.)

While Q.C. was at Rosa's, the police came looking for her. (<u>Id.</u>, 57: 18-23.) Rosa, who spoke little English, did not tell the police that Q.C. was there. (<u>Id.</u>, 60: 13-19.) Q.C. hid from the police because she was scared of getting in trouble and thought she would go to jail for running away. (<u>Id.</u>, 60: 20-25; 66: 1-2.) After the police left, she came out of hiding and spent the night at Rosa's house. (<u>Id.</u>, 65: 5-8.) She did not call her mother and tell her where she was. (<u>Id.</u>, 66: 8-10.) This was the only night that Q.C. stayed with Rosa. (<u>Id.</u>, 56: 6.)

The next day, Q.C. borrowed Rosa's cell phone and logged onto her Facebook account, where she learned that her friend, A.J., had coincidentally also run away from home after an argument with her mother and was at a nearby Walmart. (<u>Id.</u>, 70: 1-6, 72: 17-19 and 92: 20-22.) Q.C. and A.J., who lived in the neighborhood behind Q.C., had been friends since middle school. (<u>Id.</u>, 70: 17-18; 71: 1-2.)  Q.C. messaged A.J. and told her what happened. (<u>Id.</u>, 72: 5-10.)  Q.C. then got a ride from Rosa's house to the Walmart from a guy she knew from the neighborhood in order to meet A.J. (<u>Id.</u>, 72: 7-10 and 76: 5-10.)

At Walmart, Q.C. found A.J. in a gray van with a man who was unknown to Q.C. (<u>Id.</u>, 89: 21-23.) She entered the van and the man drove them to a neighborhood where they spent the night outside. (<u>Id.</u>, 21: 4-5; 104: 14-20; 106:

16-21.) Next, they met with A.J.'s friend Jamaal who eventually took them to hotel and rented them a room. (Id., 99: 14-18, 108: 17-20 and 109: 1-3.) Over the next two days, the Plaintiffs stayed at the Travelodge and then the Southside Inn. (Id., 127: 18-21.) While at the Southside Inn, Plaintiffs' heard noises outside their door and believed someone was trying to break into their room. (Id., 134: 14-16.) The Plaintiffs called the front desk to report the attempted break-in and the front desk called the police. (Id., 134: 16-17.) When the police arrived, at least one police officer came to their room and Q.C. spoke with them while inside the room. (Id., 134: 21-24.)) The police told the Plaintiffs that they would watch their room and Q.C. felt better because she knew the police would help her. (Id., 135: 8-9; 137: 1-3.) They only stayed at the Southside Inn for one night. Q.C. was in the same clothes that she had been in when she ran away. (Id., 138: 21-24.)

The next day A.J contacted Craig Hill, a man she had not met before, on a Web site called DateHookup.com. (Id., 128: 5-13.)  Hill and his girlfriend, T'keyah Adams, came to the Southside Inn with a baby, picked up Plaintiffs, and drove them to the Days Inn. (Id., 138; 12-12; 141: 1-5; 142: 1-3.) It was Q.C.'s understanding that Hill had promised to give them clothes, fix their hair, feed them, get them a job, and provide a place for them to stay.  (I.d.,139: 5-10).

**B.     Plaintiff A.J.**

A.J. was also fourteen years old at the time of the alleged trafficking. (Deposition of Armani Johnson ("A.J" depo.), 72: 4-9, excerpts attached as "D".) Unlike Q.C., A.J. had run away before and had been previously rescued from a sex trafficking operation at a different hotel. (Id., 86: 18-24; 88: 3-6; Plaintiff A.J.'s Responses to Interrogatory No. 23, excerpts attached as Exhibit "E".). In March of 2013, A.J. lived with her mother and stepfather and considered Q.C. to be her best friend. (Plaintiff A.J.'s Interr. Responses No. 1; A.J. depo. 92: 2-4.) In March of 2013, she ran away from home again. (Id., 91: 12-16.) When A.J. left home, she took some clothes and toiletries, but did not take any money. (Id., 99: 1-5; 21-23). The Plaintiffs provided conflicting testimony regarding where and when they met up after running away, but it is undisputed that they were together within a day of running away. (Id., 102: 4-8.) At some point, the Plaintiffs went to Q.C.'s old neighborhood and went to a friend's house until his mother came home and they had to leave. (Id., 107: 10; 111: 1-3.)

The next day, they met A.J.'s friend, Jamaal, who took them back to his apartment and allowed them to take showers and sleep until he left for work. (Id., 116: 25-117: 1-4; 12-24.) He then took them to Southside Inn, I rented a room for them, and left. (Id., 118: 13-15; 120:17-21.)

While at the Southside Inn someone tried to break into their room, so they called the police for help. (<u>Id.</u>, 123: 4-7.) Two police officers came to their door and spoke with them. (<u>Id.</u>, 124: 8-24.) Interestingly, the police did not ask their names or ages, or inquire why these young girls were at the hotel. (<u>Id.</u>, 124: 25-125: 1-3.) They were scared at the Southside Inn. (<u>Id.</u>, 122: 21-23). A.J. contacted Craig Hill and he picked the Plaintiffs up and took them to the Days Inn on March 20, 2013. (Portion of Investigative Summary of Police Interview with A.J.'s Redacted, attached as Exhibit "F".)

## C.    Plaintiffs' Interactions at the Days Inn

A.J. and Q.C. were taken to the Days Inn in Stockbridge by Craig Hill, who ultimately became their trafficker, after he and A.J. communicated on DateHookup.com. (A.J.'s depo. <u>Id.</u>, 128: 2-9.) When they arrived at the Days Inn, a room was already rented, so they were not involved in the check in process and neither Plaintiff went to the hotel lobby or front desk. (<u>Id.</u>, 145: 3-6, 24-25; A.J. Depo, 146: 1-3; 135: 23-25; 217: 9-12.)) Once in the room, A.J. and Q.C. were told to  shower because they had to take pictures for Hill to post them as advertisement. (<u>Id.</u>, 140: 3-5.) It was at this point that A.J. and Q.C. were told they would have to contribute. (<u>Id.</u>, 140: 6-8. and Q.C.'s depo. 147: 12-15.) Specifically, Adams told them that nothing was free so they were going to see dates to exchange sex for money. (Q.C. depo. 148: 1-4; 166: 12-15.)

Plaintiffs were together in the same room the entire time while at the Days Inn. (A.J.'s depo. <u>Id.,</u> 156: 1-4.) Q.C. had sex with four men at the Days Inn before the police came. (<u>Id.,</u> 167: 15-17.) A.J. was also involved in each of Q.C.'s four encounters but she also had additional encounters separate from Q.C. and was unsure how may men she had sex with while at the Days Inn. (<u>Id.,</u> 168: 17-18.) After A.J. had sex with men for money, Hill would collect the money. (<u>Id.,</u> 161: 16-18.)

A.J. and Q.C. had limited interaction with the staff at the Days Inn.  A.J. did not know why they were taken to this hotel. (<u>Id.,</u> 157: 1-7.) Housekeeping came to their room daily to provide fresh towels and bed sheets, and the front desk called to see if they needed garbage removed. (<u>Id.,</u> 157:20—5; 175:24-25; 177:18-20.) On one occasion, A.J. and Q.C. locked themselves out of the room and had to go the front desk to get access to the room. (<u>Id.,</u> 158:10-13). This was the only interaction Q.C. had with the front desk staff. (Q.C. depo.  192: 15-19.)

## **ARGUMENT AND CITATION TO AUTHORITY**

### A.    STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue as to any material fact. Fed. R. Civ. P. 56.  While the movant bears the initial responsibility of asserting the basis for its motion, the burden is then shifted to the non-movant to present

affirmative evidence to demonstrate that a genuine issue of material fact does, in fact, exist. Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>First Nat. Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 289-90 (1968). Judges are not "required to submit a question to a jury merely because *some* evidence has been introduced by the party having the burden of proof." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-52 (1986) (emphasis added). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment for the moving party is proper. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). A plaintiff may not establish any element of her claims through speculative or unreasonable inferences as "[s]peculation does not create a genuine issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." <u>Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1181 (11th Cir. 2005) (internal quotation marks omitted).

### A. PLAINTIFF'S TVPRA CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' Complaint contains conclusory and speculative allegations regarding Days Inn's alleged participation in a venture which allegedly facilitated Plaintiffs' trafficking. Yet, the record is devoid of admissible evidence to substantiate such a TVPRA claim. Importantly, a TVPRA claim includes participation and knowledge elements which cannot be proven in this case. To

prove a claim for liability under the TVPRA, a plaintiff must prove that the defendant (1) knowingly benefitted, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA **as to the plaintiff**, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA **as to the plaintiff**. <u>Red Roof Inns, Inc.</u>, 21 F.4th at 726 (emphasis added). Here, Plaintiffs cannot prove that Days Inn participated in a venture that violated the TVPRA as to either Plaintiff or that Days Inn knew, or should have known, that any such alleged venture with the traffickers violated the TVPRA **as to Q.C. and A.J.** Accordingly, Plaintiffs have failed to establish three elements of the Plaintiffs' TVPRA claim.[1] Where there is an absence of evidence to support an essential element of Plaintiffs' case, summary judgment is proper for Days Inn.

### 1. There is no evidence that Days Inn participated in common undertaking or enterprise involving risk and profit.

Plaintiffs allege that Days Inn participated in a venture with their trafficker by renting rooms to him, which provided a necessary venue for the trafficking to occur. (<u>See</u> Complaint, ¶ 63.) However, the mere suggestion of a financial benefit is not enough. Instead, there must be evidence of a ***common undertaking*** between the defendant and alleged trafficker involving risk and/or profit that violated the

---

[1] Although Defendant Days Inn is not challenging the first element of Plaintiffs' TVPRA claim in this Motion for Summary Judgment, Days Inn does not admit to the first element - "knowingly benefit." Days Inn recognizes, that according to case law on the issue, the exchange of money for the room rental creates a genuine issue of material fact as to that first element.

TVPRA, i,e, the alleged sex trafficking venture. <u>A.B. v. H.K. Group of Co., Inc.</u> <u>d/b/a Stone Mountain Inn & Suites et al.</u>, 2022 WL 467786 at *4 (N.D. Ga. February 9, 2022) (emphasis added) (granting Defendant's motion to dismiss Plaintiff's TVPRA claim.) Importantly, the <u>A.B.</u> court held that allegations of conversations with hotel employees, the cleaning of the plaintiff's hotel room, and the defendant's failure to assist the plaintiff or alert authorities were "at most...conclusory allegations" that were insufficient to support a TVPRA claim. <u>Id.</u>

District courts have also found that the presence of a "continuous business relationship" between a defendant hotel and a sex trafficker can be sufficient to meet the participation element. <u>See</u> <u>J.C. v. I Shri Khodiyar, LLC</u>, 624 F. Supp. 3d 1307, 1317 (N.D. Ga. 2022); <u>J.G. v. Northbrook Indus., Inc.</u>, 619 F. Supp. 3d 1228, 1235 (N.D. Ga. 2022); <u>Ricchio v. McLean</u>, 853 F.3d 553, 556-58 (1st Cir. 2017). Notably, In <u>Red Roof Inns, Inc.</u>, the Eleventh Circuit adopted the reasoning from <u>Ricchio</u> that "the plaintiff had plausibly alleged that, by renting a room to the abuser, the operators were 'associating with him in an effort to force [the plaintiff] to serve their business objective.'" <u>Red Roof Inns, Inc.</u>, 21 F.4th at 725-26. While allegations made in <u>Ricchio</u> regarding prior commercial dealings between the trafficker and hotel staff were sufficient to state a claim against the hotel operators, a plaintiff then has the burden to factually support these allegations with evidence

in the record to defeat summary judgment. <u>See</u> <u>Ricchio</u>, 853 F.3d at 555.

In this case, the record is devoid of any evidence showing that the Defendant participated in a venture and had knowledge of the trafficking. As just one of many examples that could be presented, Plaintiffs allege that one employee of the hotel acted as a lookout for the Hill, yet produced no evidence of this during discovery. (Complaint ¶ 16.). Likewise, they failed to produced any evidence that Defendant knew or should have known Hill had a history of trafficking women at this hotel. Plaintiffs further allege the Defendant knew or should have known the purported ventures violated the TVPRA because Defendant and its agents, employees, and representatives (1) had the opportunity to observe Plaintiffs at the motel, with and without their traffickers, and (2) Plaintiffs exhibited the signs of sex trafficking, and (3) observed frequent traffic of adult male buyers that went in and out of the Plaintiffs' motel rooms each day they were being trafficked. (Complaint ¶ 67.) But Plaintiffs have failed to produce evidence to support these allegations. As such, Plaintiffs have failed to produce evidence that the Days Inn "took part in the common undertaking." <u>Red Roof</u>, 21, F.4th at 726.

Such evidence is simply not present here. The record is devoid of any evidence showing that Days Inn had prior commercial dealings with Hill indicative of sex trafficking. In addition, there is simply no evidence that at the time Hill rented a room at the Days Inn, the Defendant was aware of Hill's intent to traffic

A.J. and Q.C. for sex in the room. The fact that Hill was already checked in when the Plaintiffs got to the hotel is insufficient to establish a prior or continuous business relationship between Days Inn and Hill.

Further, there is no allegation – and no evidence whatsoever – that Days Inn had any agreement, express or implied, with Hill regarding the sex trafficking venture. The evidence developed in this case is starkly different from those in other sex trafficking cases where evidence exists that a defendant's employees acted as lookouts for the traffickers, placed zip ties around the door lock for easier access to the plaintiff's room, or the hotel staff observed the plaintiff buying condoms. Compare to A.G. Northbrook Industries, Inc., 2022 WL 1644921 *4 (N.D. Ga. May 24, 2022); G.W. v. Northbrook Industries, Inc., 2022 WL 1644923 *4 (N.D. Ga. May 24, 2022). Here, no such evidence exists. A.J. and Q.C. only stayed in the room for three days. Both A.J. and Q.C. speculated that the trafficker had a relationship with the hotel but mere speculation is insufficient to cross this threshold. Instead, it is significant that there is no testimony or evidence detailing the interactions between Hill and the Days Inn aside from the simple fact that Hill paid for the room the Plaintiffs **believe** i.e. speculate, that a hotel clerk called him when they were locked out of their room. Plaintiffs failed to present any other evidence regarding Hill's interactions with hotel staff and specifically failed to present any evidence that would be suspicious for sex trafficking. Without such

evidence, Plaintiffs can only speculate about the details of Days Inn's participation or involvement in the sex trafficking venture with Hill, which is improper. <u>See Gallagher Benefit Services, Inc. v. Campbell</u>, 528 F. Supp.3d 1326, 1347 (N.D. Ga. 2021) ("a jury cannot be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility.") Accordingly, because Plaintiffs cannot establish the second element of their claim, summary judgment is appropriate.

### 2. There is no evidence that Days Inn participated in common undertaking or enterprise involving risk and profit that violated the TVPRA as to Plaintiffs

Even assuming, *arguendo*, that A.J. and Q.C could establish the second element of the TVPRA, the evidence is insufficient to prove that the undertaking or enterprise in which a defendant was engaged violated the TVPRA as to each of them. So viewed by this Court, a plaintiff can meet the third element of the TVPRA by alleging that "she was a minor when she was forced to engage in commercial sex acts and that the Defendant had a reasonable opportunity to observe her on the premises." (ECF No. 83 at p. 9, <u>quoting</u> <u>U.S. v. Whyte</u>, 928 F.3d 1317, 1328 (11th Cir. 2019).

While it is undisputed that Q.C. and A.J. were minors during the time they were was trafficked by Hill, neither Plaintiff was with him when he initially rented the room. Plaintiffs have produced no evidence that that the interaction during the

room rental process was suspicious for sex trafficking at any point. Thus, there was no reason for Days Inn to assume that Hill would be, or was, using the hotel room to traffic A.J. and Q.C. Further, there is no evidence that Days Inn had knowledge of how Hill obtained the cash used to pay for additional days at the Days Inn. Simply put, Days Inn had no reason to suspect and there is no evidence to prove, that the money used by Hill and/or Adams to pay for the room rentals were funds derived from the trafficking of A.J. or Q.C.

Instead, the sole evidence that Days Inn had any knowledge of A.J. and Q.C.'s presence at the Days Inn is a brief encounter with an unidentified hotel front desk clerk who allegedly interacted with them when they locked themselves out of the hotel room after they ran away, and limited and brief encounters with housekeeping staff who provided fresh towels and bed linens. There are no allegations that the girls were dressed provocatively during these interactions or otherwise acted suspicious or in fear of their surroundings. These minor interactions and limited observations that Plaintiffs believe should have been obvious as sex trafficking to the employees of the Days Inn are insufficient to establish a violation of the TVPRA. Mere observations are not enough to prove that Days Inn participated in a venture that violated the TVPRA as to Plaintiffs. Red Roof Inns, Inc., 21 F.4th at 727.

16

### 3. There is no evidence that Tucker Inn knew or should have known that it participated in a venture that violated the TVPRA as to Plaintiffs A.J. and Q.C.

The evidence also is insufficient to satisfy the fourth element of the TVPRA, which requires "actual or constructive knowledge that the venture–in which it voluntarily participated and from which it knowingly benefited–violated the TVPRA as to the plaintiff." Red Roof Inns, Inc., 21 F.4th at 725. This element specifically requires "[a]n awareness or understanding of a fact or circumstance" or that which "one using reasonable care or diligence should have." Id

Plaintiffs claim that while trafficked at the Days Inn they exhibited numerous well-known and visible signs of a sex trafficking victim, of which the employees knew or should have known to include the Plaintiffs' young ages, inappropriate dress and monitoring and control by their traffickers. (Complaint ¶ 25.) But there is no evidence that Plaintiffs were walking around the property in provocative clothing or that they appeared young. In fact, the Plaintiffs largely remained in their room, leaving only on rare occasions, such as when they were locked out. There is no indication that they appeared tired, hungry, or that their movements were being controlled. While Hill obtained the money earned by the Plaintiffs, there is no evidence to suggest the Defendant was aware of this. The Plaintiffs briefly interacted with housekeeping to request towels, but beyond that, there is no substantial evidence of any meaningful observations or interactions

17

between the Plaintiffs and hotel staff, or between Hill and hotel staff. In fact, the record lacks any additional interactions between the Plaintiffs and Hill that would have reasonably alerted Days Inn to the fact that the Plaintiffs were being trafficked. Simply put, there is no evidence to support the claim that Days Inn had constructive knowledge of their trafficking.

Plaintiffs' generalized reliance on their age or young appearance does not constitute evidence of Days Inn' knowledge of her sex trafficking. This is true especially in this case when both Plaintiffs spoke with police officers at the Southside Inn and were not asked their age. Importantly, Plaintiffs have not presented any evidence to prove that Days Inn (or any other hotel) has a duty to question individuals on its property as to whether they are being trafficked just based on an allegedly young appearance. Likewise, Plaintiffs have presented no evidence to establish that the Days Inn has a duty to independently investigate whether individuals who appear to be underage and are present at their establishment are victims of sex trafficking. Such inquiries go beyond the scope of the hotel's duty and could potentially infringe upon guests' privacy rights. "[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking." A.B. v. Wyndham Hotels & Resorts, Inc., 532 F. Supp.3d 1018, 1027 (D. Or. 2021).

Furthermore, and of utmost importance, the key inquiry in TVPRA cases is not whether the Days Inn knew or should have known about trafficking in general, but instead, whether the Days Inn knew or should have known about trafficking **as to the Plaintiffs**. <u>See</u> <u>Red Roof Inns, Inc.,</u> 21 F.4th at 726. The language of that decision clearly shows the intent of the Eleventh Circuit to restrain these issues to those specific to the Plaintiffs and since Plaintiffs have failed to do so, their claims fail as a matter of law.

### B.   PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES AND ATTORNEYS' FEES ARE DERIVATIVE AND MUST ALSO FAIL AS A MATTER OF LAW

It is undisputed that the TVPRA's civil remedy provision creates a cause of action that sounds in tort and, as such, allows for the potential of an award of punitive damages. <u>Arreguin v. Sanchez</u>, 398 F.Supp.3d 1314, 1329 (S.D. Ga. 2019). Nevertheless, Plaintiffs have the burden to produce "specific facts" to support their claims, including their claim for punitive damages, and punitive damages are only warranted when the defendant is found liable for "conduct involving some element of outrage similar to that usually found in crime. Fed. R. Civ. P. 56(a); Restatement (Second) of Torts § 908, cmt. B. (1979). "[S]ummary judgment is appropriate if the…record does not suggest that a plaintiff could carry his burden of proof by showing clear and convincing evidence that the defendant acted with the requisite intent." <u>Battle v. Thomas</u>, 623 F.Supp.3d 1312, 1318 (2022). Here, Plaintiffs failed to even describe the actions of Defendant which they

assert were willful and wanton. Moreover, the record does not prove, or suggest, to a clear and convincing standard that Defendant's employees trafficked Plaintiffs, or actively participated in their trafficking. Because awards of punitive damages and attorneys' fees are predicated on an initial finding of liability for the underlying tort, and Plaintiffs have not alleged what specific actions constitute willful and wanton behaviors, nor has the record supported such a finding, the Court must grant summary judgment on these claims as well.

## CONCLUSION

While Plaintiffs have a legal right to seek damages civilly under the TVPRA, it requires Plaintiffs to satisfy their burden of proof that Days Inn participated in the sex trafficking venture against them, and that Days Inn knew or should have known of their trafficking. The evidence in this case is simply not sufficient to meet Plaintiffs' burden. The ruling in Red Roof Inns, Inc. clearly emphasizes the requirement that Plaintiffs present facts specific to their victimization that constituted the knowledge element for the Defendant. 21 F.4th at 726. Because A.J. and Q.C. have failed to come forward with that evidence, Days Inn cannot be found liable under the TVPRA. Therefore, Defendant MASP, LLC respectfully requests that this Court GRANT its Motion for Summary Judgment and for any other relief this Court deems just and proper.

Respectfully submitted, this 11th day of October, 2024.

SWIFT, CURRIE, McGHEE & HIERS

By: *Marissa H. Merrill*
Kori E. Wagner
Georgia State Bar No. 155438
Marissa H. Merrill
Georgia State Bar No. 216039
Tracy A. Gilmore
Georgia State Bar No. 633193
***Attorneys for Defendant MASP, LLC***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:   404.888.6162
Fax:  404.888.6199
kori.wagner@swiftcurrie.com
marissa.merrill@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court pursuant to L.R. 5.1(C) of the Northern District of Georgia, specifically, 14 point, Times New Roman font.

SWIFT, CURRIE, McGHEE & HIERS

By:  *Marissa H. Merrill*
Kori E. Wagner
Georgia State Bar No. 155438
Marissa H. Merrill
Georgia State Bar No. 216039
Tracy A. Gilmore
Georgia State Bar No. 633193
***Attorneys for Defendant MASP, LLC***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404.888.6162
Fax:  404.888.6199
kori.wagner@swiftcurrie.com
marissa.merrill@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

This are to certify that on the 11th day of October, 2024, I have caused to be served upon counsel for all parties a true and correct copy of the foregoing **BRIEF IN SUPPORT OF DEFENDANT MASP, LLC'S MOTION FOR SUMMARY JUDGMENT** by filing same through use of the Court's online filing system, the CM/ECF system for the United States District Court for the Northern District of Georgia, which will serve all counsel of record.

SWIFT, CURRIE, McGHEE & HIERS

By:  *Marissa H. Merrill*
Kori E. Wagner
Georgia State Bar No. 155438
Marissa H. Merrill
Georgia State Bar No. 216039
Tracy A. Gilmore
Georgia State Bar No. 633193
***Attorneys for Defendant MASP, LLC***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404.888.6162
Fax:  404.888.6199
kori.wagner@swiftcurrie.com
marissa.merrill@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

4856-2254-3598, v. 1

23