UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| A.J. & Q.C., | | |
| Plaintiffs, | | |
| | | CIVIL ACTION FILE |
| v. | | NO. 1:23-cv-4247-JPB |
| MASP, LLC, | | |
| Defendant. | | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESS, ANIQUE WHITMORE

### INTRODUCTION

Anique Whitmore is one of the foremost experts in the United States on matters of sexual abuse, exploitation, and sex trafficking. She has testified in hundreds of cases spanning 32 jurisdictions across 14 states and three countries. Ms. Whitmore's expertise is extensive and unparalleled. Ex. 1, Whitmore Decl. ¶ 8. Approximately 45 of those cases dealt specifically with sex trafficking. *Id*. ¶¶ 8–9.

Courts in Georgia, including this Court, have found Ms. Whitmore to be eminently qualified to testify on sex-trafficking matters. The Georgia Court of Appeals has repeatedly cited her testimony during the past decade. For instance, in *Taylor v. State*, 364 Ga. App. 407, 408 (2022), Ms. Whitmore testified as an expert in child sexual abuse and trauma. *See DiPietro v. State*, 356 Ga. App., 539, 543 (2020); *Lewis v. State*, 351 Ga. App. 603, 606 (2019). Most recently, Ms. Whitmore

testified as an expert witness in *W.K. v. Red Roof Inns, Inc.*, No. 1:20-cv-5263-VMC (N.D. Ga. 2020), a case brought by eleven sex-trafficking victims against various hotels in the Atlanta area under the Federal Trafficking Victims Protection Reauthorization Act (TVPRA). Ex. 2, Whitmore Report at 38.

Ms. Whitmore holds both a bachelor's and a master's degree in counseling psychology from Northwestern University and is a licensed professional counselor. She has over twenty-one years of clinical experience working with victims of sexual abuse, including exploitation and trafficking. Her professional roles have included working with Child First Georgia, the Georgia Center for Children, and the Office of the Fulton County District Attorney. *Id.* at 3.

In this case, Ms. Whitmore performed a clinical evaluation of A.J. and Q.C. The evaluation's purpose was to address (i) what methods, if any, Plaintiffs' trafficker used to exploit the victims; (ii) why A.J. and Q.C. did not try to escape or seek help earlier; and (iii) what sort of effects, if any, being sex trafficked had on A.J. and Q.C. *Id.* at 13.

This evaluation was textbook psychotherapy and clinical interviewing—conversing with an individual to evaluate their mental health and overall functioning. Ex. 1 , Whitmore Decl. ¶ 5. In other words, Ms. Whitmore's approach in this case aligns precisely with the methodology that "characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Therefore, her testimony as an expert is admissible under Rule 702. *See, e.g.*, *Lopez v. City of Houston*, 2006 WL 1663374, at *6 (S.D. Tex. June 12, 2006) (concluding that reviewing records and conducting interviews is consistent with accepted practices in psychotherapy).

Because Ms. Whitmore's testimony satisfies the three-part test set forth in Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its follow-on cases, Defendant's motion should be denied.

## ARGUMENT

### I.   **Anique Whitmore was timely disclosed as an affirmative expert.**

Plaintiff timely and in full compliance with both the parties' agreement and the Court's extended deadlines disclosed Ms. Whitmore as an expert witness.

Under Fed. R. Civ. P. 26(a)(2), a party must disclose any expert witnesses intended for use at trial, accompanied by a detailed report. Rule 26(a)(2)(D) mandates that these disclosures occur "at the times and in the sequence that the court orders." The purpose of disclosure is to ensure that opposing parties have a "reasonable opportunity to prepare for effective cross examination and perhaps arrange for [rebuttal] expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (citations omitted).

On July 26, 2024, the parties filed a Joint Motion to Amend the Scheduling Order and Include Expert Discovery. Doc. 47. That motion made clear that the

parties had "conferred and agreed" about the need for expert discovery and set

September 13, 2024, as the deadline for expert disclosures.

> *The parties have conferred and agreed* that the inclusion of
> expert discovery is necessary for the resolution of this case. Therefore,
> the parties respectfully request that this Honorable Court grant this
> additional request to include expert discovery and amend the
> scheduling order as follows:
>
> > (a) The parties' expert disclosures to be served on September 13,
> > 2024*;*
> > (b) Rebuttal expert disclosures be served on October 11, 2024;
> > and
> > (c) Dispositive motions and Daubert motions be filed by
> > November 8, 2024.

*Id.* at 2 (emphasis added). On August 1, 2024, the Court granted that motion in part.

In doing so, the Court stated:

> Given that the Court's April 2, 2024 extension was intended to
> include expert discovery, the Court is not willing to grant the full
> extension. *Some extension, however, is appropriate*, and therefore the
> Motion [Doc. 47] is **GRANTED IN PART.**
>
> It is hereby ordered that the deadline for dispositive motions and
> Daubert motions is extended through October 11, 2024. *The Court
> defers to the parties to set agreed-upon deadlines for fact discovery and
> expert discovery within the provided time period*.

Doc. 48 at 2 (emphasis added). The Court's Order established no specific deadlines

for the completion of fact or expert discovery,[1] requiring only that they be completed

before October 11, 2024. *Id.*

---

[1] Defendant does not dispute the absence of a Court-ordered deadline. *See* Doc. 62-
1 at 5. Defendant's issue centers on the meaning of "within the provided time

After the Order, neither party attempted to organize a meeting. Plaintiffs considered such a meeting unnecessary because the parties' prior agreement to disclose experts on September 13 complied with the Court's directives.[2] No contrary agreement was ever discussed among the parties. Accordingly, in line with the parties' July agreement and in accordance with the Court's August 1 Order, Plaintiffs disclosed their affirmative expert on September 13. Doc. 54. Therefore, Ms. Whitmore's disclosure was timely and consistent with the procedural requirements of this case.

## II. Any untimeliness in Anique Whitmore's disclosure was substantially justified or harmless.

The Court should not exclude Ms. Whitmore as an untimely disclosed expert. Under Fed. R. Civ. P. 37(c), a court may admit untimely reports if the untimely disclosure "was substantially justified or is harmless." "[A]n individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney v. Continental Am. Ins.*, 989 F.2d 1154, 1163 (11th

---

period." *Id.* Defendant reads this language to have the discovery period end on August 14. But that interpretation makes little sense, for it would undermine the purpose of the Court's extension.

[2] Defendant claims to have understood the Court's directive differently. Even so, Defendant's assertion that Plaintiffs had "full knowledge that the deadline to identify experts had not been extended" is categorically false. *Contra* Doc. 62-1 at 5.

Cir. 1993) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1998)); *see also Barron v. Everbank*, No. 1:16-cv-4595, 2019 WL 1495305, at *3 (N.D. Ga. Jan. 9, 2018) (Totenberg, J.) ("[T]he [substantial justification] test is satisfied if there is a[] genuine dispute concerning compliance." (quoting *Insect Sci. Res. LLC v. Timberland Fisheries Corp.*, No. 1:07-cv-2662, 2008 WL 11333460, at *12 (N.D. Ga. Nov. 30, 2008))). In determining whether a party's failure to timely disclose an expert's report is harmless under Rule 37, courts weigh several factors: (i) the significance of the report to the case, (ii) the reason for the delay in disclosure, and (iii) the potential prejudice to the opposing party if the report is not excluded. *See Pleasant v. Neesmith Timber Co., Inc.*, No. 4:08-cv-192, 2011 WL 841072, at *1 (S.D. Ga. Mar. 7, 2011) (citing *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005)).

The date of Plaintiffs' disclosure of Ms. Whitmore and her report (September 13) was substantially justified. September 13 was the date the parties agreed to disclose experts by and that date was within the extension period the Court granted. Plaintiffs' disclosure on that date was also reasonable given the parties' prior agreement and the Court's Order. Perhaps Defendants disagree with that interpretation, but courts have found that when reasonable minds could differ on disclosure requirements, delay in disclosure is substantially justified. *See, e.g., Barron v. Everbank*, No. 1:16-cv-4595, 2019 WL 1495305, at *3 (N.D. Ga. Feb. 7,

2019) (Totenberg, J.) (denying Rule 37(c) sanctions where reasonable disagreement existed as to whether Rule 26 mandated witness identification); *see also Hayes v. Deluxe Mfg. Operations LLC*, No. 1:16-cv-2056, 2018 WL 1461690, at *3 (N.D. Ga. Jan. 8, 2018) (Story, J.). Because there is a genuine dispute concerning compliance, Plaintiffs' alleged late disclosure is substantially justified.

Ms. Whitmore's opinions are critical to Plaintiffs' case. As discussed in Section III, Ms. Whitmore's opinions illuminate the complex psychological and social dynamics surrounding the trafficking experiences of A.J. and Q.C. Her opinions will clarify the mechanics of trafficking, address why victims may return to their traffickers, and educate the jury about common behaviors exhibited by victims of trafficking and abuse. This understanding is vital for jurors, who are not familiar with psychological manipulation and control tactics or the psychological impact of trauma.

Plaintiffs' disclosure of Ms. Whitmore and her report on September 13 was harmless. A key factor in determining harmlessness is whether the opposing party suffered prejudice from the untimely disclosure. *See Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010). Defendant suffered no prejudice. Under the Scheduling Order, Defendant had nearly a month to depose Ms. Whitmore before

the close of discovery but opted not to do so.[3] Defendant also had 30 days to submit

a rebuttal expert report—but chose not to do so until October 20, five days late.[4]

Defendant had ample opportunity to challenge Ms. Whitmore's opinions through a

*Daubert* motion, which it fully exercised. *See* Doc. 62-1. In fact, Defendant cannot

claim any unfair advantage on Plaintiffs' part, as it concedes that Ms. Whitmore's

opinions do not rebut its expert's findings. *See* Doc. 62-1 at 3. Thus, any prejudice

claimed by Defendant is both unsupported and unfounded, as the disclosure of Ms.

Whitmore's report caused no harm and provided Defendant with ample time and

opportunity to respond. *See Lord v. Univ. of Miami*, No. 13-cv-22500, 2022 WL

18023292, at *8–9 (S.D. Fla. July 26, 2022) (noting that the "severe sanction" of

excluding expert testimony is "not warranted when the party allegedly harmed by a

---

[3] Courts have denied a motion to strike late disclosed experts on this fact alone. *See Baker v. Carnival Corp.*, No. 17-cv-24427 (S.D. Fla. Jun. 18, 2019*) (denying motion to strike late-disclosed expert because delay was substantially justified and harmless as Carnival had an opportunity to take the witness's deposition almost three months before trial), ECF. No. 72 at 4; *Ellison v. Windt*, No. 6:99-cv-1268, 2001 WL 118617, at *3 (M.D. Fla. Jan. 24, 2001) (holding that belated expert disclosure was harmless if opposing party had opportunity to depose the expert before trial); *see also AIM Recycling of Fla., LLC v. Metals USA, Inc.,* No. 18-cv-60292, 2019 WL 11505086, at *3 (S.D. Fla. Oct. 8, 2019) (denying motion to strike expert because of untimely disclosure and collecting cases holding that untimely expert disclosures were harmless).

[4] Not only did this disclosure fail to comply with the parties' agreed-upon rebuttal expert deadlines, but it also violated Fed. R. Civ. P. 26(a)(2)(D)(ii).

late disclosure has an opportunity to remedy any prejudice suffered but chooses not to.").

Exclusion of expert testimony is a "drastic remedy." *Nelson v. Freightliner LLC,* No. 5:01-cv-266, 2003 WL 25781423, at *3 (M.D. Fla. Apr. 23, 2003) (quoting *Rmed Intern., Inc. v. Sloan's Supermarkets, Inc.*, No. 94-cv-5587, 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002). And exclusion is not mandatory. *See Bearint ex rel. Bearint v. Dorell Juvenile Grp. Inc.*, 389 F.3d 1339, 1348 (11th Cir. 2004) (Rule 37(c)(1) gives district courts "discretion to exclude untimely submissions."). Precluding testimony of an expert, even when there has not been strict compliance with Rule 26, "may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants." *Rmed Intern. Inc.,* 2002 WL 31780188, at *3 (quoting *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 277 (S.D.N.Y. 1998)).

For these reasons, Plaintiffs' disclosure of Ms. Whitmore on September 13 was timely or, at a minimum, was substantially justified or harmless.

## III.    Anique Whitmore's expert testimony on sex trafficking is admissible under Rule 702 and *Daubert*.

After *Daubert*, "the rejection of expert testimony is the exception rather than the rule." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). As the Eleventh Circuit explained in *Moore*, although a district court must screen out

"speculative" and "unreliable expert testimony," the court must still leave it to the jury to weigh credibility based on "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." 995 F.3d at 850 (quoting *Daubert*, 509 U.S. at 596). To that end, Rule 702 allows a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide opinion testimony if her "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and if her opinions meet a minimum level of reliability. The admissibility inquiry considers three factors: (1) qualifications; (2) reliability; and (3) relevance. *Moore*, 995 F.3d at 850.  Although a district court must screen out "speculative" and "unreliable expert testimony," the Court must still leave it to the jury to weigh credibility based on "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id*. (quoting *Daubert*, 509 U.S. at 596).

**A.    Ms. Whitmore is qualified to offer expert opinions on the topic of sex trafficking.**

Ms. Whitmore possesses the necessary education, combined with over twenty years of experience and specialized training in working with sex trafficking victims, which more than satisfies the competency threshold required by *Daubert*. Her extensive qualifications firmly establish her as an expert capable of providing reliable opinions in this case.

"[E]xperts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1260–61 (11th Cir. 2004). "In fact, the plain language of Rule 702 makes this clear: expert status may be based on 'knowledge, skill, experience, training, or education.'" *Id*. at 1261 (quoting Fed. R. Evid. 702). "The Committee Note to the 2000 Amendments of Rule 702 also explains that '[n]othing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony.'" *Id*. (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

With over twenty-one years of experience as a psychotherapist, Ms. Whitmore has specialized in evaluating victims of sexual abuse, exploitation, and trafficking. Ex. 2, Whitmore Report at 3. Her extensive background includes roles such as Director of Forensic Services for the Office of Fulton County District Attorney, Forensic Psychotherapist at Georgia Center for Children, Inc., and Clinical Psychotherapist with Psychological Associates of Buckhead. *Id*. at 22–25. Ms. Whitmore dedicates a portion of her private practice to providing therapy and consultation in cases involving sexual abuse, exploitation, and trafficking. *Id*. ¶ 4. In addition, she serves as an instructor, educating law enforcement and prosecutors about human trafficking. *Id*. ¶ 7; Ex. 2, Whitmore Report at 22–25.

Ms. Whitmore has over two decades of experience testifying as an expert in the fields of sexual abuse, exploitation, and sex trafficking. Ex. 2, Whitmore Report at 3; Ex. 1, Whitmore Decl. ¶ 8–9. She has served as an expert psychotherapist in hundreds of cases, approximately 45 of which specifically involved sex trafficking. Ex. 2, Whitmore Report at 3, 26–38; Ex. 1, Whitmore Decl. ¶ 8–9. For example, the Georgia Court of Appeals has frequently relied on her expert testimony in such matters. *See, e.g., Taylor*, 364 Ga. App. At 408; *DiPietro*, 356 Ga. App. At 543; *Lewis*, 351 Ga. App. at 606; *Smith*, 319 Ga. App. at 594; *Canty*, 318 Ga. App. at 15.

Ms. Whitmore is particularly qualified in the area of sex trafficking. Defendant's assertion that her experience with sex trafficking is limited to the "occasional interview" with trafficking victims is a gross misrepresentation of her background. *See* Doc. 62-1 at 11. Since 2001, Ms. Whitmore has undertaken education and training on sex trafficking through courses provided by the Georgia Bureau of Investigation, the Federal Bureau of Investigation, and the National Center for Missing and Exploited Children in Washington, D.C. Ex. 1, Whitmore Decl. ¶ 7. Beyond her role as a student, she also serves as an instructor, teaching courses on sex trafficking and exploitation through District Attorney's offices, Child First, and TCAP, a training program offered by JAG. *Id.*

Since 2003, Ms. Whitmore has concentrated her efforts on serving the trafficking population. She estimates that up to twenty percent of her private practice

clients are victims of sex trafficking. *Id.* ¶ 6. In addition to providing therapy for these clients, Ms. Whitmore offers consultation services for cases related to exploitation or trafficking. *Id.* ¶ 8. Although Ms. Whitmore has not conducted research in the field of sex trafficking herself, her expertise has been sought by others conducting research on the topic. *Id.* ¶ 10.

Ms. Whitmore's education and experience related to her work with sexual abuse victims qualifies her to serve as an expert. While Defendant suggests otherwise, the law is clear: "[a]n expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *McGee v. Evenflo Co.*, No. 5:02-cv-259-4, 2003 WL 23350439, at *3 (M.D. Ga. Dec. 11, 2003). "General knowledge in a field . . . is normally sufficient to qualify a witness as an expert in that field's specialties as well." *Goforth v. Paris,* No. 5:02-cv-94 (HL), 2007 WL 988733, at *3 (M.D. Ga. Mar. 30, 2007). "[I]t is not necessary that the witness be recognized as a leading authority in the field in question. . . . Gaps in a[] witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006).

On top of considerable experience in the field of sex trafficking, Ms. Whitmore has ample experience working with and consulting on cases involving victims of trauma, sexual abuse victims, and victims of exploitation. *See, e.g.,*

*Taylor*, 364 Ga. App. at 408; *see also DiPietro*, 356 Ga. App. at 543; *Lewis*, 351 Ga. App. at 606.

Ms. Whitmore has sufficient knowledge of sex trafficking. Defendant claims her knowledge of sex trafficking is "completely one-sided" due to her lack of interviews with traffickers. *See* Doc. 62-1 at 10. That claim is baseless. Ms. Whitmore's expertise is comprehensive, having studied offenders and gained deep insight into their dynamics, personalities, methods, and how they access victims. *Id.* ¶ 11.

For these reasons, Ms. Whitmore is qualified under Rule 702 and *Daubert*.

### B.   Ms. Whitmore's opinions are reliable and based on sound methodology.

In forming her opinions, Ms. Whitmore relied on A.J. and Q.C.'s personal accounts of their experiences being trafficked at Defendant's hotel. That is a reliable methodology. Courts routinely allow care providers to rely on the self-reports of their patients. *See Redmond v. City of E. Point, Ga.*, 2004 WL 6060552, at *7 (N.D. Ga. Mar. 29 2004) ("[M]edical professionals reasonably may be expected to rely on self-reported patient histories. Such histories provide information upon which physicians may, and at times must, rely in their diagnostic work."); *see also Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020 (7th Cir. 2000) ("In clinical medicine, the methodology of physical examination and self-reported medical history . . . is generally appropriate."); *Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir.

2000) ("Medical professionals reasonably may be expected to rely on self-reported patient histories.").

Defendant fails to cite a single case in which an expert's opinion was excluded because the expert did not conduct outside research to verify the firsthand information they received from a victim or plaintiff. *See* Doc. 62-1. Instead, Defendant relies on cases where experts' opinions were excluded for failing to provide *any basis* relied on to form their opinions. In *Dishman v. Wise*, the plaintiffs' expert opined that had the plaintiff been treated sooner, it was more likely than not the plaintiff would have had a more successful outcome with respect to the injury at issue. 2009 WL 1938968, at *3. To support her opinion, the expert testified that "*research has shown* . . . if you can get to these injuries within a week or two versus five or six or four weeks . . . most people are going to do better." *Id.* (emphasis added). But no literature supporting that expert's claim that "research has shown" was ever provided. *Id.* at *4. As a result, the court excluded that testimony for failing to provide the basis for the physician's opinion. *Id.* at *3–4.

Similarly, in *Dukes v. Georgia*, the plaintiff retained a medical expert to opine on the standards for correctional healthcare. 428 F. Supp. 2d 1298, 1314 (N.D. Ga. 2006). But in proffering his opinions, the expert did not reference any specific experience or material relied on. *Id.* at 1314–15. In fact, he had no experience

treating patients with the medical condition at issue. *Id.* Given these facts, the court concluded that the physician's opinions were not sufficiently reliable.

These cases are inapposite here. Ms. Whitmore provides not only a basis but a reliable basis for her opinions. Her conclusions come from using a reliable, generally accepted, and court-approved methodology for mental health professionals and social scientists. *See, e.g.*, *Lopez v. City of Houston*, 2006 WL 1663374, at *6 (S.D. Tex. June 12, 2006) (reviewing records and interviewing individuals is methodology consistent with generally accepted mental health professional practices). Ms. Whitmore's opinions are based on at least one interview with A.J. and Q.C. She also relied on other data, such as A.J. and Q.C.'s deposition transcripts, an investigative file regarding A.J. and Q.C.'s trafficking, peer-reviewed literature, and her professional experience. *See* Ex. 2, Whitmore Report at 4–18.

Defendant tries to make much ado about the absence of certain supposed facts in Ms. Whitmore's report. Yet Defendant does not identify any contrary evidence failed to consider.[5] That is because Ms. Whitmore's opinions and A.J. and Q.C.'s reporting of events are consistent with the record evidence, which includes the

---

[5] The record contains scant, if any, evidence to suggest that "Plaintiffs did seek help attempting to escape their trafficker at a different hotel immediately before coming to the Defendant's hotel." Doc. 62-1 at 14. Defendant says this despite citing no record evidence in this motion or in its summary-judgment motion. *See* Doc. 65-1 at 3–9. That is because this never happened.

investigative files from the criminal case surrounding A.J. and Q.C.'s trafficking at Defendant's hotel. But even if Defendant could identify evidence to call into question Ms. Whitmore's testimony, the existence of that evidence is no basis to exclude her testimony. As one district court held, "[w]here the [movants] merely cite the existence of authority not reviewed by an expert, without more, this serves only to challenge the weight of [the expert's opinions], not their reliability." *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2018 WL 605891, at *4 (S.D. W. Va. Jan. 29, 2018); *accord In re Com. Fin. Servs., Inc.*, 350 B.R. 520, 533 (Bankr. N.D. Okla. 2005) ("[T]he existence of potentially contrary evidence does not undermine the reliability of [the expert]'s methodology, but rather provides fodder for fact-finding at trial."). At trial, Defendant can question Ms. Whitmore about evidence it thinks undermines her conclusions—if it can find any—but the mere hope of contrary evidence does not warrant excluding her testimony altogether.

### C. Ms. Whitmore's opinions are relevant and help the jury understand A.J. and Q.C.'s trauma and reactions to it.

Incredibly, Defendant asserts that Ms. Whitmore's opinions are not relevant to a TVPRA claim. Why Defendant claims an explanation of sex trafficking has no place in a sex trafficking case is left unsaid. Regardless, this is contrary to both law and common sense.

"[E]xpert testimony is relevant if it will assist the trier of fact to *understand the evidence* or to determine a fact at issue in the case." *Ahuja v. Cumberland Mall,*

*LLC*, 821 F. Supp. 2d 1317, 1323 (N.D. Ga. 2011) (emphasis added) (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1308–09 (11th Cir. 1999)). An explanation of sex trafficking, its victims, and their behaviors would undoubtedly help the jury "understand the evidence" from A.J. and Q.C. about their sex trafficking at Defendant's hotel. *Id.* Through Ms. Whitmore's expertise, she can explain to the jury what sex trafficking is as an initial matter, the strategies of sex traffickers, the long-term implications of sex trafficking, and how these concepts apply to the evidence in this case. *See* Ex. 2, Whitmore Report at 4–18. Her opinions will help the jury understand A.J. and Q.C.'s victimization, behavior, and trauma as well as their specific reaction to all of it.

More specifically, Ms. Whitmore's opinions will help the jury understand how A.J. and Q.C.'s trafficking occurred, how they became and remained exploited, why they may have returned to their trafficker after what appeared to be an opportunity to escape, and how all of this has impacted them. Ex. 2, Whitmore Report at 4–18. These concepts are outside the purview of a normal juror and are often misperceived without the appropriate training or explanation. This testimony is also particularly helpful to the jury given Defendant's attacks on A.J. and Q.C., blaming them for their own victimization. For instance, in Defendant's answer it asserts twenty-four affirmative defenses, including comparative negligence, contributory negligence, and comparative fault. *See* Doc. 8 at 3–4. Defendant plans

to criticize the actions, or inactions, of A.J. and Q.C. in this case, and use these facts to undermine the Plaintiffs' credibility and potentially evade liability.

As such, these are all inescapable components of the trafficking and trauma A.J. and Q.C. suffered at Defendant's hotel. Explaining these concepts will provide context for the jury to understand the basic facts surrounding A.J. and Q.C.'s trafficking at Defendant's hotel and will help the jury understand the evidence regarding A.J. and Q.C.'s behaviors and how they do or do not align with common behaviors among sex trafficking and sex abuse survivors.

## IV.   Ms. Whitmore's opinions should not be limited under Rule 403.

Finally, Defendant asks this court to limit Ms. Whitmore's testimony under Fed. R. Evid. 403. However, it is well-established that the district court's "discretion to exclude evidence under Rule 403 is narrowly circumscribed." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014). The court may exclude testimony under this rule only if it finds that "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Because it allows a trial court to exclude evidence that is probative, Rule 403 is an extraordinary remedy which should be used sparingly." *Aycock*, 769 F.3d at 1069. "The balance should be struck in favor of admissibility," and when assessing a Rule 403 motion,

"courts must look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id*. (quotation marks omitted).

Defendant makes several Rule 403 arguments, none of which warrants excluding Ms. Whitmore's testimony. *First*, Defendant argues that Ms. Whitmore's testimony would be unfairly prejudicial. But "Rule 403 should be used only when *unfair* prejudice *substantially* outweighs probative value." *Aycock*, 769 F.3d at 1069 (emphasis in original; internal quotation marks omitted). Defendant does not explain why this testimony is *unfairly* prejudicial. To be sure, this testimony is adverse to Defendant. But as the Eleventh Circuit has held, "[t]here is a difference between unfairly prejudicial evidence, which may be excluded under Rule 403, and evidence that is simply adverse to an opposing party. Rule 403 calls for the exclusion of the former, not the latter." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1285 (11th Cir. 2015) (cleaned up).

*Second*, Defendant argues that Ms. Whitmore's testimony would be misleading. An expert witness's testimony is misleading if it holds the potential to confuse or lead the jury astray, particularly when the probative value of the testimony is significantly outweighed by the risk of confusion or misdirection. *Hendrix v. Evenflo Co., Inc.*, 255, F.R.D. 568, 579 (N.D. Fla. 2009). But exclusion under Rule 403 is only appropriate "if the probative value of otherwise admissible

expert testimony is substantially outweighed by its potential to confuse or mislead the jury." *Id*. Defendant's contention that Ms. Whitmore's testimony is misleading is unfounded and unsupported. Ms. Whitmore possesses extensive qualifications and experience in the fields of sexual abuse, exploitation, and sex trafficking, and her methodology is sound and supported by the evidence. Further, Ms. Whitmore's testimony is relevant and will assist the jury in understanding the nuances of A.J. and Q.C.'s trauma, their behavior in response to their trafficking, and the lasting effect of their trafficking at Defendant's hotel. As such, the probative value of Ms. Whitmore's testimony is not significantly outweighed by the risk of confusion or misdirection.

*Third*, in one sentence without support, Defendant challenges the probative value of Ms. Whitmore's opinions, simply claiming that her opinions are on topics "not central to this litigation." Defendant is wrong, as discussed above, because the history of A.J. and Q.C.'s trafficking is an inescapable component of their trafficking facts and the trauma Plaintiffs suffered at Defendant's hotel.

*Fourth*, Defendant argues that Ms. Whitmore's testimony would be needlessly cumulative and unnecessarily bolstering to A.J. and Q.C.'s own testimony about their feelings and observations. However, Ms. Whitmore's testimony goes beyond their testimony and helps the jury understand how A.J. and Q.C.'s behavior and trauma are both tied to their trafficking and are consistent with the behavior and

trauma common in minor sex trafficking victims. A.J. and Q.C. themselves cannot explain the psychological dynamics involved in sex trafficking, including the psychology behind common behaviors of sex traffickers and their survivors. Moreover, they cannot present the psychological reasons behind A.J. and Q.C.'s failure to escape or seek help earlier, the tactics used by Plaintiffs' trafficker to exploit them, or the psychological impact that trafficking has had on A.J. and Q.C. without a clinical assessment. Unlike A.J. or Q.C., Ms. Whitmore can apply her expertise to the facts of the case. These differences show that the testimony of A.J. and Q.C. and Ms. Whitmore is not cumulative.

In any event, a decision about excluding expert testimony as needlessly cumulative is premature. As one district court has observed, courts generally wait until trial to rule on Rule 403 motions based on cumulative testimony "so that the Court can ascertain whether the evidence is cumulative of other admissible evidence in the proper context." *Griffin v. Coffee Cnty.*, No. 5:19-cv-92, 2022 WL 3582498, at *8 (S.D. Ga. Aug. 19, 2022) (quotation marks omitted); *accord Sampson v. Carnival Corp.*, No. 15-24339-CIV, 2016 WL 11547658, at *3 (S.D. Fla. Dec. 12, 2016) (internal quotation marks omitted) (collecting cases). For these reasons, the Court should deny Defendant's motion to exclude Ms. Whitmore's opinions under Rule 403.

## CONCLUSION

The disclosure of Ms. Whitmore was timely. Even if her disclosure were untimely, the date of the disclosure was substantially justified and harmless. Ms. Whitmore is perhaps the most qualified counselor in the country when it comes to victims of sexual abuse and sex trafficking. She has been trained, taught, and worked with victims of sex trafficking for over twenty years. Her opinions in this case are relevant and helpful to explain to the jury sex trafficking generally, and A.J. and Q.C.'s sex trafficking.

For these reasons, Defendant's motion should be denied.

Respectfully submitted this 25th day of October, 2024.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000

Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile