## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

A.J. and Q.C.,

        Plaintiffs,

v.

MASP, LLC,

        Defendant.

CIVIL ACTION FILE NO.

1:23-CV-04247-JPB

## DEFENDANT MASP, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant MASP, LLC (hereinafter "Defendant" and/or "Days Inn"), and hereby files this Response in Opposition to Plaintiffs' Motion for Summary Judgment. In opposition of Plaintiffs' Motion, Defendant states as follows:

### INTRODUCTION

Plaintiffs' Motion for Summary Judgment should be denied. Plaintiffs' Motion relies upon self-serving and speculative testimony to contend that Defendant cannot challenge liability in this case.  But this testimony is inadmissible, and therefore, does not create a genuine issue of material fact to support their claims of a violation of the TVPRA. Even if all such evidence were admissible, which Defendant disputes, Plaintiffs would still not be able to prove the participation and knowledge elements of their TVPRA claim as a matter of law.

Perhaps more troubling is Plaintiffs' attempt at "gotcha" gamesmanship regarding the lengthy statute of limitations permitted by the TVPRA. Here, Plaintiffs are attempting to capitalize on Defendant's lack of physical documentation *eleven years* after the subject incident to argue that Defendant has no proof supporting its defenses. While Plaintiffs have the burden of proving their case, they cannot rely on self-serving or speculative testimony about the hotel's actions to do so. Nor can Plaintiffs punish the Defendant for no longer having business records from 2013 when there is no requirement whatsoever that the Defendant, or any business, keep business records for such a prolonged period of time. Certainly the legislators did not intend for plaintiffs to have a "slam-dunk" case by extending the statute of limitations and permitting plaintiffs to then rely upon defendant's lack of documentation as an inability to dispute their claims.

Plaintiffs' instant Motion for Summary Judgment essentially places a burden on the Defendant to prove a negative – to prove that the hotel did not know that Plaintiffs' sex trafficking was occurring on the property and prove that the hotel did not participate in a venture with Plaintiffs' trafficker(s). Defendant has already disputed these allegations in its Answer to Plaintiffs' Complaint, and again in Defendant's Motion for Summary Judgment. (See [Docs. 08, 65]). These challenges to the evidence presented by Plaintiffs warrant the denial of Plaintiffs' Motion for Summary Judgment. Plaintiffs' Motion should further be denied because, according

to the admissible evidence in the record, a reasonable jury could not find in their favor at trial. For the reasons cited herein, and cited in Defendant's Motion for Summary Judgment, Plaintiffs cannot prevail on their TVPRA claim against Defendant. Accordingly, we urge this Court to deny Plaintiffs' Motion and grant the Defendant's Motion for Summary Judgment.

## STATEMENT OF ADDITIONAL FACTS

Defendant incorporates by reference the Statement of Undisputed Material Facts provided in the Brief in Support of Defendant's Motion for Summary Judgment. In addition to those facts, Defendant highlights the following facts in the record:

Plaintiffs claim that they were trafficked for sex in 2013 at the Days Inn Stockbridge hotel (hereinafter "Days Inn") by Craig "Chris Hill" Alexander and T'Keyah Adams. They further contend that Defendant facilitated or participated in the sex trafficking venture with Plaintiffs' trafficker(s) and that Defendant had actual knowledge of their trafficking. Importantly though, as Plaintiffs' Brief makes clear, there is little documentary evidence regarding the Plaintiffs' time and activities at the Days Inn. As such, the evidence relied upon by Plaintiffs is largely their own testimony and records of the investigation and prosecution of their traffickers. Yet, Plaintiffs' testimony is factually inconsistent, both as to each other's accounts and as to the accounts they provided to police after their rescue and the testimony they

have provided in this case. Accordingly, Plaintiffs' own inconsistencies highlight the fact that their motion warrants denial. For example, Q.C. was often confused about the details of her trafficking, her hotel stays, and the overall timeline of events. (See Deposition of Q.C. ("Q.C. Depo"), 115:8-11, 123:5-6 (noting that she was having "mental fog" about what happened because it was traumatic), 123:19-22; 153:1-2). Further, A.J. did not know how long she was at the Days Inn or the length of time between when she ran away from home and when she was rescued by police. (Deposition of A.J. ("A.J. Depo"), 174:16-175:3). Each Plaintiff's inability to recall basic details about the length of time they were at the Days Inn and the alleged trafficking that occurred there present factual questions and serious credibility concerns that cannot be decided as a matter of law by this Court.

Additionally, certain "undisputed facts" proffered by Plaintiffs are pure speculation, which is inadmissible at the summary judgment stage. Plaintiffs allege that the hotel participated in a sex trafficking venture with Hill because it had a relationship with him, but the only evidence in the record supporting such a relationship is two alleged, limited interactions between Hill and hotel staff. For example, Plaintiffs testified that Hill was comfortable at the hotel and they assumed he "knew the hotel people very well" because of his alleged interactions with hotel staff. (Q.C. Depo., 142:18-21). Yet, there is no evidence in the record from Hill, and no evidence establishing his motives or comfort level at the hotel. Moreover,

Plaintiffs are personally aware of only two interactions between Hill and the hotel staff. First, when Plaintiffs overheard an unidentified front desk clerk call a person they believed to be Hill to inquire whether they could be given access to his room after they were locked out after leaving the hotel, yet they admitted that they did not hear the entire conversation. (See A.J. Depo., 163:12-20; Q.C. Depo., 238:24—239:11). Second, A.J saw Hill laughing after talking with hotel staff, though she had no idea what the interaction was about. (A.J. Depo., 218:6—219:25). Notably, however, there is no evidence that either Plaintiff witnessed any interactions between Hill and the hotel staff related to a prior incident of sex trafficking or their specific sex trafficking.  Likewise, there is no evidence in the record that the hotel had knowledge that Hill had trafficked other victims at the hotel before Plaintiffs.  To be clear, there is no evidence confirming that the hotel knew Hill or Adams were involved in sex trafficking and Defendant rented the room to Adams for that purpose. In fact, the general manager of the hotel specifically offered testimony confirming that he was not aware of any employee facilitating, assisting or otherwise involved in the sex trafficking of Plaintiffs. (See Affidavit of Alpesh Patel, attached hereto as Exhibit A).

Further, Plaintiffs speculate that hotel employees acted as lookouts for Hill in connection with their trafficking. In fact, Q.C. testified Hill had a "team" of two guys and three girls watching them at the hotel, but she never met any of the individuals

and did not know if any of the individuals were hotel employees.  (Q.C. Depo., 154:

6-20, 172:3-6 (when asked how her trafficker knew she had left the hotel, "A: I guess

from one of the watchers in the parking lot – I'm not sure – housekeeping or front

desk. I don't know who told them, but somebody did."); 229:5-21 (concluding "who

knows[,] I'm not sure" about discussion whether someone at the hotel acted as a

lookout or warned Hill about a police presence); <u>see also</u> A.J. Depo., 157:13-16;

165:9-19). Plaintiffs further rely on inadmissible hearsay evidence on this point,

claiming that Hill told them he worked with the hotel to watch them. Yet,

significantly, the Plaintiffs also admitted that Hill lied to them about various things.

For example, after being forced to sell themselves for sex they realized Hill and

Adams lied about getting Plaintiffs employment at the hotel. (Q.C. Depo., 159:21-

23; A.J. Depo., 134:6-9, 23-25 (Chris told A.J. they were going to a big house he

bought, but he did not take them to a house)). Additionally, both Plaintiffs believed

Hill was going to give them new clothes, which also turned out to be a lie. (Q.C.

depo., 139:8-10, 140: 15-17; A.J. depo., 144:13-17).

   As a further example, during their two-to-three day stay at the hotel,[1] Q.C.

recalled that housekeeping came to the room three-to-four times unprompted to

---

[1]     While neither Plaintiff could testify as to the exact number of days they were
at the Days Inn, A.J.'s written police statement indicated that she met Chris for the
first time on Wednesday and started working for him on Thursday night. The
Plaintiffs were rescued by police on Friday, March 22, 2013. (Doc. 63-9, p. 1; A.J.
Depo., 174:16-21; Q.C. Depo., 157:9-15).

provide towels, bed sheets, and soap as needed, which Plaintiffs argue is somehow sufficient to show the hotel's direct involvement in their trafficking. Despite Q.C.'s characterization of these interactions, she could not detail how such needed supplies were communicated to the hotel staff or by whom. (Q.C. Depo., 188:14—189:24; 190:9 (initially testifying that housekeeping came by "pretty often" and later clarifying that meant housekeeping came by "probably, like three or four times" during her stay). Her interactions with housekeeping staff was so brief that she did not have enough time to ask them for help escaping her trafficker. (Id., 190:25—191:3). Further, while the only description Q.C. could provide of this housekeeper was that she was a "Hispanic lady with dark hair", while A.J. described the housekeeping as "either a guy or a girl…of a foreign ethnicity" and that the guy did not speak English. (Id., 190:12-17; A.J. Depo., 176:25-177:3, 178:4-10). Plaintiffs' contention that these limited encounters with housekeeping are enough to establish Defendant's participation in the sex trafficking venture requires this Court to make far too great a speculative leap to find that such threadbare evidence is sufficient as a matter of law on this issue.

Furthermore, A.J.'s self-serving deposition testimony about the hotel's alleged involvement with her trafficking is unsupported by Q.C.'s testimony and notably absent from her written statement to police. (Doc. [63-9], reflecting no mention of any solicitation by a hotel employee). Specifically, after the Plaintiffs

escaped the hotel and Hill, the Plaintiffs ultimately returned to the hotel the same night. When they returned, they went to the lobby and requested assistance from the front desk clerk because they were locked out. Q.C. overheard the front desk clerk call Hill about their request though she could not hear the conversation and has no details about Hill and the hotel staff's interaction. (Q.C. Depo., 196:12—198:17 ("I'm just not really sure exactly how that interaction went."); 199:15-22; 205:18-20.) Q.C. did not recall anything else about this interaction – her only interaction – with the front desk clerk, yet A.J. testified that the staff member solicited Plaintiffs for sex during this encounter. (Q.C. Depo., 192:17—193:18; 195:19-25; 199:15-22; 205:18-20; compare to A.J. Depo., 162:1-19). Again, it is telling that this encounter was not described to police, was not included in Plaintiffs' Complaint, was not identified in their discovery responses, and that Q.C. did not have any recollection of this alleged proposition. (Docs. [1], [63-9], and [63-10]).

It is undisputed that Defendant had no knowledge that Plaintiffs were minors being forced to have sex for money at the hotel until receiving a copy of Plaintiffs' Complaint – *ten years* after they were rescued by police. (See Deposition of Alpesh Patel as 30(b)(6) Corporate Representative of MASP ("MASP Depo."), 14:20-23). Similarly, Defendant had no knowledge that Plaintiffs were being sex trafficked by Hill and/or Adams at the hotel until receiving a copy of Plaintiffs' Complaint. (Id.) Alpesh Patel worked as the general manager in 2013 and never observed signs or

evidence of sex trafficking at the property. (See Affidavit of Alpesh Patel, at ¶ 9). He was never notified by any of his employees about signs or evidence of sex trafficking occurring at the subject property in 2013. (Id., at ¶ 8).  Likewise, he was never made aware of any hotel employee propositioning either Plaintiff for sexual acts while at the hotel and any such action would have been outside the course and scope of their employment with the hotel and wholly inconsistent with any job duties. (Id., at ¶ 14).  In sum, in 2013, Mr. Patel had no knowledge that Plaintiffs were being sex trafficked at his hotel. (Id., at ¶¶ 16-17).

## ARGUMENT AND CITATION TO AUTHORITY

### I.    Standard for Summary Judgment

Upon a motion for summary judgment the Court "must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court will then only render summary judgment for the moving party when there is no genuine issue of material fact. Fed. R. Civ. P. 56(c).  When considering a motion for summary judgment, the Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Indeed, "[s]ummary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution

must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." Tippens v. Celotex Corp., 805 F.2d 949, 953–54 (11th Cir. 1986). The evidence presented on Plaintiffs' Motion does not reach this high burden warranting summary judgment. Where the Plaintiffs' proffered evidence consists almost solely on their own testimony, credibility is a key factor in the analysis, which should be properly determined by a jury. Moreover, even absent credibility considerations, Plaintiffs' proffered evidence is insufficient to concluding prove all the elements of their claim. As such, Plaintiffs' motion should be denied and, as discussed in more detail in Defendant's Motion for Summary Judgment, summary judgment should be granted in Defendant's favor. (Doc. [65]).

Plaintiffs have the burden of proving their claims and cannot rely on mere speculative and self-serving testimony about what they believed the hotel knew about their alleged trafficking. The Court cannot consider speculation at the summary judgment stage and "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). In fact, Plaintiffs expressly agree with this point, as outlined in their brief and citations to extensive precedent that speculation does not create a factual dispute to avoid summary

judgment. (See Pl. Brief, at p.11-12; Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 931–32 (7th Cir. 1995)); Fid. & Guar. Life Ins. Co. v. Brooks, 4:12-CV-0230-HLM, 2014 WL 12495341, at *7 (N.D. Ga. Mar. 11, 2014), aff'd, 580 Fed. App'x. 781 (11th Cir. 2014) (quoting Cordoba); Hornsby v. Three Dollar Cafe III, Inc., 2006 WL 47471, at *5 (N.D. Ga. Jan. 9, 2006); Thomas v. City of Columbus, 198 F. Supp. 2d 1360, 1367 (M.D. Ga. Mar. 4, 2002)). Thus, after setting aside evidence relied upon by Plaintiffs that is wholly speculative, the limited record evidence remaining does not support the elements of a violation of the TVPRA, and thus, Plaintiffs' Motion must be denied.

## II.   **Plaintiffs are not entitled to summary judgment based upon the evidence in the record.**

For Plaintiffs to succeed on a claim for liability under the TVPRA, they must prove that the Defendant (1) knowingly benefitted, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA **as to the Plaintiffs**, and (4) the Defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA **as to the Plaintiffs**. Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 726 (11th Cir. 2021) (emphasis added). It should be noted that a number of decisions cited in Plaintiffs' Brief are inapposite to the instant motion because they either involve

orders on motions to dismiss or cases from other jurisdictions, which are neither binding nor persuasive authority in this case, given the growing body of case law in the Northern District and Eleventh Circuit. (Pl. Brief, p. 9, fn. 3). Plaintiffs' Motion focuses predominantly on the second and fourth elements, so we have responded to those arguments below.[2]

### 1. Plaintiffs are not entitled to summary judgment because Defendant did not participate in a common undertaking or enterprise with Plaintiffs' traffickers.

Plaintiffs contend that "Defendant and its employees knowingly assisted and facilitated Plaintiffs' trafficking." (Pl. Brief, at p. 13-14). However, as this Court conclusively and correctly held in another recent case analyzing the same issue and similar evidence, the kinds of allegations made by Plaintiffs here are inadequate to support their motion for summary judgment and, in fact, favors summary judgment for the Defendant. G.W. v. Northbrook Indus., Inc., -- F.Supp.3d --, No. 1:20-CV-05232-JPB, 2024 WL 3166083, at *4 (N.D. Ga. June 14, 2024); see also A.G. v. Northbrook Indus., Inc., No. 1:20-CV-05232-JPB, Doc. 151 (June 14, 2024).

In G.W., the minor Plaintiff was trafficked at a United Inn and Suites ("United") for four days in a room rented by one of her trafficker's associates. (Id., at *1). United was an exterior access hotel where guests and visitors could access

---

[2] Defendant hereby incorporates by reference the arguments raised in its Brief in Support of Defendant's Motion for Summary Judgment which further addresses its arguments against each element of the TVPRA claim that Plaintiffs cannot prove.

the hotel rooms without going through the lobby. (Id.) The trafficker appeared familiar with the hotel staff, and on one occasion, a front desk clerk spoke with the trafficker by phone to confirm that Plaintiff and her friend could be given access to the room after they were locked out. (Id.) The Plaintiff wore provocative clothing, loitered in United's common areas, and purchased condoms and other items from the front office. (Id.) Further, United was known as a "problem hotel" and police had been called to United at least seven times for commercial sex crimes in the preceding four years. (Id. at *2).

At the summary judgment stage, the Court's analysis focused on "whether United took part in a common enterprise relating to Plaintiff's trafficking". (Id. at *3). In reaching its conclusion that United did not, this Court relied heavily on the Eleventh Circuit's decisions in Doe #1 v. Red Roof Inns, Inc., 21 F. 4th 714 (11th Cir. 2021) and K.H. v. Riti, Inc., No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2023), which, despite Plaintiffs' characterization as "erroneous", was properly relied upon by this Court as persuasive authority. (Pl. Brief, p. 14). Importantly, this Court held that the plaintiff was "required to show that the defendant took some action *in common with the traffickers* or others at the hotel who violated the statute to further the object of the traffickers." G.W. v. Northbrook at *3. (Emphasis added). Moreover, the Court noted that "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture and

-13-

observing signs of sex trafficking 'is not the same as participating in it.'" (Id. at *4). In granting summary judgment to United, this Court held that activities that would be expected to further the interest of a hotel enterprise, including renting rooms, collecting payment for rooms, and providing additional towels upon request, were insufficient to demonstrate the hotel's participation in the sex trafficking venture. Further, this Court held that it is not enough for the participation prong that the hotel knew or should have known that sex trafficking was occurring at its property. (Id. at *5_. Instead, this Court reasoned that a "Plaintiff must show *more* than [Defendant's] knowledge of illicit activity and its rental of rooms to Plaintiff's traffickers." (Id.)

Like in G.W., the Plaintiffs in this case allege that they were trafficked at the Days Inn for two-to-three days, accessed the room without going through the lobby, and had a similar interaction with a front desk employee after being locked out of their room. However, this case is lacking some of the more egregious evidence that was present in G.W., such as provocative clothing, loitering in the hotel's common areas, or purchasing condoms from the hotel. Instead, Q.C. wore a blue hoodie, gray sweats, and black converse shoes, while A.J. wore either a blueish shirt and shorts or white tights and a black tank top. (Q.C. Depo, 193:19-194:6; A.J. Depo, 142:21-24; 143:9-19). There is no evidence that they loitered in the common areas or that they purchased condoms from the Days Inn. Further, there is no admissible evidence

that the Days Inn took any "action in common with" Hill or Adams "to further the object of the traffickers." G.W. at *3. There were no requests for help and no visible injuries, violence, or other displays of force that ***might*** support the participation element of Plaintiffs' claim. (Compare to K.H., discussing the facts of Riccio v. McLean, 853 F.3d 553 (1st Cir. 2017) in the context of the participation prong). Further, there is no evidence that any manager went to the traffickers' room while Plaintiffs were with adult males to see if they needed anything or that Plaintiffs answered the door while naked. Further, while A.J. contends that a Days Inn employee propositioned her for sex, the evidence is clear that no sexual encounter ever took place and no goods were ever exchanged between that alleged employee and A.J.. (Compare to I.R. v. I Shri Khodiyar, LLC, No. 1:22-CV-00844-SEG, 2024 WL 1928755 At *7 (N.D. Ga. Mar. 18, 2024) (manager solicited and engaged in forced commercial sex from an underage plaintiff in exchange for free lodging).

Simply put, the admissible evidence in the record does not support Plaintiffs' contentions that the hotel was directly (or indirectly) involved in any common undertaking or enterprise with Hill or Adams related to their trafficking. As such, Plaintiffs' evidence is wholly lacking as to the participation element of their TVPRA claim. Accordingly, like in G.W., this Court should also find summary judgment appropriate for Defendant in this case and, in doing so, properly deny Plaintiffs' motion for summary judgment.

**2.      *Plaintiffs cannot prove as a matter of law that Defendant had actual or constructive knowledge that the venture violated the TVPRA as to Plaintiffs, and therefore, Plaintiffs' Motion fails.***

In considering the elements of a TVPRA claim on summary judgment, Judge Totenberg recently noted that it is "exceedingly difficult to detach the analysis of [the] second element from its analysis of the fourth element" [whether the defendant knew or should have known the venture violated the TVPRA as to Plaintiffs]. C.B. v. Naseeb Investments, Inc. d/b/a The Hilltop Inn a/k/a Econolodge, -- F.Supp.3d --, 1:20-CV-04213-AT, (N.D. Ga. Sep. 12, 2024) at *40. Thus, in addition to the argument set forth below, Defendant hereby incorporates its arguments in Section 1, *supra*.

In C.B., the Court emphasized that knowledge pertaining to the specific Plaintiff is an essential part of the knowledge element. (Id. at *40-41). The C.B. court held that there was no evidence of direct knowledge because the Defendant's employees did not as lookouts, were not otherwise directly involved in the trafficker's operation, and there was no evidence that the trafficker had previously rented rooms at that hotel for the purpose of sex trafficking. (Id. at *42-43). However, the Court then analyzed whether the hotel had constructive knowledge based on evidence that the manager knew and possibly even encouraged prostitution at the property, placed prostitutes in a specific area of the property, and instructed housekeeping to clean those rooms less frequently. (Id. at *44). Moreover, there was

evidence in the record of a blatant trafficking incident had occurred shortly before the at-issue trafficking incident with another trafficker and victim in which the trafficker "duct taped her, put sheets over her head, walked her through Defendant's common area (where there are cameras) and stuffed her in the back of his car." (Id. at *45). Even with that evidence, the C.B. court granted summary judgment to Defendant, holding that knowledge of separate prior instances alone is not sufficient to meet the standard for a TVPRA claim which…require(s) actual or constructive knowledge *as to the trafficking of the individual plaintiff*, plus some degree of acceptance or welcoming of that trafficking. (Id. at 46).

Here, again, the evidence is insufficient for Plaintiffs to meet their burden of proof under an actual or constructive knowledge standard. As discussed throughout this brief, Plaintiffs rely on speculative and contradictory evidence in the record to attempt to meet their burden of proof. However, speculative assumptions cannot be considered, and do not conclusively establish that Defendant had any knowledge that Plaintiffs were being sex trafficked at the hotel. Importantly, Plaintiffs offered no evidence that the Defendant "knowingly rented rooms to Plaintiffs' traffickers," because no such evidence exists. In fact, when Plaintiffs arrived at the hotel, they did not check in because Hill or Adams had already rented a room. Therefore, at the time the trafficker(s) rented this hotel room, there could be no possible way Defendant knew the purpose of the room rental was for sex trafficking these specific

Plaintiffs. They were not even at the property yet when the room was rented. Furthermore, Plaintiffs testified that they believed people were acting as lookouts, but the evidence is lacking to demonstrate that any purported lookouts had any association with Defendant.

### 3.      *Plaintiffs cannot prove the third element of their TVPRA claim.*

As noted by Plaintiffs, to prove the third element of the TVPRA, Plaintiffs must adduce evidence that "[they were] minors when [they were] forced to engage in commercial sex acts and that the Defendant had reasonable opportunity to observe [them] on the premises. D.H. v. Tucker Inn, Inc., 689 F. Supp. 3d 1304, 1310 (N.D. Ga. 2023 (citing U.S. v. Whyte, 928 F.3d 1317, 1328 (11th Cir. 2019)). However, Plaintiffs have ignored a key part of this element, which requires that the Defendant had a reasonable opportunity to observe Plaintiffs on the property to learn that they were minors forced to engage in commercial sex acts. There has been no evidence presented that the hotel should have known Plaintiffs were minors through its limited observations of them on the property. Other than providing their age, Plaintiffs have made no allegations that they looked young or had any other characteristics that could have informed Defendant as to the fact that they were minors. Further, Plaintiffs did not present any evidence to show that Defendant had a reasonable opportunity to observe anything that would suggest they were engaging in commercial sex acts. Instead, these were two females dressed in non-suggestive

clothing that would not alert Defendant or anyone else to any malfeasance. This is perhaps most notably demonstrated by the fact that the Plaintiffs spoke to police at another hotel the night before coming to the Days Inn and the officers apparently did not think they looked underage or too young to be in a hotel alone, as they took no action with regard to the Plaintiffs. (Q.C. Depo., 134:12-136:15; A.J. Depo., 122:24-127:10). While this encounter occurred at a different hotel, the same observations made by the officers regarding each Plaintiff's clothing and appearance are what would have been observed by Defendant after Plaintiffs arrived at the Days Inn. If trained law enforcement did not find reason to further investigate, it cannot be said that Defendant could somehow be held to have a greater knowledge of their age and activities.

For these reasons, Plaintiffs' claim is not undisputed, and their Motion should be denied.

## CONCLUSION

Plaintiffs' Motion for Summary Judgment should be denied. Plaintiffs have not met their burden of proof on the second and fourth elements of their TVPRA claim. Further, although a more ancillary argument made by Plaintiffs, they also cannot establish the third element of their claim. Moreover, they cannot rely upon unsupported speculation, hearsay or self-serving testimony to argue the evidence is uncontroverted. Such inadmissible evidence cannot be considered at the summary

judgment stage and warrants the Court to deny Plaintiffs 'Motion. Indeed, excluding this speculative evidence reveals a significant hole in the record so that Plaintiffs cannot prove their claims against the Defendant. Therefore, for the reasons stated herein and in Defendant's Motion for Summary Judgment, Defendant MASP, LLC respectfully requests that this Court deny Plaintiffs' Motion for Summary Judgment and Grant Defendant's Motion for Summary Judgment, and for any other relief this Court deems just and proper.

Respectfully submitted, this 8th day of November, 2024.

SWIFT, CURRIE, McGHEE & HIERS

By:   *Marissa H. Merrill*
      Kori E. Wagner
      Georgia State Bar No. 155438
      Marissa H. Merrill
      Georgia State Bar No. 216039
      Tracy A. Gilmore
      Georgia State Bar No. 633193
      ***Attorneys for Defendant MASP, LLC***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404.888.6162
Fax:  404.888.6199
kori.wagner@swiftcurrie.com
marissa.merrill@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court pursuant to L.R. 5.1(C) of the Northern District of Georgia, specifically, 14 point, Times New Roman font.

SWIFT, CURRIE, McGHEE & HIERS

By:  *Marissa H. Merrill*
      Kori E. Wagner
      Georgia State Bar No. 155438
      Marissa H. Merrill
      Georgia State Bar No. 216039
      Tracy A. Gilmore
      Georgia State Bar No. 633193
      ***Attorneys for Defendant MASP, LLC***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404.888.6162
Fax:  404.888.6199
kori.wagner@swiftcurrie.com
marissa.merrill@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

This are to certify that on the 8th day of November, 2024, I have caused to be served upon counsel for all parties a true and correct copy of the foregoing **DEFENDANT MASP, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** by filing same through use of the Court's online filing system, the CM/ECF system for the United States District Court for the Northern District of Georgia, which will serve all counsel of record.

SWIFT, CURRIE, McGHEE & HIERS

By:  *Marissa H. Merrill*
Kori E. Wagner
Georgia State Bar No. 155438
Marissa H. Merrill
Georgia State Bar No. 216039
Tracy A. Gilmore
Georgia State Bar No. 633193
***Attorneys for Defendant MASP, LLC***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404.888.6162
Fax:  404.888.6199
kori.wagner@swiftcurrie.com
marissa.merrill@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

4879-8696-7540, v. 1