# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

A.J. and Q.C.,

        Plaintiffs,

v.

MASP, LLC,

        Defendant.

CIVIL ACTION FILE NO.

1:23-CV-04247-JPB

---

## DEFENDANT MASP, LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COMES NOW, MASP, LLC (hereinafter "Defendant"), by and through the undersigned counsel, and, and pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1(B)(3), hereby files its Responses and Objections to Plaintiffs' Statement of Material Facts in Support of Their Motion for Summary Judgment as follows:

1.      In March 2013, 14-year-olds A.J. and Q.C. were taken by their sex traffickers, Craig Hill (aka "Chris" or "Chris Brown") and Tkeyah Adams, to the Days Inn Stockbridge. Ex. 1, May 22, 2013 Incident Report, Plaintiffs A.J. and Q.C. 00066–70; Ex. 2, A.J. Dep., 14:21–23; Ex. 3, Q.C. Dep. 11:6–7; Ex. 4, Indictment of Craig Hill and Tkeyah Adams.

**RESPONSE: Undisputed.**

2.      During their stay, the minor Plaintiffs were repeatedly bought and sold for sex out of room 123. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033–35; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00059–61; Ex. 7, Plea Hearing Transcript, Plaintiffs A.J. and Q.C. 00171–172.

**RESPONSE: Defendant does not dispute that the minor Plaintiffs were bought and sold for sex more than once at the subject hotel. However, Defendant disputes that it had knowledge or information regarding such actions occurring on the property at that time.**

3.      They were forced to perform various sexual acts, including oral and vaginal sex with older male buyers, and were involved in "two-girl specials," where both Plaintiffs would engage in sexual activities with the same buyer simultaneously. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033–35; Ex. 3, Q.C. Dep. 163:9–17.

**RESPONSE: Undisputed.**

4.      Over the course of their stay, A.J. and Q.C. were statutorily raped by at least 14 different buyers. Ex. 8, Det. Lewis Investigative Summary, Plaintiffs A.J. and Q.C. 00358–363, Ex. 2, A.J. Dep. 202:12–203:3.

**RESPONSE: Disputed as stated. Defendant admits that the text messages contained in Exhibit 8 reflect 14 buyers, however, it is not clear whether it was a different individual each time. Further, this number is contradicted by other evidence in the record – specifically, the Warrant Application Affidavit (Plf. Ex. 5, Doc. 57-5), which indicates that Q.C. had two commercial sex encounters and A.J. had approximately 10 commercial sex encounters. (Plf. Ex. 5, Doc. 57-5).**

5.      Hill was comfortable at the Days Inn Stockbridge, boasting that he knew the manager and front desk staff. Ex. 3, Q.C. Dep., 199:3–22, 225:24–226:8.

**RESPONSE: This is disputed.  Plaintiff Q.C. offered testimony that she believed Hill seemed comfortable at the hotel and explained that Hill told her he knew the front desk staff, however, this testimony contains inadmissible hearsay and speculative assumptions. (See Deposition of Plaintiff Q.C., 199:15-25; 226:5-12). Accordingly, Defendant objects to such inadmissible testimony and it cannot be considered at this summary judgment stage.**

6.      He was known to frequent hotels in the area and was well known at this particular hotel. Ex. 9, Application for Criminal Arrest Warrant, Plaintiffs A.J. and Q.C. 00031.

**RESPONSE: Disputed as to Hill being "well known at this particular hotel. Exhibit 9 states "Hill is known to stay at hotels, to include the Days Inn (7385 Hannover Parkway North). (Plf. Ex. 9, Doc. 57-9).**

7.     Hill and Adams had been renting room 123 since at least February 26, 2013, and had trafficked other victims at the hotel before A.J. and Q.C. arrived. Ex. 7, Plea

Hearing Transcript, Plaintiffs A.J. and Q.C. 00171; Ex. 10, Det. Simonds Investigative Summary, Plaintiffs A.J. and Q.C. 00205; Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00103; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00061; Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033; Ex. 12, Q.C. Written Statement, Plaintiffs A.J. and Q.C. 00100; Ex. 2, A.J. Dep. 136:6–137:7, 217:3–8.

**RESPONSE: This is disputed. The investigative summary by Detective M. Simonds explained that Tkeyah Algner Adams and Zannetra Marquell Jones were the two individuals who had rented Room 123 since February 26, 2013. (See [Doc. 63-8]).  Although Defendant does not dispute that Plaintiffs A.J. and Q.C. testified that Hill had trafficked other victims at the hotel previously, there is no evidence that Defendant knew of any prior incidents of sex trafficking or that Hill had previously trafficked victims at the hotel.**

8.     These other victims, some younger than 14, told A.J. and Q.C. that they had been with Hill and Adams for weeks. Ex. 2, A.J. Dep. 135:23–137:7, 190:2–19.

**RESPONSE: Defendant does not dispute that Plaintiff A.J. testified that other victims of their traffickers told her they had been with Hill and Adams for weeks. However, Defendant objects to this evidence as inadmissible hearsay.**

9.      Hill's boast that he knew the front desk staff was true. A front desk employee acted as one of Hill's lookouts, helping the trafficker maintain control over A.J. and Q.C. Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00103; Ex. 2, A.J. Dep. 157:1–159:13.

**RESPONSE: This is disputed. Plaintiffs A.J. and Q.C. offered speculative testimony that hotel employees were working with Hill to watch them or look out for police, but Plaintiff Q.C. admitted that she never met these individuals and did not know whether they were actually hotel employees or whether they served as lookouts. (See Q.C. Depo., 154: 6-20, 172:3-6 (when asked how her trafficker knew she had left the hotel, "A: I guess from one of the watchers in the parking lot – I'm not sure – housekeeping or front desk. I don't know who told them, but somebody did."); 229:5-21 (concluding "who knows[,] I'm not sure" about discussion whether someone at the hotel acted as a lookout or warned Hill about a police presence)). Defendant objects to such inadmissible speculation and it cannot be considered at this summary judgment stage. Defendant further objects to Plaintiffs' reliance upon prior investigative written statements as hearsay.**

10.     The front desk employee was one of multiple people at the hotel Hill had watching the minors to make sure they did not escape. Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00102.

**RESPONSE: This is disputed. A.J.'s written police statement makes no mention of anyone keeping them from escaping and is further contradicted by testimony from A.J. and Q.C. that they did in fact escape on the night before they were rescued by police. (See A.J. Depo., 163:12-20; Q.C. Depo., 238:24—239:11). Further, Plaintiffs A.J. and Q.C. offered speculative testimony that hotel employees were working with Hill to watch them or look out for police, but Plaintiff Q.C. admitted that she never met these individuals and did not know whether they were actually hotel employees or whether they served as lookouts. (See Q.C. Depo., 154: 6-20, 172:3-6 (when asked how her trafficker knew she had left the hotel, "A: I guess from one of the watchers in the parking lot – I'm not sure – housekeeping or front desk. I don't know who told them, but somebody did."); 229:5-21 (concluding "who knows[,] I'm not sure" about discussion whether someone at the hotel acted as a lookout or warned Hill about a police presence)). Defendant objects to such inadmissible speculation and it cannot be considered at this summary judgment stage.  Defendant further objects to Plaintiffs' reliance upon prior investigative written statements as hearsay.**

11.    The front desk employee was one of multiple people at the hotel Hill had watching the minors to make sure they did not escape. Ex. 11, A.J. Written Statement, Plaintiffs A.J. and Q.C. 00102.

**RESPONSE: This is disputed. A.J.'s written police statement makes no mention of anyone keeping them from escaping and is further contradicted by testimony from A.J. and Q.C. that they did in fact escape on the night before they were rescued by police. (See A.J. Depo., 163:12-20; Q.C. Depo., 238:24—239:11). Further, Plaintiffs A.J. and Q.C. offered speculative testimony that hotel employees were working with Hill to watch them or look out for police, but Plaintiff Q.C. admitted that she never met these individuals and did not know whether they were actually hotel employees or whether they served as lookouts. (See Q.C. Depo., 154: 6-20, 172:3-6 (when asked how her trafficker knew she had left the hotel, "A: I guess from one of the watchers in the parking lot – I'm not sure – housekeeping or front desk. I don't know who told them, but somebody did."); 229:5-21 (concluding "who knows[,] I'm not sure" about discussion whether someone at the hotel acted as a lookout or warned Hill about a police presence)). Defendant objects to such inadmissible speculation and it cannot be considered at this summary judgment stage. Defendant further objects to Plaintiffs' reliance upon prior investigative written statements as hearsay.**

12.     When A.J. and Q.C. were at the hotel, Hill would call them and question their activities when he was not there, knowing things only someone watching the girls at the hotel would know. Ex. 2, A.J. Dep. 216:3–18.

**RESPONSE: Defendant does not dispute that Plaintiff A.J. offered this testimony.  However, it is entirely speculative to conclude that employees at the Defendant's hotel "watched the girls."  Plaintiff Q.C. admitted that she never met the individuals who were allegedly lookouts and did not know whether they were actually hotel employees or whether they served as lookouts. (See Q.C. Depo., 154: 6-20, 172:3-6 (when asked how her trafficker knew she had left the hotel, "A: I guess from one of the watchers in the parking lot – I'm not sure – housekeeping or front desk. I don't know who told them, but somebody did."); 229:5-21 (concluding "who knows[,] I'm not sure" about discussion whether someone at the hotel acted as a lookout or warned Hill about a police presence)). Defendant objects to such inadmissible speculation and it cannot be considered at this summary judgment stage.**

13.     When A.J. and Q.C. found themselves locked out of their hotel room, the minors approached the front desk for assistance. Ex. 2, A.J. Dep. 158:10-159:13; Ex. 3, Q.C. Dep. 192:15–19, 193: 6–7.

**RESPONSE: Undisputed.**

14.    The front desk employee, who was familiar with Plaintiffs' trafficker and knew his alias, called Hill to obtain his permission to let the two 14-year-olds back in the room. Ex. 2, A.J. Dep. 157:20–159:13; Ex. 3, Q.C. Dep. 192:15–193:15, 200:8–202:2.

**RESPONSE:** **This is disputed. Plaintiff Q.C. offered speculative testimony during her deposition about this interaction with the hotel's front desk employee.  For example, Plaintiff Q.C. testified that "I think the guy had recognized us.…[b]ecause I think he had called the room number without her telling him. It was something along those lines or – I think he had recognized us because, like I said, he and Chris has a relationship. Also, the housekeeper, too." (See Q.C. Depo., 196:12-20).  She further claims she heard Hill's tone but did not hear – or remember – any part of their conversation. (Id., at 197:5—198:17 (explaining she is not sure how that interaction went)). Similarly, Plaintiff A.J. claims she recognized Hill as the person speaking to the front desk employee because of the one syllable greeting: "Yo." (See A.J. Depo., 159:14—160:5). Defendant objects to such inadmissible speculation. Accordingly, this inadmissible evidence cannot be considered at this summary judgment stage.**

15.    After hanging up the phone, the front desk employee inquired about how much it would cost to purchase sex from one or both minors and expressed an interest in scheduling a "date" with them the next day. Ex. 2, A.J. Dep. 161:15-162:18.

**RESPONSE: This is disputed.  While Plaintiff A.J. offered testimony that she was solicited for sex from a hotel employee during her deposition, such details were never provided in her recorded interview or written statement with police in 2013, included in her Complaint, or in her discovery responses. Accordingly, this testimony appears self-serving for the context of Plaintiffs' Motion for Summary Judgment.  This testimony is further contradicted by the deposition testimony of Plaintiff Q.C., who did not recall any such interaction with hotel staff. (<u>See</u> Q.C. Depo., 196:12—198:17 ("I'm just not really sure exactly how that interaction went."); 199:15-22; 205:18-20.) Q.C. did not recall anything else about this interaction – her only interaction – with the front desk clerk, yet A.J. testified that the staff member solicited Plaintiffs for sex during this encounter. (Q.C. Depo., 192:17—193:18; 195:19-25; 199:15-22; 205:18-20; <u>compare</u> <u>to</u> A.J. Depo., 162:1-19).**

16.    A.J. and Q.C.'s trafficker directed Days Inn employees to provide the minors with "the things" they needed to do their "job." Ex. 2, A.J. Dep. 157:1–19.

**RESPONSE: This is disputed and mischaracterizes the evidence in the record. Plaintiff Q.C. actually testified that housekeepers could "come to the door and give us the towels" or soap, toothbrush, or toothpaste. (<u>See</u> Q.C. Depo., 189:20-21; 191:11-16). She further explained that her interactions with housekeeping were so brief she did not have time to ask them for help escaping**

her trafficker and that she did not hear the conversations between Plaintiff A.J. and housekeepers about their needs. (Id., at 189:6-24; 190:24—191:11).  Thus, it is improper to assume that Defendant's housekeepers provided supplies for the alleged sex trafficking.  There is no evidence that anyone at the hotel supplied anything other than traditional housekeeping items like towels, soap, sheets, toothbrush, and toothpaste. Further, it is complete speculation to assume conversations occurred between Hill and/or Adams and the hotel staff about providing supplies.  There is no evidence that either Plaintiff witnessed – or recall – such communications. (See Q.C. Depo., 189:6-12 ("I'm not sure" how the communications happened with housekeeping)).  This speculation is inadmissible and Defendant specifically objects to its consideration at this summary judgment stage. Furthermore, A.J.'s written statement made clear that Hill, not the hotel, came to the room when the Plaintiffs needed something "like food, condoms, K&Y." (Plf. Ex. 11, Doc. 63-9).

17.    Following this directive, housekeeping came to A.J. and Q.C.'s room multiple times per day—often as many as three to four—to supply fresh towels, exchange sheets, provide toiletries, or empty trash cans. Ex. 2, A.J. Dep. 157:20–158:18, 176:21–177:20; Ex. 3, Q.C. Dep. 188:14–189:5.

**RESPONSE: This is disputed. Plaintiff Q.C. could not recall how often housekeeping came to the room, or how long they were at the hotel. (See Q.C. Depo., 189:2-3, 15-17).**

18.    The contents of the room included digital timers set for 15 and 60 minutes, packaged and used condoms, multiple bottles of lubricants on the dresser, and handwritten notes listing time increments and pricing for each. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00033–34; Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00059.

**RESPONSE: Defendant does not dispute that at the time of the police investigation on March 22, 2013, these items were present in the room. However, there is no evidence that such items were present and observed by hotel staff at any point during Plaintiffs' two-to-three day stay at the hotel.**

19.    All of these items were in plain view, and the housekeepers would have had no choice but to observe them. Id.; Ex. 2, A.J. Dep. 176:21–177:20.

**RESPONSE: Defendant does not dispute that at the time of the police investigation on March 22, 2013, these items were present in the room. However, there is no evidence that such items were present and observed by hotel staff at any point during Plaintiffs' two-to-three day stay at the hotel. Thus, the assumption that "housekeepers would have had no choice but to observe them" is complete speculation and Defendant objects to its**

**consideration at this summary judgment stage.  Furthermore, the assumption that the housekeepers noticed such items in the room is disputed because Plaintiff Q.C. did not recall any housekeepers entering their hotel room or seeing into their room. (<u>See</u> Q.C. Depo., 188:18-20 (claiming that "[w]henever a date would leave, [the housekeeper] would just knock on the door and give us fresh towels."); 189:9-14 (the housekeeper "never came in to clean the room…. It would just be come to the door, give us towels, and go.")**

20.     Heavy traffic could be seen coming in and out of Plaintiffs' room. In the span of just two days of their stay, at least 14 different buyers of commercial sex could be seen coming and going from room 123 at the Days Inn. Ex. 5, Warrant Application Affidavit, Plaintiffs A.J. and Q.C. 00034; Ex. 8, Det. Lewis Investigative Summary, Plaintiffs A.J. and Q.C. 00358–363; Ex. 2, A.J. Dep. 202:12–203:3; Ex. 3, Q.C. Dep. 166:23–167:17.

**RESPONSE: This is disputed and the conclusion that "heavy traffic could be seen coming in and out of Plaintiffs' room" is completely speculative and inadmissible.  There is no evidence regarding what was visible to, or observed by, hotel staff during their stay. Moreover, while Defendant admits that the text messages contained in Exhibit 8 reflect 14 buyers, however, it is not clear whether it was a different individual each time. Further, this number is contradicted by other evidence in the record – specifically, the Warrant**

**Application Affidavit, which indicates that Q.C. had two commercial sex encounters and A.J. had approximately 10 commercial sex encounters. (Plf. Ex. 5, Doc. 57-5). Furthermore, while Detective Lewis' investigative summary makes note of hearsay statements offered by Adams about the hotel calling on March 19 and 20 to advise that too much traffic was in Room 123, Plaintiffs did not arrive to the hotel until March 20 and did not start working for Hill until March 21, 2013. (See Pl. Exhibit 8, Doc. 57-8; Pl. Ex. 11, Doc. 63-9 ("We met for the 1st time on Wednesday and I started working 4 him on Thursday night"); Pl. Ex. 12, Doc. 63-10 ("They made me start like yesterday and today.")).**

21.     The heavy foot traffic to and from the room did not go unnoticed by hotel staff—on several occasions over multiple days, employees contacted Adams to report such activity. Ex. 13, Tkeyah Adams Suspect Interview Summary, Plaintiffs A.J. and Q.C. 00399.

**RESPONSE: This is disputed and such purported evidence is inadmissible. While Detective Lewis' investigative summary makes note of hearsay statements offered by Adams about the hotel calling on March 19 and 20 to advise that too much traffic was in Room 123, Plaintiffs did not arrive to the hotel until March 20 and did not start working for Hill until March 21, 2013. (See Pl. Exhibit 8, Doc. 57-8; Pl. Ex. 11, Doc. 63-9 ("We met for the 1st time on Wednesday and I started working 4 him on Thursday night"); Pl. Ex.**

**12, Doc. 63-10 ("They made me start like yesterday and today.")).. But,
importantly, there is no evidence explaining what individuals the hotel noticed
and whether it was related to these "buyers".**

22.     And after the Plaintiffs finished seeing a date, the front desk employee would
call A.J. and Q.C.'s room to see if they needed anything. Ex. 2, A.J. Dep. 172:25–
174:15.

**RESPONSE: This is disputed. Defendant does not dispute that this was
the deposition testimony of A.J., but disputes the factual nature of such
testimony.  Furthermore, Plaintiff Q.C. did not describe any such interactions
with hotel staff.**

23.     If they did, housekeeping would bring towels or what they needed to the room.
Ex. 2, A.J. Dep. 157:23–158:8.

**RESPONSE: Defendant does not dispute that this was the deposition
testimony of A.J., but disputes the factual nature of such testimony.
Furthermore, Plaintiff Q.C. explained that the items provided by housekeeping
were only towels, sheets, soap, toothbrush, and toothpaste. (See Q.C. Depo.,
189:20-21; 191:11-16).**

24.     A.J. and Q.C. were rescued from the Days Inn on March 22, 2013. Ex. 1, May
22, 2013 Incident Report, Plaintiffs A.J. and Q.C. 00066; Ex. 6, Case Disposition
Summary, Plaintiffs A.J. and Q.C. 00059.

**RESPONSE:** **Undisputed.**

25.     When police officers arrived at the hotel, they made contact with hotel management and obtained a rental roster. Ex. 14, Affidavit and Application for a Search Warrant, Plaintiffs A.J. and Q.C. 00224.

   **RESPONSE:** **Undisputed.**

26.     Officers "learned that management had seen a female matching the description of A.J. in room 123." Ex. 14, Affidavit and Application for a Search Warrant, Plaintiffs A.J. and Q.C. 00224.

   **RESPONSE:** **Undisputed.**

27.     A.J. and Q.C.'s traffickers were arrested, and Craig Hill was sentenced to 15 years for Keeping a Place of Prostitution and Pimping. Ex. 6, Case Disposition Summary, Plaintiffs A.J. and Q.C. 00061; Ex. 15, State v. Hill, No. 2013CR02540-06, Final Disposition, Plaintiffs A.J. And Q.C. 00053.

   **RESPONSE:** **Undisputed.**

28.     In its 30(b)(6) deposition, Defendant testified that it had no knowledge of the Plaintiffs' allegations until receiving this lawsuit. Ex. 16, MASP, LLC 30(b)(6) Dep., 14:20–25, 15:19–16:11, 21:1–8.

   **RESPONSE:** **Undisputed.**

29.     It also confirmed that it had no written or verbal statements from any witnesses related to the Plaintiffs being trafficked at the hotel. Ex. 16, MASP, LLC 30(b)(6) Dep., 14:20–25, 15:19–16:11, 21:1–8.

**RESPONSE:** **Undisputed.**

30.     Defendant testified that it lacked any information regarding the allegations altogether. Ex. 16, MASP, LLC 30(b)(6) Dep., 14:20–25, 15:19–16:11, 21:1–8.

**RESPONSE:** **This is disputed. Defendant's corporate representative testified that he "didn't know anything about the plaintiffs' allegations in this cases until [] receiv[ing] this lawsuit." (See MASP Depo., 14:20-25).**

31.      Despite numerous requests for documents related to employee hiring and training materials, internal communications and guidelines, photographs, surveillance, and video recordings of the premises, room rental records (including financial records), and documents related to the operation and maintenance of the Days Inn Stockbridge, Defendant produced only a single document: a map of the hotel layout. Ex. 16, MASP, LLC 30(b)(6) Dep. at 15:19–16:11; Ex. 17, Def. MASP, LLC's Resps. to Pls' First Cont'g Reqs for Prod. of Docs; Ex. 18, Map Layout, DEF000001.

**RESPONSE: Defendant does not dispute that it produced a map of the hotel layout in response to Plaintiffs' Requests for Production of Documents. However, Defendant explained during its corporate representative deposition that the hotel's records only go back seven years and by the time this lawsuit was filed in 2023, there were no records dating back to 2013. (See MASP Depo., 14:3-19). Defendant specifically looked for old e-mails or paperwork from 2013 to produce in this case. (Id., at 14:5-7).**

32.     Defendant only identified one employee who worked at the Days Inn Stockbridge, but did not know if she worked there in 2013, had no contact information for that employee (or any other staff). Ex. 16, MASP, LLC 30(b)(6) Dep., 17:9–20:13, 21:9–18.

**RESPONSE: Undisputed.**

33.     One of the owners, Alpesh Patel, was the day-to-day manager of the Days Inn, overseeing responsibilities such as finances, ordering supplies, employee management, hiring and firing, daily operations, and room inspections, Alpesh testified that he did not have any information about employees, witnesses, or, most importantly, Plaintiffs' allegations. Ex. 16, MASP, LLC 30(b)(6) Dep., 11:10–12:13, 21:25–22:16.

**RESPONSE: Disputed as stated. Alpesh Patel did not have any information about employees who may have worked at the hotel in 2013 other than Nikki Johnson, and did not have any information about potential witnesses or Plaintiffs' allegations until after this lawsuit was filed. (See MASP, Depo., 17:9–20:13, 21:9–18).**

34.    None of the owners of MASP, LLC have knowledge or evidence concerning any of the allegations in Plaintiffs' Complaint. Ex. 16, MASP, LLC 30(b)(6) Dep. 11:10–12:13, 21:25–22:16; Ex. 19¸ Baldev Patel Dec. ¶¶ 2, 5–6; Ex. 20, Narmada Patel Dec. ¶¶ 2, 5–6; Ex. 21, Shilpa Patel Dec. ¶¶ 2, 5–6.

**RESPONSE: Disputed as stated as to Alpesh Patel, who testified that he did not have knowledge of Plaintiffs' allegations until after this lawsuit was filed. (See MASP Depo., 14:20-25).**

35.    Defendant has no documents, records, evidence, or any information regarding Plaintiffs' sex trafficking at the hotel. Ex. 16, MASP, LLC 30(b)(6) Dep., 20:7–10, 21:1–4, 21:9–23; Ex. 22, Def. MASP, LLC's Resps to Pls' Fr. Cont'g Interrog., Interrog. No. 11.

**RESPONSE: Undisputed.**

36.     Defendant has no knowledge of the identity, names, contact details, or any information about any hotel employees who worked at the hotel during the period during which Plaintiffs were trafficked. Ex. 16, MASP, LLC 30(b)(6) Dep., 20:7–10, 21:1–4, 21:9–23; Ex. 22, Def. MASP, LLC's Resps to Pls' Fr. Cont'g Interrog., Interrog. No. 11.

**RESPONSE: This is disputed. Defendant has identified Alpesh Patel who worked at the hotel during the subject time period of 2013 as the general manager. Defendant further identified a prior employee known as Nikki Robinson who may have worked at the hotel during the subject time period. (See Pl. Exhibit 16, MASP Depo., at 11:10-14; Pl. Exhibit 22, Def. MASP's Resp. to Pl. ROGs No. 11).**

Respectfully submitted, this 8th day of November, 2024.

SWIFT, CURRIE, McGHEE & HIERS

By:  *Marissa H. Merrill*
       Kori E. Wagner
       Georgia State Bar No. 155438
       Marissa H. Merrill
       Georgia State Bar No. 216039
       Tracy A. Gilmore
       Georgia State Bar No. 633193
       ***Attorneys for Defendant***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404.888.6162

Fax:  404.888.6199
kori.wagner@swiftcurrie.com
marissa.merrill@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel hereby certifies that this document has been prepared with one of the

font and point selections approved by the Court pursuant to L.R. 5.1(C) of the

Northern District of Georgia, specifically, 14 point, Times New Roman font.

SWIFT, CURRIE, McGHEE & HIERS

By:  <u>*Marissa H. Merrill*</u>
Kori E. Wagner
Georgia State Bar No. 155438
Marissa H. Merrill
Georgia State Bar No. 216039
Tracy A. Gilmore
Georgia State Bar No. 633193
***Attorneys for Defendant***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404.888.6162
Fax:  404.888.6199
kori.wagner@swiftcurrie.com
marissa.merrill@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

This are to certify that on the 8th day of November, 2024, I have caused to be served upon counsel for all parties a true and correct copy of the foregoing **<u>DEFENDANT MASP, LLC's RESPONSES AND OBJECTIONS TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>** by filing same through use of the Court's online filing system, the CM/ECF system for the United States District Court for the Northern District of Georgia, which will serve all counsel of record.

SWIFT, CURRIE, McGHEE & HIERS

By:  *Marissa H. Merrill*
Kori E. Wagner
Georgia State Bar No. 155438
Marissa H. Merrill
Georgia State Bar No. 216039
Tracy A. Gilmore
Georgia State Bar No. 633193
***Attorneys for Defendant***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404.888.6162
Fax:  404.888.6199
kori.wagner@swiftcurrie.com
marissa.merrill@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

4875-3880-9844, v. 1

-23-