UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

A.J. & Q.C.,

      Plaintiffs,

v.

MASP, LLC,

      Defendant.

CIVIL ACTION FILE

NO. 1:23-cv-4247-JPB

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

**INTRODUCTION**

Defendant's summary-judgment motion is a bad-faith filing intended to burden Plaintiffs with unnecessary work. Defendant has selectively presented immaterial facts, ignored key evidence, and failed to address fundamental elements of the Plaintiffs' claims. Plaintiffs urge this Court to recognize this motion for what it is—a disingenuous attempt to check a procedural box, despite overwhelming evidence that warrants a jury trial—at the very least.

Defendant deliberately omitted critical liability facts from its motion:

- Plaintiffs' trafficker was known to frequent area hotels and was well known at Defendant's hotel, the Days Inn Stockbridge.

- Plaintiffs' trafficker had been renting room 123 for at least 27 days before Plaintiffs were rescued from the Days Inn Stockbridge.

- Before A.J. and Q.C. got to Defendant's hotel, Plaintiffs' traffickers had sold women and other girls, including some younger than Plaintiffs, for sex at the hotel.

- Defendant's front-desk employee was familiar with Plaintiffs' trafficker and knew his alias, Chris Brown.

- Defendant's front-desk employee acted as one of Plaintiffs' trafficker's lookouts, aiding in the control and monitoring of A.J. and Q.C.

- The front-desk employee asked about purchasing sex from both minor plaintiffs, asked about the cost for one or both, and expressed interest in purchasing the 14-year-olds for sex the next day.

- The hotel helped Plaintiffs' trafficker sell Plaintiffs for sex in several ways. For example, after Plaintiffs finished seeing a "date"—being sold for sex—the front-desk employee would call the room to see if they needed anything. Additionally, housekeeping came to A.J. and Q.C.'s room multiple times *per day*—as many as three to four—to supply fresh towels, exchange sheets, provide toiletries, or empty trash cans.

- The hotel room in which the minor Plaintiffs stayed had digital timers set for 15 and 60 minutes, packaged and used condoms, multiple bottles of lubricants, and handwritten notes listing time increments and price. The police noted that all items were *in plain view*, so the housekeepers had to have seen them.

- During two days of their stay, A.J. and Q.C. saw at least 14 different buyers of commercial sex.

- The hotel observed frequent foot traffic to and from room 123, and several times over multiple days, employees contacted Plaintiffs' trafficker to report the activity.

- During A.J. and Q.C.'s rescue, police officers contacted hotel management and obtained a rental roster. As a result, officers learned management had seen a female matching A.J.'s description in room 123.

And Defendant cannot rebut Plaintiffs' evidence because it lacks any knowledge or evidence to do so. Plaintiffs have filed a summary-judgment motion that presents the undisputed facts compelling judgment in Plaintiffs' favor. Doc. 56; Doc. 56-1. Defendant's motion, by comparison, serves only to obscure these facts. Doc. 65-1. Plaintiffs request that the Court deny Defendant's motion and grant summary judgment in their favor.

## STATEMENT OF FACTS

### I.   Plaintiffs A.J. and Q.C. were sold for sex at Defendant's hotel.

In March 2013, 14-year-olds A.J. and Q.C. were taken by their sex traffickers, Craig Hill[1] and Tkeyah Adams, to Defendant's hotel, the Days Inn Stockbridge.[2] During their stay, the minor Plaintiffs were repeatedly bought and sold for sex out of room 123.[3] They were forced to perform various sexual acts, including oral and vaginal sex with older male buyers, and were involved in "two-girl specials," where both Plaintiffs would engage in sexual activities with the same buyer simultaneously.[4] Over the course of their stay, A.J. and Q.C. were statutorily raped by at least 14 different buyers.[5]

Hill was comfortable at the Days Inn Stockbridge, boasting that he knew the manager and front desk staff.[6] He was known to frequent area hotels and was well known at this particular hotel.[7] Hill and Adams had been renting room 123 since at least February 26, 2013, and had trafficked other victims at the hotel before A.J. and

---

[1] Variously referred to in some evidence by his alias "Chris" or "Chris Brown."

[2] Doc. 63-1; Doc. 57-2 at 14:21–23; Doc. 57-3 at 11:6–7; Doc. 63-2.

[3] Doc. 63-3; Doc. 63-4; Doc. 63-5.

[4] Doc. 63-3; Doc. 57-3 at 163:9–17.

[5] Doc. 63-6, Doc. 57-2 at 202:12–203:3.

[6] Doc. 57-3 at 199:3–22, 225:24–226:8.

[7] Doc. 63-7.

Q.C. arrived.[8] These other victims, some younger than 14, told A.J. and Q.C. that they had been with Hill and Adams for weeks.[9]

Hill's boast that he knew the front-desk staff was true. A front-desk employee acted as one of Hill's lookouts, helping the trafficker maintain control over A.J. and Q.C.[10] The front-desk employee was one of multiple people at the hotel Hill had watching the minors to make sure they did not escape.[11] When A.J. and Q.C. were at the hotel, Hill would call the girls and question their activities when he was not there, knowing things only someone watching them at the hotel would know.[12]

And when A.J. and Q.C. found themselves locked out of their hotel room, the minors approached the front desk for assistance.[13] The front-desk employee, who was familiar with Plaintiffs' trafficker and knew his alias, called Hill to get his permission to let the two 14-year-olds back in the room.[14] After hanging up the phone, the front-desk employee asked about how much it would cost to purchase sex from

---

[8] Doc. 63-8; Doc. 63-4; Doc. 63-9; Doc. 63-3; Doc. 63-10; Doc. 57-2 at 136:6–137:7, 217:3–8.

[9] Doc. 57-2 at 135:23–137:7, 190:2–19.

[10] Doc. 63-9; Doc. 57-2 at 157:1–159:13.

[11] Doc. 63-9.

[12] Doc. 57-2 at 216:3–18.

[13] Doc. 57-2 at 158:10-159:13; Doc. 57-3 at 192:13–19, 193: 6–7.

[14] Doc. 57-2 at 157:20–159:13; Doc. 57-3 at 192:13–193:15, 200:8–202:2.

one or both minors and expressed an interest in scheduling a "date" with them the next day.[15]

In addition to the front-desk employees, A.J. and Q.C.'s trafficker directed Defendant's employees to provide the minors with "the things" they needed to do their "job."[16] Following this directive, the front-desk employee called between men coming to the room to see if the minors needed anything and housekeeping came to A.J. and Q.C.'s room multiple times per day—*as many as three to four*—to supply fresh towels, exchange sheets, provide toiletries, or empty trash cans.[17] Plaintiffs' trafficker received services that no other guests were receiving. The hotel room in which the obviously minor Plaintiffs stayed had digital timers set for 15 and 60 minutes, packaged and used condoms, multiple bottles of lubricants, and handwritten notes listing time increments and price.[18] These items were in plain view, and the housekeepers had to have seen them.[19]

Plaintiffs' room received heavy foot traffic that was visible to anyone looking. During two days of their stay, at least 14 different buyers of commercial sex came

---

[15] Doc. 57-2 at 161:15-162:18.

[16] *Id.* at 157:1–19.

[17] *Id.* at 157:20–158:18, 172:25–174:14, 176:21–177:20; Doc. 57-3 at 188:14–189:5.

[18] Doc. 63-3; Doc. 63-4.

[19] *Id.*; Doc. 57-2 at 176:21–177:20.

and went from room 123 at the Days Inn Stockbridge.[20] The heavy foot traffic to and

from the room did not go unnoticed by hotel staff. Several times over multiple days,

hotel employees contacted Adams to report such activity.[21] And after the Plaintiffs

finished seeing a date, the front desk employee would call A.J. and Q.C.'s room to

see if they needed anything.[22] If they did, housekeeping would bring towels or what-

ever else was needed to the room.[23]

Ultimately, A.J. and Q.C. were rescued from the Days Inn on March 22,

2013.[24] When police officers arrived at the hotel, they got a rental roster from hotel

management.[25] These officers "learned that management had seen a female match-

ing the description of A.J. in room 123."[26] A.J. and Q.C.'s traffickers were arrested,

and Craig Hill was sentenced to 15 years for keeping a place of prostitution and

pimping.[27]

---

[20] Doc. 63-3; Doc. 63-6; Doc. 57-2 at 202:12–203:3; Doc. 57-3 at 166:23–167:17.

[21] Doc. 63-11.

[22] Doc. 57-2 at 172:25–174:15.

[23] *Id.* at 157:23–158:8.

[24] Doc. 63-1; Doc. 63-4.

[25] Doc. 63-12.

[26] *Id.*

[27] Doc. 63-4; Doc. 63-13.

**II.     Defendant has no evidence to counter Plaintiffs' harrowing accounts of being sex trafficked at the Days Inn Stockbridge.**

Defendant's lack of knowledge about this case is highlighted by its inability to recall any specifics or produce any documents. For instance, in its 30(b)(6) deposition, Defendant testified that it had no knowledge of the Plaintiffs' allegations until receiving this lawsuit.[28] It also confirmed that it had no written or verbal statements from any witnesses related to the Plaintiffs being trafficked at the hotel.[29] In fact, Defendant testified that it lacked any information regarding the allegations altogether.[30]

Defendant's ignorance extends beyond the facts of this case to include even the most basic details about the hotel's operations and personnel. Despite numerous requests for documents related to employee hiring and training materials, internal communications and guidelines, photographs, surveillance, and video recordings of the premises, room rental records (including financial records), and documents re-

---

[28] Doc. 58-6 at 14:20–25, 15:19–16:11, 21:1–8.

[29] *Id.*

[30] *Id.*

lated to the operation and maintenance of the Days Inn Stockbridge, Defendant produced only a single document: a map of the hotel layout.[31] Additionally, Defendant could only identify one employee who worked at the Days Inn Stockbridge, but did not know if she worked there in 2013, and had no contact information for that employee (or any other staff).[32] And though it acknowledged that one of the owners, Alpesh Patel, was the day-to-day manager of the Days Inn, overseeing responsibilities such as finances, ordering supplies, employee management, hiring and firing, daily operations, and room inspections, Alpesh testified that he did not have any information about employees, witnesses, or, most importantly, Plaintiffs' allegations.[33] In fact, none of the owners of MASP, LLC have knowledge or evidence concerning *any* of the allegations in Plaintiffs' Complaint.[34]

Such a complete lack of knowledge prevents Defendant from denying the allegations made by Plaintiffs or challenging the substantial evidence that supports these claims. Simply put, "I don't know" does not create a genuine issue of material fact.

---

[31] *Id.* at 15:19–16:11; *see generally* Doc. 63-14; *see also* Doc. 58-8. While most requests focused on 2008 through 2013, at least one request extended through the present. Despite this, Defendant was still unable to produce a single responsive document. *See* Doc. 63-14, Req. No. 26.

[32] Doc. 58-6 at 17:9–20:13, 21:9–18.

[33] *Id.* at 11:10–12:13, 21:25–22:16.

[34] *Id.*; Doc. 58-9, ¶¶ 2, 5–6; Doc. 58-10, ¶¶ 2, 5–6; Doc. 58-11, ¶¶ 2, 5–6.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), a court can only grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, "the basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen*, 121 F.3d at 646 (quoting *Anderson*, 477 U.S. at 251).

## ARGUMENT

In cases where hotel staff directly assisted traffickers, courts have consistently upheld claims.[35] In this case, the traffickers paid Defendant to rent rooms to sell the

---

[35] Plaintiffs' attorneys reviewed 134 civil sex-trafficking opinions under § 1595—believed to encompass *all* relevant opinions nationwide—and found no case holding that employee involvement in the trafficking did not satisfy the elements of a § 1595(a) claim. *See, e.g.*, *A.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5231-JPB, 2022 WL 1644921 (N.D. Ga. May 24, 2022); *G.W. v. Northbrook Indus., Inc.,* No. 1:20-cv-5232-JPB, 2024 WL 3166083 (N.D. Ga. June 14, 2024); *Doe #1 v. Red Roof*

underage Plaintiffs, and Defendant's employees actively assisted the traffickers in

facilitating these sales, leading to ongoing room rentals. The evidence in this case

shows that the hotel had actual knowledge, and knowingly facilitated, Plaintiffs' mi-

nor sex trafficking at the hotel in exchange for room revenue. Though the analysis

is repetitive,[36] Defendant's liability for each element is set forth below.

## I.     The indisputable evidence in this case establishes Defendant's liability under the TVPRA.

### A.     Defendant knowingly benefited from the hotel.

Defendant received money from Plaintiffs' traffickers to rent the rooms in

which Plaintiffs were trafficked.[37] This fact is undisputed. Every court in the country

to analyze this element "ha[s] found that the rental of a room constitutes a financial

benefit from a relationship with the trafficker sufficient to meet this element of the

---

*Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021); *I.R. v. I Shri Khodiyar, LLC*, No. 1:22-cv-844-SEG, 2024 WL 1928755 (N.D. Ga. Mar. 18, 2024); *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247 (N.D. Ga. 2023); *Doe (R.A.) v. Best W. Int'l*, No. 2:23-cv-3459, 2024 WL 3850958 (S.D. Ohio Aug. 16, 2024); *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-cv-6038, 2024 WL 3276417 (W.D. Wash. July 2, 2024); *A.M. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-3797, 2024 WL 1347301 (S.D. Ohio Mar. 29, 2024); *S. Y. v. Best W. Int'l, Inc.*, No. 2:20-cv-616, 2021 WL 2315073 (M.D. Fla. June 7, 2021).

[36] In short, every reviewed opinion in the country agrees that the egregious fact of employee involvement satisfies the elements of § 1595. Which is unsurprising, given that such participation satisfies the higher perpetrator claim standard of actual knowledge. The disputes regarding the TVPRA have to do with what *additional* activity is covered under the "should have known" standard applicable to other civil beneficiaries.

[37] Doc. 63-5; Doc. 63-8; Doc. 63-9; Doc. 57-2 at 217:3–8.

§ 1595(a) standard." *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp 3d 1228, 1234 (N.D. Ga. 2022) (collecting cases).

Thus, the uncontroverted evidence shows that Defendant knowingly benefitted financially by renting rooms to Plaintiffs' traffickers at the Days Inn Stockbridge, satisfying the first element of the TVPRA.

### B. Defendant participated in a venture under the TVPRA.

Defendant did more than accidentally rent rooms to someone it should have known was trafficking two 14-year-old girls. Defendant and its employees knowingly assisted and facilitated Plaintiffs' trafficking.[38]

"Participation in a venture" means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021). That is all. This element does not require the defendant to be in a "venture" with the traffickers.[39] For this reason, *Doe #1*'s definition of "participation in a venture" is broad and encompasses more than just knowing or intentional criminal conduct, such as acting as a lookout for traffickers. Yet even

---

[38] This, of course, is also a criminal violation of § 1591(a)(1) and (2) because the hotel is knowingly harboring under (a)(1) and knowingly benefitting under (a)(2).

[39] While *Doe #1* talks at times about connecting the defendant and the traffickers, the Eleventh Circuit did so only because the plaintiffs had pleaded that the defendants (hotel franchisors) were in a "sex trafficking venture" with the plaintiffs' traffickers. In doing so, *Doe #1* was doing nothing more than applying the general definition of "participation in a venture" to the specific facts of the case.

if "participation in a venture" meant something other than what *Doe #1* held it meant, as some cases have erroneously said (*e.g.*, *K.H. v. Riti, Inc.,* No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024)),[40] the evidence here meets that higher standard as well. No opinion reviewed in the country has ever held otherwise, and Plaintiffs have exceeded the requirement of participation in a venture. *See* cases cited *supra* n.3535.

Defendant's employees assisted Plaintiffs traffickers. A front-desk employee acted as a lookout for Plaintiffs' traffickers and attempted to solicit the 14-year-olds for sex at the hotel.[41] Employees called to check on the minors after men paid them for sex and if the minors needed supplies, housekeepers at the hotel delivered clean linens to the room Plaintiffs were in three to four times per day.[42]

---

[40] *Doe #1* is the only binding authority for this Court. 21 F.4th 714 (11th Cir. 2021). *Riti* misapplied *Doe #1*, committing significant and consequential errors. *First*, the Eleventh Circuit made it clear that "participation in a venture" for TVPRA civil-liability purposes requires only that the defendant "take part in a common undertaking involving risk or profit." *Id.* at 727. Importantly, that common undertaking does not need to be a sex trafficking venture. *Id.* at 730 (Jordan, J., concurring). *Second*, *Riti* incorrectly dismissed the distinction between franchisors and companies that own and operate hotels (like Defendant), finding it immaterial. 2024 WL 505063, at *3. This is a fundamental misreading of *Doe #1*, which concerned "claims against *franchisors that do not operate or manage the hotels* where sex trafficking allegedly occurred." 21 F.4th at 727 (Jordan, J., concurring) (emphasis added). Even so, Defendant's actions go beyond observation and constitute employee participation in Plaintiffs' trafficking. For these reasons, Plaintiffs choose not to belabor this point.

[41] Doc. 58-1; Doc. 57-2 at 157:20–159:13; 161:15-162:19.

[42] Doc. 57-2 at 157:20–158:18, 176:21–177:20; Doc. 57-3 at 188:14–20.

Defendant has no evidence to contradict Plaintiffs' evidence. Unable to present a defense on the facts, Defendant tries to mischaracterize Plaintiffs' evidence as "speculative." But Defendants is wrong.

Speculative evidence involves beliefs, assumptions, or conclusory statements that lack supporting evidence. *Hornsby v. Three Dollar Cafe III, Inc.*, No. 1:03-cv-1668-GET, 2006 WL 47471, at *5 (N.D. Ga. Jan. 9, 2006). There, the plaintiff claimed that the defendant had hiring authority. But the sole basis for that claim was her belief that the defendant "might" influence hiring decisions by making recommendations, despite admittedly not knowing if the defendant had hiring authority. *Id.* When asked who made the final hiring decisions, the plaintiff identified the individuals responsible but omitted the defendant from the list altogether. *Id.* At the same time, the defendant presented positive and uncontroverted evidence that he did not have hiring authority. *Id.*[43]  Given these circumstances, the court held that the plaintiff's claim about the defendant's hiring authority was speculative and granted summary judgment to the defendant. *Id.*

The *Hornsby* court did not exclude the evidence as speculative because it came from the plaintiff's own testimony. Rather, the problem with the plaintiff's

---

[43] This uncontroverted and positive evidence came directly from the defendant's own affidavit. *Hornsby,* 2006 WL 47471, at *5. This further reinforces that the court found the plaintiff's evidence speculative because of its content, not its source.

evidence arose from her equivocal testimony in the face of positive, uncontradicted contrary evidence. *Id.* The plaintiff's use of terms like "may have" and "I don't know" weakened the credibility of her claim that the defendant had hiring authority. *Id.* Such vague and uncertain language signals a lack of definitive knowledge and amounts to mere speculation, which is insufficient to create a genuine issue of material fact. *Id.*

That is *not* the kind of evidence Plaintiffs present. For example, A.J. and Q.C. testified without equivocation that the front-desk employee called their trafficker.[44] Challenged to explain why they thought the employee called their trafficker, Plaintiffs testified that they witnessed the phone call and the employee told them that he called their trafficker.[45] That is direct, nonspeculative evidence that a phone call between the front desk employee and the trafficker happened. *See Wright v. Southland Corp.*, 187 F.3d 1267, 1293 (11th Cir. 1999) ("'[D]irect evidence' has a well-established meaning in the law of evidence as 'evidence, which if believed, proves existence of fact in issue without inference or presumption.'" (quoting *Black's Law Dictionary* 6th ed. 1990)). And Plaintiffs' assertion that Defendant and its employees knowingly assisted and facilitated their trafficking is based on similar nonspeculative evidence. *See supra* 3–7.

---

[44] Doc. 57-2 at 157:20–159:13; Doc. 57-3 at 192:13–193:15, 200:8–202:2.

[45] Doc. 57-2 at 157:20–159:13; Doc. 57-3 at 192:13–193:15, 200:8–202:2.

Furthermore, the issue in *Gallagher Benefit Services, Inc. v. Campbell* centered on whether circumstantial evidence could support a reasonable inference in favor of the plaintiff at summary judgment. 528 F. Supp. 3d 1326, 1346–47 (N.D. Ga. 2021). And Defendant's citation of this case omits key context. *See* Doc. 65-1 at 14. As the court in *Gallagher* explained, quoting the Eleventh Circuit:

> Under federal law, an inference must be reasonable to defeat a motion for summary judgment. A reasonable inference is one that a reasonable and fair-minded person in the exercise of impartial judgment might draw from the evidence. Reasonable inferences may rest in part on conjecture, for an inference by definition is at least partially conjectural. But a jury cannot be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such an inference is infirm because it is not based on the evidence.

*Id.* (quoting *Berbridge v. Sam's E, Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) (internal citations and punctuation omitted)). The court further explained, "[i]n passing upon a motion for summary judgment, a finding of fact which may be inferred but not demanded by circumstantial evidence has no probative value *against* positive and uncontradicted evidence that no such fact exists." *Id.* (quoting *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1564 (11th Cir. 1989)) (emphasis added).

Even if this Court were to find that the fact that Defendant and its employees knowingly assisted and facilitated Plaintiffs' trafficking may be "inferred but not demanded by circumstantial evidence" (it is demanded), it is not contradicted by *any* evidence, let alone positive and uncontroverted evidence. Defendant's own testi-

mony highlights the absence of evidence to challenge the Plaintiffs' claims. Defend-ant has testified that it has no knowledge regarding the Plaintiffs' trafficking, their claims, or the operation of the hotel during that period, and it cannot provide any information about the hotel's employees because it does not know their identities or how to contact them.[46] Thus, Defendant cannot provide any positive and uncontro-verted evidence to contradict the Plaintiffs' evidence, whether the existence of the fact is inferred or demanded by circumstantial evidence.

The uncontroverted evidence in this case not only raises a triable issue of fact but is so overwhelming that it warrants summary judgment in favor of Plaintiffs. The type of participation described above more than satisfies the second element of a TVPRA claim. *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228 (N.D. Ga. 2022); *see also* cases cited *supra* note 35.

### C.   Defendant's venture violated the TVPRA as to A.J. and Q.C.[47]

The venture in which Defendant participated committed a crime against A.J. and Q.C. To prove this element, Plaintiffs must adduce evidence that they were "mi-

---

[46] Doc. 58-6 at 14:20–25, 15:19–16:11, 21:1–23; *see also* Doc. 58-12; Doc. 58-7; Doc. 58-9; Doc. 58-10; and Doc. 58-11.

[47] For purposes of a civil-beneficiary claim, the TVPRA civil-liability statute re-quires proof only of "an act in violation of this chapter." 18 U.S.C. § 1595(a). Be-cause Plaintiffs can prove much more than this, they need to discuss why no binding Eleventh Circuit case, including *Doe #1*, holds otherwise.

nors when [they were] forced to engage in commercial sex acts and that the Defendant had a reasonable opportunity to observe [them] on the premises." *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1310 (N.D. Ga. 2023) (citing *United States v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019)).

The undisputed facts show that A.J. and Q.C. were each 14 years old when they were sold for sex at the Days Inn Stockbridge.[48] For trafficking Plaintiffs at Defendant's hotel, their trafficker was convicted of keeping a place of prostitution and pimping under Georgia law.[49] Defendant had many opportunities to observe Plaintiffs, including (1) when housekeeping saw them in their hotel room surrounded by sex paraphernalia; (2) while the hotel's front-desk employee called their room to check if the minors needed anything after buyers of commercial sex left; (3) when hotel employees acted as a lookout of their traffickers and spied on them when he was away; and (4) when a hotel front-desk employee let the minors back into their room (after calling to check with their trafficker first) and then asked about the cost to have sex with them.[50]

---

[48] Doc. 63-1; Doc. 57-2 at 14:21–23; Doc. 57-3 at 11:6–7.

[49] Doc. 63-13.

[50] Doc. 63-9; Doc. 57-2 at 157:1–159:13; 161:15-162:18, 172:25–174:15, 176:21–177:20; Doc. 57-3 at 188:14–20, 192:13–193:15.

As discussed above, *supra* note 38, the hotel's knowing facilitation of A.J. and Q.C.'s trafficking also independently violated the TVPRA (§ 1591(a)(1) and (2)) because the hotel knowingly harbored Plaintiffs under (a)(1) and knowingly benefitted under (a)(2).

Thus, Plaintiffs have satisfied their burden on the TVPRA's third element.

### D.    Defendant had actual knowledge that the venture violated the TVPRA as to A.J. and Q.C.

The uncontroverted evidence proves that Defendant had *actual* knowledge of A.J. and Q.C.'s minor sex trafficking at its hotel. Defendant knowingly rented rooms to Plaintiffs' traffickers and, at the direction of those traffickers, actively facilitated their exploitation.[51] Put simply, the Days Inn Stockbridge employees knowingly aided the *children* in "doing their job" for their trafficker, fully aware of their complicity in the exploitation.

The employees regularly checked in on Plaintiffs after buyers visited and left the room. Housekeeping came to the room up to four times a day to deliver clean linens and change the trash. When they did, the signs of commercial sex were strewn in the room.[52] Plaintiffs' traffickers enlisted Defendant's employees to monitor the

---

[51] Doc. 63-5; Doc. 63-8; Doc. 63-9; Doc. 63-4; Doc. 63-3; Doc. 63-10; Doc. 57-2 at 135:23–137:7, 157:1–19, 217:3–8.

[52] Doc. 57-2 at 157:20–158:18, 172:25–174:15, 176:21–177:20; Doc. 57-3 at 188:14–20; Doc. 63-3; Doc. 63-4.

girls' activities.[53] Worse, Defendant's employee solicited the minors for sex.[54] This inquiry alone demonstrates Defendant's actual knowledge of A.J. and Q.C.'s circumstances and proves Defendant knew that the minor Plaintiffs were being sold for sex at the hotel.

Because the uncontroverted evidence proves that Defendant knew Plaintiffs were being trafficked for sex at the hotel, no genuine issue of material fact remains. As a result, Plaintiffs are entitled to summary judgment on Defendant's civil liability under the TVPRA. The Court should deny Defendant's motion for summary judgment and grant summary judgment in favor of Plaintiffs.

## II.    A reasonable jury could find that Plaintiffs are entitled to punitive damages under the TVPRA and the preponderance of the evidence standard applies.

"Punitive damages are generally appropriate under the [TVPRA] civil remedy provision because [the TVPRA] creates a cause of action for tortious conduct that is ordinarily intentional and outrageous." *Arreguin v. Sanchez*, 398 F. Supp. 3d 1314, 1329 (S.D. Ga. 2019) (quoting *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1175 (D. Kan. 2018) (internal quotations and citations omitted)). "'In other words, because 'the

---

[53] Doc. 63-9; Doc. 57-2 at 216:3–18. Shockingly, one employee even solicited the Plaintiffs for commercial sex. Doc. 57-2 at 161:15-162:18.

[54] Doc. 57-2 at 161:15-162:18.

wrong done by [a] violation of the [TVPRA]' is one that involves 'significant viola-
tions . . . of fundamental health and personal rights . . .' an award of punitive dam-
ages in a TVPRA case is generally consistent with 'the traditional use of punitive
damages . . . to punish and deter conduct involving an element of outrage." *Id.* (quot-
ing *Ross*, 325 F. Supp. 3d at 1175–76 (citations omitted)). Courts have recognized
trafficking as a particularly egregious act and have therefore awarded substantial
punitive damages for violations of the TVPRA. *See, e.g.*, *Doe v. Howard*, No. 1:11-
cv-1105, 2012 WL 3834867, at *4–5 (E.D. Va. Sept. 4, 2012) (awarding punitive
damages of $2 million under TVPRA for forced sexual servitude and trafficking).

Defendant is wrong about the applicable standard of proof. In fact, Defendant
did not even cite the right kind of law. Defendant's claim that the standard is clear
and convincing evidence is based on a single case: *Battle v. Thomas*, 623 F. Supp.
3d 1312 (N.D. Ga. 2022). The problem with Defendant's reliance on *Battle* is that it
was a diversity case in which the court was applying Georgia law. *See id.* at 1318.
This is a federal-question case in which the Court must apply federal law to a federal
cause of action. *Battle* provides no insight on the question of federal law, and De-
fendant offers no reason to follow Georgia law in a federal case.

In federal court, plaintiffs need only prove punitive damages by a preponder-
ance of the evidence to recover for federal civil claims like those under the TVPRA.
*See Herman & McLean v. Huddleston*, 459 U.S. 375, 387 (1983) (holding that the

standard of proof generally applied in federal civil cases is preponderance of the evidence); *Smith v. Wade*, 461 U.S. 30, 50–56 (1983) (noting that "[t]here has never been any general common law rule that the threshold for punitive damages must always be higher than that for compensatory liability"); White *v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 805 (6th Cir. 2004), *aff'd*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (holding that preponderance standard applies to punitive damages in Title VII cases); *In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001) (applying preponderance standard to award of punitive damages in maritime case absent Congress legislating a higher standard).

Here, Defendant acted with reckless disregard for Plaintiffs' health and safety when it knowingly benefitted and actively facilitated the minor Plaintiffs' trafficking. *See supra* 3–7. Defendant itself flagrantly violated federal law and knowingly profited off others doing the same. *Id.*; s*ee supra* note 38. Thus, punitive damages are necessary to punish Defendant and deter it and others from actively facilitating and knowingly benefitting from minor sex trafficking.

## CONCLUSION

The unrebutted evidence in this case establishes Defendant's liability under the law in favor of the Plaintiffs. The uncontroverted record shows that Defendant knowingly benefitted from participation in a venture that it knew or should have known violated the TVPRA as to Plaintiffs A.J. and Q.C. Because this evidence is

uncontroverted, there is no genuine dispute as to any material fact, and Plaintiffs are entitled to judgment as a matter of law. Accordingly, the Court should DENY Defendant's motion for summary judgment and GRANT Plaintiffs' motion for summary judgment and the case should proceed to trial so that a jury may determine the appropriate damages.

Respectfully submitted on November 8, 2024.

ANDERSEN, TATE & CARR, P.C.

/s/ Jonathan S. Tonge
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

# CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile