UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| A.J. & Q.C., <br><br> Plaintiffs, <br><br> v. <br><br> MASP, LLC, <br><br> Defendant. | CIVIL ACTION FILE <br><br> NO. 1:23-cv-4247-JPB |

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. In March 2013, 14-year-olds A.J. and Q.C. were taken by their sex traffickers, Craig Hill[1] and Tkeyah Adams, to Defendant's hotel, the Days Inn Stockbridge.[2]

2. During their stay, the minor Plaintiffs were repeatedly bought and sold for sex out of room 123.[3]

3. They were forced to perform various sexual acts, including oral and vaginal sex with older male buyers, and were involved in "two-girl specials," where both Plaintiffs would engage in sexual activities with the same buyer simultaneously.[4]

4. Over the course of their stay, A.J. and Q.C. were statutorily raped by at least 14

---

[1] Variously referred to in some evidence by his alias "Chris" or "Chris Brown."
[2] Doc. 63-1; Doc. 57-2 at 14:21–23; Doc. 57-3 at 11:6–7; Doc. 63-2.
[3] Doc. 63-3; Doc. 63-4; Doc. 63-5.
[4] Doc. 63-3; Doc. 57-3 at 163:9–17.

different buyers.[5]

5. Hill was comfortable at the Days Inn Stockbridge, boasting that he knew the manager and front desk staff.[6]

6. He was known to frequent area hotels and was well known at this particular hotel.[7]

7. Hill and Adams had been renting room 123 since at least February 26, 2013, and had trafficked other victims at the hotel before A.J. and Q.C. arrived.[8]

8. These other victims, some younger than 14, told A.J. and Q.C. that they had been with Hill and Adams for weeks.[9]

9. Hill's boast that he knew the front-desk staff was true. A front-desk employee acted as one of Hill's lookouts, helping the trafficker maintain control over A.J. and Q.C.[10]

10. The front-desk employee was one of multiple people at the hotel Hill had watching the minors to make sure they did not escape.[11]

11. When A.J. and Q.C. were at the hotel, Hill would call the girls and question their

---

[5] Doc. 63-6, Doc. 57-2 at 202:12–203:3.
[6] Doc. 57-3 at 199:3–22, 225:24–226:8.
[7] Doc. 63-7.
[8] Doc. 63-8; Doc. 63-4; Doc. 63-9; Doc. 63-3; Doc. 63-10; Doc. 57-2 at 136:6–137:7, 217:3–8.
[9] Doc. 57-2 at 135:23–137:7, 190:2–19.
[10] Doc. 63-9; Doc. 57-2 at 157:1–159:13.
[11] Doc. 63-9.

activities when he was not there, knowing things only someone watching them at the hotel would know.[12]

12. And when A.J. and Q.C. found themselves locked out of their hotel room, the minors approached the front desk for assistance.[13]

13. The front-desk employee, who was familiar with Plaintiffs' trafficker and knew his alias, called Hill to get his permission to let the two 14-year-olds back in the room.[14]

14. After hanging up the phone, the front-desk employee asked about how much it would cost to purchase sex from one or both minors and expressed an interest in scheduling a "date" with them the next day.[15]

15. In addition to the front-desk employees, A.J. and Q.C.'s trafficker directed Defendant's employees to provide the minors with "the things" they needed to do their "job."[16]

16. Following this directive, the front-desk employee called between men coming to the room to see if the minors needed anything and housekeeping came to A.J. and Q.C.'s room multiple times per day—*as many as three to four*—to supply fresh

---

[12] Doc. 57-2 at 216:3–18.
[13] Doc. 57-2 at 158:10-159:13; Doc. 57-3 at 192:13–19, 193: 6–7.
[14] Doc. 57-2 at 157:20–159:13; Doc. 57-3 at 192:13–193:15, 200:8–202:2.
[15] Doc. 57-2 at 161:15-162:18.
[16] *Id.* at 157:1–19.

3

towels, exchange sheets, provide toiletries, or empty trash cans.[17] Plaintiffs' trafficker received services that no other guests were receiving.

17. The hotel room in which the obviously minor Plaintiffs stayed had digital timers set for 15 and 60 minutes, packaged and used condoms, multiple bottles of lubricants, and handwritten notes listing time increments and price.[18]

18. These items were in plain view, and the housekeepers had to have seen them.[19]

19. Plaintiffs' room received heavy foot traffic that was visible to anyone looking. During two days of their stay, at least 14 different buyers of commercial sex came and went from room 123 at the Days Inn Stockbridge.[20]

20. The heavy foot traffic to and from the room did not go unnoticed by hotel staff. Several times over multiple days, hotel employees contacted Adams to report such activity.[21]

21. And after the Plaintiffs finished seeing a date, the front desk employee would call A.J. and Q.C.'s room to see if they needed anything.[22]

22. If they did, housekeeping would bring towels or whatever else was needed to the room.[23]

---

[17] *Id.* at 157:20–158:18, 172:25–174:14, 176:21–177:20; Doc. 57-3 at 188:14–189:5.
[18] Doc. 63-3; Doc. 63-4.
[19] *Id.*; Doc. 57-2 at 176:21–177:20.
[20] Doc. 63-3; Doc. 63-6; Doc. 57-2 at 202:12–203:3; Doc. 57-3 at 166:23–167:17.
[21] Doc. 63-11.
[22] Doc. 57-2 at 172:25–174:15.
[23] *Id.* at 157:23–158:8.

23. Ultimately, A.J. and Q.C. were rescued from the Days Inn on March 22, 2013.[24]

24. When police officers arrived at the hotel, they got a rental roster from hotel management.[25]

25. These officers "learned that management had seen a female matching the description of A.J. in room 123."[26]

26. A.J. and Q.C.'s traffickers were arrested, and Craig Hill was sentenced to 15 years for keeping a place of prostitution and pimping.[27]

27. Defendant's lack of knowledge about this case is highlighted by its inability to recall any specifics or produce any documents. For instance, in its 30(b)(6) deposition, Defendant testified that it had no knowledge of the Plaintiffs' allegations until receiving this lawsuit.[28]

28. It also confirmed that it had no written or verbal statements from any witnesses related to the Plaintiffs being trafficked at the hotel.[29]

29. In fact, Defendant testified that it lacked any information regarding the allegations altogether.[30]

30. Defendant's ignorance extends beyond the facts of this case to include even the

---

[24] Doc. 63-1; Doc. 63-4.
[25] Doc. 63-12.
[26] *Id.*
[27] Doc. 63-4; Doc. 63-13.
[28] Doc. 58-6 at 14:20–25, 15:19–16:11, 21:1–8.
[29] *Id.*
[30] *Id.*

most basic details about the hotel's operations and personnel. Despite numerous requests for documents related to employee hiring and training materials, internal communications and guidelines, photographs, surveillance, and video recordings of the premises, room rental records (including financial records), and documents related to the operation and maintenance of the Days Inn Stockbridge, Defendant produced only a single document: a map of the hotel layout.[31]

31. Additionally, Defendant could only identify one employee who worked at the Days Inn Stockbridge, but did not know if she worked there in 2013, and had no contact information for that employee (or any other staff).[32]

32. And though it acknowledged that one of the owners, Alpesh Patel, was the day-to-day manager of the Days Inn, overseeing responsibilities such as finances, ordering supplies, employee management, hiring and firing, daily operations, and room inspections, Alpesh testified that he did not have any information about employees, witnesses, or, most importantly, Plaintiffs' allegations.[33]

33. In fact, none of the owners of MASP, LLC have knowledge or evidence

---

[31] *Id.* at 15:19–16:11; *see generally* Doc. 63-14; *see also* Doc. 58-8. While most requests focused on 2008 through 2013, at least one request extended through the present. Despite this, Defendant was still unable to produce a single responsive document. *See* Doc. 63-14, Req. No. 26.
[32] Doc. 58-6 at 17:9–20:13, 21:9–18.
[33] *Id.* at 11:10–12:13, 21:25–22:16.

concerning *any* of the allegations in Plaintiffs' Complaint.[34]

Respectfully submitted this 8th day of November, 2024.

                                        ANDERSEN, TATE & CARR, P.C.

                                      */s/ Jonathan S. Tonge*
                                      PATRICK J. MCDONOUGH
                                      Georgia Bar No. 489855
                                      pmcdonough@atclawfirm.com
                                      JONATHAN S. TONGE
                                      Georgia Bar No. 303999
                                      jtonge@atclawfirm.com
                                      RORY A. WEEKS
                                      Georgia Bar No. 113491
                                      rweeks@atclawfirm.com
                                      JENNIFER M. WEBSTER
                                      Georgia Bar No. 760381
                                      jwebster@atclawfirm.com
                                      *Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

---

[34] *Id.*; Doc. 58-9, ¶¶ 2, 5–6; Doc. 58-10, ¶¶ 2, 5–6; Doc. 58-11, ¶¶ 2, 5–6.

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

                                  ANDERSEN, TATE & CARR, P.C.

                                  */s/ Jonathan S. Tonge*
                                  PATRICK J. MCDONOUGH
                                  Georgia Bar No. 489855
                                  pmcdonough@atclawfirm.com
                                  JONATHAN S. TONGE
                                  Georgia Bar No. 303999
                                  jtonge@atclawfirm.com
                                  RORY A. WEEKS
                                  Georgia Bar No. 113491
                                  rweeks@atclawfirm.com
                                  JENNIFER M. WEBSTER
                                  Georgia Bar No. 760381
                                  jwebster@atclawfirm.com
                                  *Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile