UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

A.J. & Q.C.,

     Plaintiffs,

v.

MASP, LLC,

     Defendant.

CIVIL ACTION FILE

NO. 1:23-cv-4247-JPB

## PLAINTIFFS' RESPONSE TO DEFENDANT MASP, LLC'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED AND PLAINTIFF'S THEORIES OF LIABILITY

1.

MASP, LLC was formed in 2007 when the hotel known as the Days Inn Stockbridge was purchased. (30(b)(6) Deposition extracts of Alpesh Patel ("MASP depo."), 16:16-20, attached to the Brief as Exhibit "A".)

**RESPONSE: Undisputed.**

2.

MASP owns and operates the Days Inn located at 7385 Hanover Parkway N., Stockbridge, Georgia and has done so at all times pertinent to this litigation. (Complaint ¶ 4; MASP depo., 16: 21-22.) It also operates the hotel. (Id., 17: 3-5.)

**RESPONSE: Plaintiffs object to Defendant's citation to Plaintiffs' complaint as support for the fact or assertion contained herein. Otherwise, this is undisputed.**

3.

It had no knowledge of the allegations as described in the Complaint until served with this lawsuit. MASP Interrogatory Response No. 5, attached to the Brief as Exhibit "B." *See supra* n. **Error! Bookmark not defined.**.

**RESPONSE: Plaintiffs do not dispute that Defendant asserts having no knowledge of the allegations described in Plaintiffs' complaint. However, the record indicates otherwise. Specifically, the record reveals that the employees regularly checked in on the Plaintiffs after buyers left and visited the room—a room strewn with indicators of commercial sex—up to four times a day to deliver clean towels and sheets and change the trash. Doc. 60 at 157:20-158:18, 172:25-174:15, 176:21-177:20; Doc. 61 at 188:14-20; Doc. 63-3; Doc. 63-4. Furthermore, the traffickers enlisted the help of the employees to monitor the girls' activities. Doc. 63-9; Doc. 60 at 216:3-18. In fact, one employee acted as a lookout for the traffickers and even solicited the minor Plaintiffs for commercial sex. Doc. 60 at 161:15-162:18.**

4.

In 2013, Q.C. lived with her mother and siblings. Deposition extracts of Plaintiff Q.C. ("Q.C. depo."), 13:19-24 and 16:1-2, attached to the Brief as Exhibit "C."

**RESPONSE: This fact is not material, relevant, or admissible to Plain-tiffs' claims for the trafficking that occurred at Defendant's hotel. Otherwise, this is undisputed.**

### 5.

She had a normal relationship with her mother and testified that her mother provided everything she needed. Id., 45: 4-11.

**RESPONSE: This fact is not material, relevant, or admissible to Plain-tiffs' claims for the trafficking that occurred at Defendant's hotel. Otherwise, this is undisputed.**

### 6.

They ate meals together as a family and generally got along. Id., 43: 6-11; 49:1-2.

**RESPONSE: This fact is not material, relevant, or admissible to Plain-tiffs' claims for the trafficking that occurred at Defendant's hotel. It is undis-puted that Q.C. testified that everything was normal "for the most part" and she and her family ate meals together.**

### 7.

In 2013, when she was 14 years old, she ran away from home because she missed the school bus and was afraid of getting in trouble. Id., 46:18-24.

**RESPONSE: This fact is not material, relevant, or admissible to Plain-tiffs' claims for the trafficking that occurred at Defendant's hotel. Further, the**

evidence cited does not provide support for Defendant's stated fact that this event occurred in 2013 when Q.C. was 14 years old. Otherwise, this is undisputed.

8.

Her mother took education very seriously. Id., 47:7-8. Attending school was non-negotiable for her and missing school violated her mom's rules. Id., 53: 2-10.

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Otherwise, this is undisputed.**

9.

After missing the bus, she went to the house of a Hispanic female adult friend, who she referred to as "Rosa." Id., 47:22-23; 48:1-2; 55:16-17.

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Further, the evidence cited does not provide support for Defendant's stated fact that Rosa was an adult of Hispanic ethnicity. Otherwise, this is undisputed.**

10.

Rosa lived in a trailer park located behind her neighborhood and Q.C. would go to her house once or twice a week. Id. 48:3-5; 21-25.

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not provide support for Defendant's stated fact that Rosa lived in a trailer park behind Q.C.'s neighborhood nor does it support the stated fact that Q.C. went to Rosa's house once or twice a week. It is undisputed that Q.C. testified Rosa lived in a trailer park next to her neighborhood, and it is undisputed that Q.C. testified she went to Rosa's house once or twice a week**

11.

Q.C. felt safe at Rosa's house. (Id., 57:3-9).

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Otherwise, this is undisputed.**

12.

On the day she missed school, Q.C. left Rosa's house and returned home. (Id., 49:11-13).

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not provide support for Defendant's stated fact that Q.C. left Rosa's house and returned home on the day she missed school. Otherwise, this is undisputed.**

5

13.

She met her mother in the driveway and, after an argument about her missing school, Q.C.'s mother slapped her face and took phone away. (Id., 49:15-17; 52: 2-3; 78: 25-79: 1-3).

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel.  Otherwise, this is undisputed.**

14.

As a result, Q.C. left home again without any clothes or personal items and returned to Rosa's house. (Id., 49: 20-22; 50:5 and 67: 1-3.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Further, the evidence cited does not provide support for Defendant's fact that Q.C. left home as a result of the argument with her mother. Otherwise, this is undisputed.**

15.

Notably, she did not tell Rosa that she had run away or about the argument with her mother. (Id. 58: 10-13.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The tragic reality is that Q.C. was trafficked for minor sex at Defendant's hotel. Whether Q.C. shared her personal struggles at home with Rosa does not change this fact.**

**Furthermore, Defendant mischaracterizes the record. The cited evidence merely addresses whether Q.C. informed Rosa that she had run away from home; it makes no reference to any argument between Q.C. and her mother. It is undisputed that Q.C. testified she did not tell Rosa she had run away from home.**

16.

Q.C. was embarrassed that she let her mom down and she wanted to be alone and think about what she had done. (Id., 51: 1-4.) She also wanted to give her mother time to calm down because she was angry. (Id., 51: 5-7.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel.  The evidence cited does not provide support for Defendant's stated fact that Q.C. testified she wanted to give her mother time to calm down because she was angry. Otherwise, this is undisputed.**

17.

While Q.C. was at Rosa's, the police came looking for her. (Id., 57: 18-23.) Rosa, who spoke little English, did not tell the police that Q.C. was there. (Id., 60: 13-19.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence**

**cited does not provide support for Defendant's stated fact that police were look-
ing for Q.C. Otherwise, this is undisputed.**

18.

Q.C. hid from the police because she was scared of getting in trouble and
thought she would go to jail for running away. (Id., 60: 20-25; 66: 1-2.)

**RESPONSE: This fact is not material, relevant, or admissible to Plain-
tiffs' claims for the trafficking that occurred at Defendant's hotel. It is undis-
puted that Q.C. testified, "I think [the police] showed up and I hid because I
thought I was going to go to jail for running away. I didn't know if I was in
trouble. I didn't know if – honestly, I just was in fear and I hid." Doc. 61 at
60:20–25.**

19.

After the police left, she came out of hiding and spent the night at Rosa's
house. (Id., 65: 5-8.)

**RESPONSE: This fact is not material, relevant, or admissible to Plain-
tiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence
cited does not provide support for Defendant's stated fact that Q.C. spent the
night at Rosa's house. Otherwise, this is undisputed.**

20.

She did not call her mother and tell her where she was. (Id., 66: 8-10.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not provide support for Defendant's stated fact--Plaintiff did not testify that she failed to call her mother; Defendant merely asked "is there any reason why you didn't call [your mom] and tell her where you were?" Doc. 61 at 66:8-10.**

21.

This was the only night that Q.C. stayed with Rosa. (Id., 56: 6.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not provide support for Defendant's stated fact. Otherwise, it is undisputed that Q.C. testified she left Rosa's house the next day. Doc. 61 at 56:6.**

22.

The next day, Q.C. borrowed Rosa's cell phone and logged onto her Facebook account, where she learned that her friend, A.J., had coincidentally also run away from home after an argument with her mother and was at a nearby Walmart. (Id., 70: 1-6, 72: 17-19 and 92: 20-22.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Plaintiff also objects to Defendant's characterization of A.J.'s actions as "coincidentally"**

9

**running away from home. Furthermore, the evidence cited does not support Defendant's assertion that Q.C. used *Rosa's* phone to log into her Facebook account, it does not establish the location of the Walmart, nor does it establish that A.J. ran away—only that A.J. was at "the Walmart." Otherwise, it is undisputed that A.J. was Q.C.'s friend, Q.C. borrowed Rosa's cell phone to log onto her Facebook account, and Q.C. was told that A.J. had gotten in trouble with her mom and was at Walmart.**

23.

Q.C. and A.J., who lived in the neighborhood behind Q.C., had been friends since middle school. (Id., 70: 17-18; 71: 1-2.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Furthermore, the evidence does not support Defendant's stated fact that A.J. and Q.C. had been friends since middle school, nor does it establish that *A.J.* lived in the in neighborhood behind Q.C. Otherwise, this is undisputed.**

24.

Q.C. messaged A.J. and told her what happened. (Id., 72: 5-10.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Furthermore, Plaintiffs object to Defendant's use of vague wording; it is unclear what**

**Q.C. told A.J. Otherwise, it is undisputed that Q.C. testified she "messaged [A.J.] and let her know what had happened." Doc. 61 at 72:5–10.**

25.

Q.C. then got a ride from Rosa's house to the Walmart from a guy she knew from the neighborhood in order to meet A.J. (Id., 72: 7-10 and 76: 5-10.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not support Defendant's assertion that Q.C. got a ride from Rosa's house to the Walmart, nor does it establish that Q.C. got a ride from a guy she knew from the neighborhood. Otherwise, it is undisputed that Q.C. asked a man she knew from the trailer park to take her to the Walmart to meet A.J. Doc. 61 at 73:15–76:10.**

26.

At Walmart, Q.C. found A.J. in a gray van with a man who was unknown to Q.C. (Id., 89: 21-23.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Furthermore, the evidence cited does not support Defendant's assertion that A.J. was in a gray van with a man, nor does it establish that the man in the van was unknown to Q.C. It is undisputed that when Q.C. pulled up to the Walmart, she**

saw Armani sitting in a gray van with the window down. Doc. 61 at 89:24-90:5. There was also a man in the gray van who Q.C. had not met until that day. Doc. 61 at 94:15-95:2.

27.

She entered the van and the man drove them to a neighborhood where they spent the night outside. (Id., 21: 4-5; 104: 14-20; 106: 16-21.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The cited evidence does not establish the location where A.J. and Q.C. spent the night, just that it was outside. It is undisputed that Q.C. testified she believes the man in the gray van took them to a neighborhood and A.J. and Q.C. slept outside. Doc. 61 at 104:8-20, 106:16-21.**

28.

Next, they met with A.J.'s friend Jamaal who eventually took them to hotel and rented them a room. (Id., 99: 14-18, 108: 17-20 and 109: 1-3.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Otherwise, this is undisputed.**

29.

Over the next two days, the Plaintiffs stayed at the Travelodge and then the Southside Inn. (Id., 127: 18-21.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The cited evidence does not establish how long A.J. and Q.C. were at the Travelodge and Southside Inn. It is undisputed that Q.C. thinks the Plaintiffs stayed at the Travelodge first and Southside after. Doc 61 at 127:18-25.**

30.

While at the Southside Inn, Plaintiffs' heard noises outside their door and believed someone was trying to break into their room. (Id., 134: 14-16.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not support Defendant's stated fact. It is undisputed that Q.C. testified that at a hotel "people" tried to open the door. Doc. 61 at 134:12-17. The Plaintiffs became frightened and contacted the front desk, who then called the cops. *Id.***

31.

The Plaintiffs called the front desk to report the attempted break-in and the front desk called the police. (Id., 134: 16-17.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendants' hotel. The evidence cited does not support Defendant's stated fact that the Plaintiffs called the front**

**desk to report the attempted break-in. It is undisputed that Q.C. testified that at a hotel "people" tried to open the door. Doc. 61 at 134:12-17. The Plaintiffs became frightened and contacted the front desk, who then called the cops.** *Id.*

32.

When the police arrived, at least one police officer came to their room and Q.C. spoke with them while inside the room. (Id., 134: 21-24.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not support Defendant's stated fact that Q.C. spoke to at least one police officer while inside the room. It is undisputed that Q.C. testified that police came to her room, the Plaintiffs opened the door, and Q.C. briefly spoke with them, explaining that somebody had tried to open their door and that they were scared. Doc. 61 at 134:21-135:9. Q.C. further testified that the officers told her they would stay nearby and keep an eye on the door.** *Id.* **After they left, Q.C. testified she felt relieved knowing they would watch the door, which made her feel safe. Doc. 61 at 136:16-25.**

33.

The police told the Plaintiffs that they would watch their room and Q.C. felt better because she knew the police would help her. (Id., 135: 8-9; 137: 1-3.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not support Defendant's stated fact. It is undisputed that Q.C. testified she felt relieved knowing they would watch the door, which made her feel safe. Doc. 61 at 136:16-25. Further, it is undisputed that Q.C. agreed with opposing counsel that, as it related to the incident where individuals tried to open their hotel room door, she knew the police were going to help her. Doc. 61 at 137:1-3.**

34.

They only stayed at the Southside Inn for one night. Q.C. was in the same clothes that she had been in when she ran away. (Id., 138: 21-24.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not establish the length of time the Plaintiffs stayed at the Southside Inn. Otherwise, this is undisputed.**

35.

The next day A.J contacted Craig Hill, a man she had not met before, on a Website called DateHookup.com. (Id., 128: 5-13).

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence**

15

**cited does not establish any facts related to A.J. contacting Craig Hill and, in fact, appears to be a rogue citation to irrelevant testimony. It is undisputed that Q.C. testified that A.J. contacted a man she had "been talking to" who could "'help [them] get some shelter, food, clothes, all of that.'" Doc. 61 at 138:2-13. It is further undisputed that A.J. testified that she met Craig Hill on a website called "Date Hookup." Doc. 60 at 128:5-13.**

36.

Hill and his girlfriend, T'keyah Adams, came to the Southside Inn with a baby, picked up Plaintiffs, and drove them to the Days Inn. (Id., 138; 12-12; 141: 1-5; 142: 1-3.)

**RESPONSE:  The evidence cited does not establish that T'Keyah Adams was Hill's girlfriend. Otherwise, it is undisputed that A.J. and Q.C. were picked up from the Southside Inn by Craig Hill and T'keyah Adams. It is further un-disputed that there was a baby in the car.**

37.

It was Q.C.'s understanding that Hill had promised to give them clothes, fix their hair, feed them, get them a job, and provide a place for them to stay. (I.d.,139: 5-10).

**RESPONSE: Undisputed.**

38.

A.J. was also fourteen years old at the time of the alleged trafficking.

(Deposition of Armani Johnson ("A.J" depo.), 72: 4-9, excerpts attached to the Brief as Exhibit "D".)

**RESPONSE: The evidence cited does not support Defendant's stated fact that A.J. was also fourteen years old at the time of the alleged trafficking. Otherwise, it is undisputed that A.J. was 14-years-old at the time she was trafficked at the Defendant's hotel. Doc. 60 at 14:21-23.**

39.

Unlike Q.C., A.J. had run away before and had been previously rescued from a sex trafficking operation at a different hotel. (Id., 86: 18-24; 88: 3-6; Plaintiff A.J.'s Responses to Interrogatory No. 23, excerpts attached to the Brief as Exhibit "E".)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Further, the evidence cited does not support Defendant's assertion that A.J. had run away before. And Plaintiffs' object to Defendant's characterization of A.J.'s actions as "unlike Q.C." It is undisputed that Q.C. does not have a history of running away. Further, it is undisputed that A.J. was a victim of sex trafficking at another hotel and was ultimately rescued by police.**

40.

In March of 2013, A.J. lived with her mother and stepfather and considered

Q.C. to be her best friend. (Plaintiff A.J.'s Interr. Responses No. 1; A.J. depo. 92:

2-4.)

**RESPONSE: This fact is not material, relevant, or admissible to Plain-**

**tiffs' claims for the trafficking that occurred at Defendant's hotel. Otherwise,**

**this is undisputed.**

41.

In March of 2013, she ran away from home again. (Id., 91: 12-16.)

**RESPONSE: This fact is not material, relevant, or admissible to Plain-**

**tiffs' claims for the trafficking that occurred at Defendant's hotel. It is undis-**

**puted that, when opposing counsel asked A.J. whether she "ran away again" in**

**March of 2013, A.J. responded affirmatively, testifying, "Correct." Doc. 60 at**

**91:8-11.**

42.

When A.J. left home, she took some clothes and toiletries, but did not take

any money. (Id., 99: 1-5; 21-23).

**RESPONSE: This fact is not material, relevant, or admissible to Plain-**

**tiffs' claims for the trafficking that occurred at Defendant's hotel. Further, the**

**evidence cited does not support Defendant's assertion that A.J. "took some**

**clothes and toiletries." It is undisputed that A.J. testified that she "only grabbed**

**a few things at that moment" because she did not intend to run away from**

**home. Doc. 60 at 99:1-5. Further, it is undisputed that A.J. testified she did not**

**take money with her when she left. Doc. 60 at 99:21-23.**

43.

The Plaintiffs provided conflicting testimony regarding where and when

they met up after running away, but it is undisputed that they were together within

a day of running away. (Id., 102: 4-8.)

**RESPONSE: This fact is not material, relevant, or admissible to Plain-**

**tiffs' claims for the trafficking that occurred at Defendant's hotel. Plaintiffs**

**further object to Defendant's editorialization and characterization of Plaintiffs'**

**testimony; this is neither an established fact nor a material one. It is undisputed**

**that A.J. testified that she remembers the Plaintiffs sticking beside each other.**

**Doc 60 at 102:4-8.**

44.

At some point, the Plaintiffs went to Q.C.'s old neighborhood and went to a

friend's house until his mother came home and they had to leave. (Id., 107: 10;

111: 1-3.)

**RESPONSE: This fact is not material, relevant, or admissible to Plain-**

**tiffs' claims for the trafficking that occurred at Defendant's hotel. It is undis-**

**puted that the Plaintiffs went to Q.C.'s old neighborhood. Doc. 60 at 107:9-11.**

**Further, it is undisputed that the Plaintiffs went to a friend's house, and they**

**had to leave when his mother got home. Doc. 60 at 110:3-111:3.**

45.

The next day, they met A.J.'s friend, Jamaal, who took them back to his

apartment and allowed them to take showers and sleep until he left for work. (Id.,

116: 25-117: 1-4; 12-24.)

**RESPONSE: This fact is not material, relevant, or admissible to Plain-**

**tiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence**

**cited does not establish the identity of the friend who took the Plaintiffs back to**

**his apartment. It is undisputed that A.J. testified that "a guy" she knew picked**

**the Plaintiffs up and took them to his apartment, where they were able to take**

**a shower and sleep. Doc. 60 at 116:25-118:2. At some point, A.J. testified that**

**this individual had to go to work, so he got the Plaintiffs a hotel room. Doc. 60**

**at 116:25-118:2. A.J. testified she could not remember the name of the friend.**

**Doc. 60 at 116:25-118:2.**

46.

He then took them to Southside Inn, rented a room for them, and left. (Id.,

118: 13-15; 120:17-21.)

**RESPONSE: This fact is not material, relevant, or admissible to Plain-**

**tiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence**

**cited does not establish the identity of the individual who took the Plaintiffs to the Southside Inn. It is undisputed that A.J. testified the individual referenced in ¶ 45 took Plaintiffs to the Southside Inn, rented the room for the Plaintiffs, and left.**

47.

While at the Southside Inn someone tried to break into their room, so they called the police for help. (Id., 123: 4-7.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. The evidence cited does not support Defendant's stated fact that while at the Southside Inn, someone tried to break into their room. It is undisputed that A.J. testified that while the Plaintiffs were in their room, someone "started grabbing on the handle, trying to open the door." Doc. 60 at 123:4-7.**

48.

Two police officers came to their door and spoke with them. (Id., 124: 8-24.) Interestingly, the police did not ask their names or ages, or inquire why these young girls were at the hotel. (Id., 124: 25-125: 1-3.)

**RESPONSE: This fact is not material, relevant, or admissible to Plaintiffs' claims for the trafficking that occurred at Defendant's hotel. Plaintiffs also object to Defendant's use of the term "interestingly" to characterize this fact.**

21

**It is undisputed that A.J. testified the officers did not ask for the Plaintiffs'**
**names or ages, inquired about why the police were called, and offered to mon-**
**itor the door in case the situation reoccurred. Doc. 60 at 124:25-125:13.**

49.

Plaintiffs were scared at the Southside Inn. (Id., 122: 21-23).

**RESPONSE: This fact is not material, relevant, or admissible to Plain-**
**tiffs' claims for the trafficking that occurred at Defendant's hotel.  It is undis-**
**puted that A.J. testified they were scared so they left the hotel.  Doc. 60 at**
**122:21-23.**

50.

A.J. contacted Craig Hill and he picked the Plaintiffs up and took them to
the Days Inn on March 20, 2013. (Portion of Investigative Summary of Police
Interview with A.J.'s Redacted, attached to the Brief as Exhibit "F".)

**RESPONSE: Undisputed.**

51.

A.J. and Q.C. were taken to the Days Inn in Stockbridge by Craig Hill, who
ultimately became their trafficker, after he and A.J. communicated on
DateHookup.com. (A.J.'s depo. Id., 128: 2-9.)

**RESPONSE: It is undisputed that Craig Hill trafficked A.J. and Q.C. for**
**sex. It is undisputed that A.J. and Q.C. were taken to the Days Inn Stockbridge**

by Craig Hill. It is undisputed that A.J. testified that she met Craig Hill on a website called "Date Hookup." Doc. 60 at 128:2-9

52.

When they arrived at the Days Inn, a room was already rented, so they were not involved in the check in process and neither Plaintiff went to the hotel lobby or front desk. (Id., 145: 3-6, 24-25; 146: 1-3; 135: 23-25; 217: 9-12.)

RESPONSE: The evidence cited does not establish the facts asserted by Defendant. It is undisputed that room 123 was already rented when Plaintiffs arrived at the Days Inn Stockbridge. It is further undisputed that Plaintiffs did not go to the hotel lobby or front desk during check in. Doc. 60 at 135:23–136:1.

53.

Once in the room, A.J. and Q.C. were told to shower because they had to take pictures for Hill to post them as advertisement. (Id., 140: 3-5.)

RESPONSE: Undisputed.

54.

It was at this point that A.J. and Q.C. were told they would have to contribute. (Id., 140: 6-8. and Q.C.'s depo. 147: 12-15.)

RESPONSE: The evidence cited does not establish the time at which these conversations were had. It is undisputed that A.J. and Q.C. testified they were told nothing is free. Doc. 147:12–25. Additionally, it is undisputed Hill told the

Plaintiffs that "in order for you to like be on the team, you have to be contributing something in some way." Doc. 60 at 140:6–8.

55.

Specifically, Adams told them that nothing was free so they were going to see dates to exchange sex for money. (Q.C. depo. 148: 1-4; 166: 12-15.)

**RESPONSE: Plaintiffs object to Defendant's characterization of this exchange between Q.C. and her traffickers, Adams and Hill. Q.C. testified that "at this point they had let us – we had been staying there. And so it was, like, the rent needed to be paid for the amount of time that I was there. *And they had guns.*" Doc. 61 at 166:5–15. Q.C. further testified that Chris told Q.C. that she was going to have sex for money. Doc. 61 at 166:5–15. It is undisputed that Adams told the Plaintiffs that "nothing is free." Doc. 61 at 147:12–15.**

56.

Plaintiffs were together in the same room the entire time while at the Days Inn. (A.J.'s depo. Id., 156: 1-4.)

**RESPONSE: It is undisputed that A.J. testified that A.J. and Q.C. were the only individuals staying in the room; however, there were other people that came into the room with them. Doc. 60 at 156:1–10.**

57.

Q.C. had sex with four men at the Days Inn before the police came. (Id.,

167: 15-17.)

**RESPONSE: The evidence cited does not establish any facts related to the number of buyers Q.C. saw and, in fact, appears to be a rogue citation to irrelevant testimony. Is undisputed that Q.C. testified she saw at least four dates at the Days Inn Stockbridge before the police came. Doc. 61 at 167:15–17.**

58.

A.J. was also involved in each of Q.C.'s four encounters but she also had additional encounters separate from Q.C. and was unsure how may men she had sex with while at the Days Inn. (Id., 168: 17-18.)

**RESPONSE: The evidence cited does not establish any facts related to Q.C. and A.J. seeing buyers and, in fact, appears to be a rogue citation to irrelevant testimony. It is undisputed that A.J. and Q.C. were repeatedly bought and sold for sex at Defendant's hotel and were forced to perform various sexual acts, including oral and vaginal sex, as well as "two-girl specials," whether both of the Plaintiffs would engage in sexual activities with the same buyer simultaneously. Doc. 63-3; Doc. 63-4; Doc. 63-5. Further, it is undisputed that A.J. and Q.C. were statutorily raped by at least 14 different buyers. Doc. 63-6, Doc. 57-2 at 202:12–203:3.**

59.

After A.J. had sex with men for money, Hill would collect the money. (Id.,

161: 16-18.)

**RESPONSE: The evidence cited does not establish any facts related to the collection of money by Hill and, in fact, appears to be a rogue citation to irrelevant testimony. It is undisputed that after the Plaintiffs had sex with men for money (i.e., were statutorily raped for the profit of her trafficker and Defendant), Hill would collect the money. Doc. 61 at 153:8-12; 161:16-18.**

60.

A.J. did not know why they were taken to this hotel. (Id., 157: 1-7.)

**RESPONSE: It is undisputed that A.J. testified that she knows now that her trafficker took her to this hotel because he had a human trafficking ring set up, but at the time she was trafficked, A.J. did not know. Doc. 60 at 157:1-7.**

61.

A.J. and Q.C. had limited interaction with the staff at the Days Inn. Housekeeping came to their room daily to provide fresh towels and bed sheets, and the front desk called to see if they needed garbage removed. (Id., 157:20—5; 175:24-25; 177:18-20.)

**RESPONSE: Plaintiffs object to Defendant's characterization of the interactions A.J. and Q.C. had with staff at the Days Inn Stockbridge; this is not an established fact supported by the record evidence. Further, Defendant's citations are vague as to what testimony they are referencing. *See, e.g.*, 157:20-5.**

26

Moreover, the cited evidence does not support Defendant's assertion that "A.J. and Q.C. had limited interaction with the staff at the Days Inn." In fact, it supports the opposite conclusion—that Plaintiffs had nearly constant contact with various staff members throughout their stay. It is undisputed that A.J. testified that staff

> would call us after dates to ensure that everything was okay. They would also send back housekeeping *at least three to four times a day* to make sure that we had clean towels. But even if they didn't send them, they would call the phone saying, 'Hey, you need everything [sic]?' Is everything good.' We would either say yea or nay. If we say nay, they would send what we needed. If we said yes, then we didn't need anything.

Doc. 60 at 157:20-158:7 (emphasis added). It is not a *reasonable* inference that these interactions constitute "limited interactions," and no reasonable jury could conclude otherwise. *Gallagher Benefit Services, Inc. v. Campbell*, 528 F. Supp. 3d 1326, 1346-47 (N.D. Ga. 2021) ("A reasonable inference is one that a reasonable and fair-minded person in the exercise of impartial judgment might draw from the evidence. Reasonable inferences may rest in part on conjecture, for an inference by definition is at least partially conjectural. But a jury cannot be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such an inference is infirm because it is not based on the evidence.") (quoting *Berbridge v. Sam's E, Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018)).

It is undisputed that A.J. testified that she never needed to tell the "day-time man who would call the room phone" what was going on because

he already knew, because what's understood don't [sic] have to be explained, like – so it's like he already knew what was going on. He was more so calling. It was nothing for me to tell him. He was calling to see if we had what we needed. He only knew what we needed because he was told what we needed. Like, you know – we would tell him like if we needed it, but he already knew what to ask for. Like, Hey, you guys good? You need to the garbage changed?

Doc. 60 at 175:4-25. And it is not disputed that housekeeping would come to A.J. and Q.C.'s room to provide fresh towels and sheets and change out the garbage three to four times daily. Doc. 60 at 157:20-158:7, 176:25-177:20. And even if these interactions were limited (they were not), they were also significant. For example, shockingly, one such interaction included Defendant's front desk employee inquiring about how much it would cost to purchase sex from one or both minors. Doc. 60 at 161:15-162:18.

62.

On one occasion, A.J. and Q.C. locked themselves out of the room and had to go the front desk to get access to the room. (Id., 158:10-13).

**RESPONSE: Undisputed.**

63.

This was the only interaction Q.C. had with the front desk staff. (Q.C. depo. 192: 15-19.)

**RESPONSE: It is undisputed that Q.C. testified that she "just had an interaction with [front desk staff] when I got locked out of the room. And he called Chris and he let us back in the room." Doc. 61 at 192:15-19.**

Respectfully submitted this 8th day of November, 2024.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile