UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| A.J. & Q.C., <br><br> Plaintiffs, <br><br> v. <br><br> MASP, LLC, <br><br> Defendant. | CIVIL ACTION FILE <br><br> NO. 1:23-cv-4247-JPB |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs, two minor sex-trafficking victims, moved for summary judgment to hold Defendant accountable and to seek justice. Their motion is not procedural theatrics. Plaintiffs did what any summary-judgment movant must: they "inform[ed] the court of the basis for [their] motion" and identified "those materials that demonstrate the absence of a genuine dispute of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000); *see also* Doc. 56-1.[1]

Because Plaintiffs presented uncontroverted, admissible evidence supporting their claim that Defendant is liable under the Trafficking Victims Protection Reauthorization Act (TVPRA), the burden shifted to Defendant to "demonstrate that there

---

[1] Plaintiffs incorporate the arguments from their response to Defendant's summary-judgment motion (Doc. 80).

is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). To do so, Defendant had to move beyond the pleadings and present specific, factually supported evidence that creates a genuine issue for trial. *Id.* Doing so does not force Defendant to "prove a negative." *Contra* Doc. 79 at 2. Defendant merely had to come forward with competent evidence to counter Plaintiffs' claims. Defendant did not.

Instead of proffering substantive evidence or directly addressing Plaintiffs' evidence, Defendant relies on blanket denials in its pleadings, conclusory assertions in its motion, and a sham affidavit. Courts routinely hold that unsupported denials and conclusory assertions cannot meet the nonmovant's burden to show a material factual dispute in the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (A nonmovant "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial."); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (Mere "metaphysical doubt as to the material facts" will not suffice.). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it," courts do not consider the factually unsupported version. *Scott v. Harris*, 560 U.S. 372, 380 (2007).

The law governing the parties' burdens at summary judgment is straightforward. Plaintiffs met their burden by presenting admissible, undisputed evidence of material facts. Defendant did not present any admissible evidence that refutes Plaintiffs' evidence. Because Defendant has no admissible evidence and because no genuine dispute exists, the Court should grant summary judgment to Plaintiffs.

## REPLY

**I.   Because Defendant did not comply with Local Rule 56.1, the Court should disregard all "facts" presented solely in Defendant's reply.**

Despite claiming to merely reference existing facts, Defendant introduces new facts in its reply without filing the statement of additional material facts that Local Rule 56.1(B)(2)(b) mandates. *See* Doc. 79 at 3–9. Courts consistently reject facts raised in briefs and not included in the required statement. *See Lewis v. Residential Mortgage Solutions*, No. 1:17-cv-1422, 2018 WL 5276221, at *2 (N.D. Ga. Aug. 31, 2018) (Johnson, J.) (collecting cases), *R&R adopted*, 2018 WL 5276190 (N.D. Ga. Oct. 16 2018), *aff'd*, 800 F. App'x 830 (11th Cir. 2020). While the Court should disregard these facts, none of these additional facts allow for any outcome besides summary judgment in Plaintiffs' favor. *See infra*, Section III.

**II.   Alpesh Patel's affidavit is a textbook example of a sham affidavit.**

Affidavits fall into one of two categories: real and sham. An affidavit is a sham when a party answers unambiguous questions that show no genuine issue of material fact exists (whether to interrogatories or at a deposition) but then later

3

submits an affidavit contradicting the earlier testimony without explanation. *Rodriquez v. Jones Boat Yard, Inc.*, 435 F. App'x. 885, 887–88 (11th Cir. 2011); *see also Lawver v. Hillcrest Hospice, Inc.,* 300 F. App'x 768, 771–72 (11th Cir. 2008) (affirming lower court's exclusion of an affidavit as a sham for contradicting prior deposition testimony); *United States v. Nguyen*, 655 F. Supp. 2d 1203, 1210–11 (S.D. Ala. 2009) (excluding defendant's conclusory affidavit due to overwhelming evidence contradicting its contents, characterizing it as "an attempt to delay the proceedings by falsely creating an issue of fact to defeat summary judgment"); *Israel v. John Crane, Inc.*, 601 F. Supp. 3d 1259, 1270–71 (M.D. Fla. 2022) (disregarding later deposition testimony as a sham where it inexplicably contradicted affiant's interrogatory response).

Alpesh Patel is an owner of Defendant MASP, LLC. He testified as Defendant's corporate representative. In doing so, he made clear that his personal knowledge of Plaintiffs' allegations is coextensive with Defendant's. Doc. 59 at 21:25–22:12. And Defendant unequivocally testified (through words uttered by Patel) that it had *no information or evidence* about Plaintiffs' allegations. *Id.* at 22:13–16. Yet now, after Plaintiffs moved for summary judgment, Patel says for the first time that he has knowledge of specific facts. Specifically, he says that no employee reported suspicions of sex trafficking to him, that he saw no signs of trafficking, and that he did not know about any employee facilitating, assisting, or otherwise

4

involved in the sex trafficking of Plaintiffs. Doc. 79-2 ¶¶ 8–9, 14, 16. This is (self-serving) evidence about the hotel's awareness (or alleged lack thereof) directly contradicting his earlier testimony that he had "no information or evidence" about Plaintiffs' allegations. After all, Defendant knows what Patel knows (or doesn't know) about Plaintiffs' allegations. As for why he only now supposedly knows that he knew nothing about Plaintiffs' allegations, Patel does not say.

On top of contradicting Defendant's deposition testimony, Patel's affidavit contradicts Defendant's discovery responses. In its interrogatory responses, Defendant swore that it could not recall "each and every [complaint, incident, or warning of any violent crimes, sexual assaults, rapes, incidents of commercial sex activity, prostitution, pimping, indecent exposure, sex trafficking, or other sex crimes occurring on the premises of the hotel] that it was aware of" during the relevant period, citing the passage of over ten years.[2] Doc. 58-12, ROG Resp. No. 4. Importantly, Defendant did not identify any complaint, incident, or warning that it was aware of. But Patel now claims specific knowledge of such matters. Doc. 79-2 ¶¶ 8–9, 14, 16.

Similarly, when asked to detail any policies or actions the hotel took related to safety, crime prevention, or risks associated with commercial sex activity, Defendant swore only that it photocopied driver's licenses at check-in, made daily

---

[2] Perhaps unsurprisingly, Patel verified Defendant's interrogatory responses. *See* Ex. 1, Verification.

notations that were discarded daily (without specifying how these notations were handled), called the police, and advised guests to call the police. Doc. 58-12, ROG Resp. No. 12. And when asked to "describe in detail how [it] supervised employees at the Hotel, including specifically with respect to any crime deterrence, safety training, or safety policies, from 2008 through 2013," Defendant did not describe, or even mention, any investigative procedures. *Id.*, ROG Resp. No. 19.

What's more, Defendant did not produce any documents, policies, or guidelines related to employee hiring, training, or operations at the Days Inn Stockbridge. Doc. 58-7, RPD Resp. Nos. 8, 26.

Nor did Defendant produce any responsive materials despite being explicitly asked to "identify any and all documentary or other tangible evidence, not previously identified or produced, which you believe demonstrates and/or supports facts relevant to Plaintiff's claims, any relevant facts, [facts relevant to] liability or damages, and any [facts relevant to] defenses in this case." Doc. 58-12 ROG Resp. No. 10.

Yet now that summary judgment is knocking on the door, Patel claims to have detailed knowledge of Defendant's employee policies, procedures, and operations—enough to define a single action that falls outside the scope of employment (while offering no insight into what actions fall within the scope) and to outline a single investigative procedure Defendant would have undertaken if Patel had been informed of an employee's criminal conduct. Doc. 79-2 ¶¶ 14–15.

6

In sum, Patel's affidavit seeks to fabricate a factual dispute where none existed by presenting brand-new testimony that contradicts Defendant's prior clear and unambiguous testimony and responses. This Court should reject this attempt and strike that affidavit as a sham. *Rodriquez*, 435 F. App'x. at 887–88.

### III. Defendant's purported facts do not create a jury question.

At summary judgment, the Court does not resolve factual disputes about material issues but merely determines whether any such factual disputes exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law (here, the TVPRA) determines which facts are material. *Id.* at 248. Disputed facts that do not affect the outcome are not material and will not prevent summary judgment. *Id.* A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* For a factual issue to be "genuine," it must have a solid basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the record evidence cannot reasonably support a finding for the nonmovant, there is no "genuine issue for trial." *Id.* at 587. That is true here.

*First*, Defendant falsely claims that Plaintiffs seek to establish the hotel's TVPRA civil liability for participating in a sex-trafficking venture with Hill based on what the hotel should have known and two interactions between the traffickers and hotel staff. Doc. 79 at 14–15. But the truth is that the uncontroverted evidence

proves that Defendant's employees took deliberate, affirmative actions that directly facilitated the traffickers' operations. The actions Defendant's employees took, recounted in Plaintiffs' motion, are: soliciting the minors for sex;[3] monitoring foot traffic to and from room 123 and reporting it[4] to Plaintiffs' traffickers;[5] checking-in on Plaintiffs after each buyer left;[6] and providing tailored, frequent housekeeping

---

[3] Doc. 57-2 at 161:15–162:18 (A.J. testifying that Defendant's employee solicited sex from the minor Plaintiffs).

[4] Statements of Defendant's employees are admissible as nonhearsay statements by an opposing party. Fed. R. Evid. 801(d)(2). The statements made by Adams and Hill to Plaintiffs and hotel staff are admissible as nonhearsay co-conspirator statements made in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E); *United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006) (quoting *United States v. Weisz*, 718 F.2d 413, 433 (D.C. Cir. 1983)). And Fed. R. Evid. 803(8) makes the records or statements of a public office from a legally authorized investigation admissible. *Jenkins v. Corizon Health Inc.,* 584 F. Supp. 3d 1364 (2022). Regarding Adams's statements to the police, evidence that can be reduced to an admissible form at trial should be considered at summary judgment. *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1305 (11th Cir. 2022). At the very least, Plaintiffs can call Adams to testify at trial.

[5] Doc. 58-3 at Plaintiffs A.J. and Q.C. 00399 (Adams detailing phone calls with hotel staff advising her there was a lot of traffic in room 123 on March 19 and 20); Doc. 57-2 at 157:20–158:18, 172:25–174:14, 176:21–177:20; Doc. 57-3 at 188:14–189:5 (A.J. and Q.C. detailing their interactions with the front desk employees or housekeeping after every buyer left).

[6] *Id.*

8

services.[7] These actions leave no doubt that Defendant actively participated in a venture with Plaintiffs' traffickers.[8]

These intentional acts were nothing short of a coordinated network of support. They make Defendant an active participant in the trafficking venture, not a passive observer. This evidence is sufficient to satisfy even a heightened standard, proving that Defendant "took steps *with* Plaintiff[s'] traffickers to facilitate the traffickers' illicit activities." *G.W. v. Northbrook Industries, Inc.*, No. 1:20-cv-5232, 2024 WL 3166083, at *3 (N.D. Ga. June 14, 2024) (Boulee, J.) (emphasis in original). Moreover, even if the Court were to consider Patel's affidavit, his belated claims that he had no personal knowledge of these actions do not call into question—much less refute—that Defendant's employees took these actions. At most, Patel's belated claims merely highlight his inability to confirm or deny Plaintiffs' material facts. Doc. 79-2 ¶¶ 15–16.

*Second,* Defendant's attack on Plaintiffs' memories focuses on statements that have nothing to do with the *material* facts. *See Anderson*, 477 U.S. at 248 ("Only

---

[7] *Id.*

[8] *See also* Doc. 57-3 at 199:3–22, 225:24–226:8 (Hill boasted that he knew the manager and front desk staff to Q.C.); Doc. 63-7 (investigators noting that Hill was known to frequent hotels, including the Days Inn Stockbridge); Doc. 63-9 (A.J.'s written statement to police describing an employee who acted as a lookout for Plaintiffs' traffickers in 2013); Doc. 57-2 at 157:1–159:13 (A.J. stating that employees acted as lookouts and describing their actions, including calling the room after every buyer left).

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). For example, Defendant quibbles with Q.C.'s answers about a *different* hotel where she was not trafficked and a *different* man who was not Plaintiffs' trafficker. *See* Doc. 61 115:6–20, 121:4–123:22 (discussing actions of man named "Kane" at another hotel before being trafficked at Defendant's hotel). As to A.J., Defendant picks nits about her testimony about not remembering the specific number of days she was at Defendant's hotel or the specific number of days from when she ran away from home to when she was rescued by police. *See* Doc. 60 at 174:16–175:3.

These facts have almost no relevance to the case. Q.C.'s testimony is about *a different hotel entirely*. Defendant takes no issue with Q.C.'s testimony about what happened at the Days Inn Stockbridge—Defendant's hotel. And the worst thing Defendant can say about A.J.'s testimony is that she was unsure whether she was at the Days Inn for a couple of days or four or five.[9] None of that testimony contradicts any facts in Plaintiffs' Statement of Material Facts, Doc. 56-1 at 2–8, and none of it disputes or contradicts the record evidence that (1) Plaintiffs were trafficked as

---

[9] The length of time a victim is trafficked at a hotel has no impact on any element of a TVPRA claim when all of the evidence shows that the hotel *knowingly* participated in the victim's trafficking. That kind of fact could be relevant, for example, to show what a hotel "should have known." This, however, is not a "should have known" case. Here, the hotel knowingly facilitated (and solicited) Plaintiffs' trafficking.

minors at Defendant's hotel; (2) the hotel *knowingly* facilitated their trafficking by working with Plaintiffs' traffickers to keep them at the hotel; (3) a hotel employee solicited sex from the minors; and (4) the hotel benefitted from its policy of allowing minor sex trafficking by providing the room and lookout services for Plaintiffs' traffickers in exchange for money renting the room. *Id.* Those facts are the material facts for TVPRA civil liability. *See* 18 U.S.C. § 1595(a). And Defendant points to no evidence contradicting any material fact in its response. For that reason, Plaintiffs are entitled to summary judgment.

*Third*, Defendant blatantly misrepresents Plaintiffs' testimony about the frequency of housekeeping visits to try to fabricate a genuine dispute where none exists. Doc. 79 at 6–7. A.J. testified that housekeeping was sent to their room

> **at least three to four times a day** to make sure that we had clean towels. But even if [the pimps] didn't send [housekeeping], [the employees] would call the phone saying, "Hey, you need everything? Is everything good?" We would either say yea or nay. If we say nay, they would send us what we needed. If we said yes, then we didn't need anything.

Doc. 60 at 157:20–8 (emphasis added). Similarly, Q.C. testified to interacting with housekeeping "[w]henever a date would leave" and that "[housekeeping] would just knock on the door and give us fresh towels." Doc. 61 at 188:17–20. When asked how frequently housekeeping came, Q.C. testified that "**[t]hey came pretty often, I would say that.** And whenever we needed something, we didn't have to ask them. They just – she would knock and bring it." *Id.* at 188:25–189:5 (emphasis added).

11

Defendant claims that Q.C. later changed her testimony about housekeeping visits to "probably, like, three or four times" during her stay. Doc 79 at 7. This is false. When asked if she remembered how many times *she personally* interacted with housekeeping, Q.C. testified, "[p]robably, like, three or four times." Doc. 61 at 190:7–9. And later, when asked how frequently A.J. had contact with housekeeping, Q.C. explicitly stated that she wasn't sure. *Id.* at 192:2–7. Defendant's misrepresentation of Q.C. testimony is not only unsupported by the record but also serves to try to mislead the Court about the actual nature and frequency of housekeeping interactions. There is no genuine dispute. Both Plaintiffs' testimonies present a consistent narrative without any contradictions.

*Fourth*, in Defendant's continuing misrepresentation of facts to the Court, Defendant ignores entirely that its employee, on the job, solicited sex from the two 14-year-old girls after speaking with their trafficker. Doc. 79 at 16–18. Defendant states, "there is no evidence confirming that the hotel knew Hill or Adams were involved in sex trafficking and Defendant rented the room to Adams for that purpose." *Id.* at 5. Yet Defendant's employee solicited Plaintiffs at the hotel[10], which is itself *criminal* sex trafficking. 18 U.S.C. § 1591(a) (knowingly soliciting commercial sex from a minor constitutes the offense of sex trafficking).

---

[10] Doc. 57-2 at 161:15–162:18 (A.J. testifying that Defendant's employee solicited sex from the minor Plaintiffs).

12

*Lastly*, Q.C.'s absence as a witness or lack of personal knowledge regarding any interactions between Defendant's employees and A.J. does not disprove or contradict the fact that those interactions did occur. And despite Defendant's characterization of A.J.'s testimony as "self-serving," that alone is no basis for the Court to disregard that testimony. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage.").

## IV. Plaintiffs are not required to prove Defendant knew of their age.

Defendant misrepresents the law. Knowledge of a victim's age is neither an element of nor a defense to minor sex trafficking. 18 U.S.C. § 1591(c). As this Court has recognized, the Eleventh Circuit has confirmed that proving knowledge or reckless disregard of a victim's age is unnecessary to establish a violation of § 1591(a). *G.W.*, 2022 WL 1644923, at *3; *A.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5231, 2022 WL 1644921, at *3 (N.D. Ga. May 24, 2022) (Boulee, J.). It is axiomatic that if knowledge of age is not an element of a criminal violation, it cannot be an element of a civil violation of the same statute.

A.J. and Q.C. were minors. Docs. 56-1, 80. Defendant's actual or constructive knowledge of their age is legally irrelevant. Defendant observed Plaintiffs at its hotel and had actual knowledge they were being sold for sex. *Id.* This knowledge, standing alone, is sufficient for a jury to find that Defendant knew the hotel violated the

TVPRA with respect to Plaintiffs because it is the only knowledge necessary to prove the criminal violation, which is itself an element of a civil claim. 18 U.S.C. § 1591(a), (b), and (c).

## CONCLUSION

Defendant fails to raise any genuine issue of material fact. Plaintiffs presented uncontroverted evidence of Defendant's TVPRA civil liability. In response, Defendant tries to create a factual dispute based on blanket denials, conclusory statements, a sham affidavit, and mischaracterizations of Plaintiffs' testimony. That is not enough to survive summary judgment.

Accordingly, the Court should disregard Defendants' improper attempts to introduce new facts, focus on the uncontroverted material facts, and grant summary judgment on Defendant's TVPRA civil liability to Plaintiffs.

Respectfully submitted this 22nd day of November, 2024.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com

14

                                                                                                JENNIFER M. WEBSTER
                                                                                                 Georgia Bar No. 760381
                                                                                                 jwebster@atclawfirm.com
                                                                                                 *Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

                                                ANDERSEN, TATE & CARR, P.C.

                                                */s/ Jonathan S. Tonge*
                                                PATRICK J. MCDONOUGH
                                                Georgia Bar No. 489855
                                                pmcdonough@atclawfirm.com
                                                JONATHAN S. TONGE
                                                Georgia Bar No. 303999
                                                jtonge@atclawfirm.com
                                                RORY A. WEEKS
                                                Georgia Bar No. 113491
                                                rweeks@atclawfirm.com
                                                JENNIFER M. WEBSTER
                                                Georgia Bar No. 760381
                                                jwebster@atclawfirm.com
                                                *Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile